1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  VIOLET M. LEE, State Bar No. 77144
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5896
     Fax:  (415) 703-1234
8    Email:  Violet.Lee@doj.ca.gov

9  Attorneys for Respondent

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **ANGEL JESUS ALVAREZ,** | C 06-05027 MJJ |
| Petitioner, | **MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AS UNTIMELY** |
| v. | |
| **ROBERT AYERS, JR., Warden,** | Hearing:      October 30, 2007 |
| Respondent. | Time:         9:30 a.m. |
| | Courtroom:  11 |
| | Judge:        The Honorable Martin Jenkins |

22          PLEASE TAKE NOTICE that on October 30, 2007, at 9:30 a.m., respondent will

23  move the Court for an order dismissing the petition for writ of habeas corpus for failure to

24  comply with the statute of limitations set forth in 28 U.S.C. § 2244(d).  A motion to dismiss in

25  lieu of an answer on the merits is proper where the petition is procedurally defective.  *See White*

26  *v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989); *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.

27

28

1990); Rules Governing 28 U.S.C. § 2254 Cases, Rule 4, and Advisory Committee Notes.[1/]

## STATEMENT OF THE CASE

A Santa Clara County jury convicted petitioner Angel Jesus Alvarez of aggravated sexual assault of a child (Cal. Penal Code § 269), two counts of corporal injury or punishment of a child (Cal. Penal Code § 273d(a)), and two counts of misdemeanor child endangerment (Cal. Penal Code § 273a(b)). Exh. 1. On May 26, 2000, the trial court sentenced Alvarez to state prison for a term of 17 years to life.

On June 16, 2000, Alvarez filed a notice of appeal. Exh. 2.

On June 24, 2002, while his appeal was pending, Alvarez filed a petition for writ of habeas corpus in the California Court of Appeal. Exh. 3.

On October 25, 2002, the California Court of Appeal affirmed the judgment on appeal and denied the petition for writ of habeas corpus. Exh. 1.

On December 2, 2002, Alvarez filed a petition for review in the California Supreme Court. Exh. 4.

On January 15, 2003, the California Supreme Court denied the petition for review. Exh. 4.

On December 17, 2003, Alvarez filed a petition for writ of habeas corpus in the Santa Clara County Superior Court. Pet.'s "Attachment Re: Section B" at 2.

On January 14, 2004, the Santa Clara County Superior Court denied the petition for writ of habeas corpus. Pet.'s Attachment Re: Section B" at 2.

On March 11, 2005, Alvarez filed a petition for writ of habeas corpus in the California Court of Appeal. Exh. 5.

On March 23, 2005, the California Court of Appeal denied the petition. Exh. 5.

On January 12, 2006, Alvarez filed a petition for writ of habeas corpus in the California

---

1. We have noticed a hearing date in accordance with the local rules, but have no objection to the matter being decided without argument. See Civil L.R. 7-1(b).

1  Supreme Court. Exh. 6.

2          On June 28, 2006, the California Supreme Court denied the petition for writ of habeas

3  corpus, citing *In re Clark*, 5 Cal.4th 750 (1993). Exh. 6.

4          On August 21, 2006, Alvarez filed the instant federal petition for writ of habeas corpus.

5  On June 26, 2007, the Court ordered respondent to show cause within 14 days why a writ of habeas

6  corpus should not be issued.  On July 23, 2007, the Court granted respondent's motion for an

7  extension of time to September 15, 2007, to respond to the order to show cause.

8                                  **ARGUMENT**

9

10                          **THE PETITION IS UNTIMELY**

11

12          This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

   (AEDPA), which imposes a one-year statute of limitations on the filing of federal habeas petitions.

13
   28 U.S.C. § 2244(d).  The purpose of the statute is to "encourag[e] prompt filings in federal court

14
   in order to protect the federal system from being forced to hear stale claims." *Carey v. Saffold*, 536

15
   U.S. 214, 226 (2002).

16
           The limitations period commences on "the date on which the judgment became final by

17
   the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

18
   2244(d)(1)(A).  Direct review includes the period for seeking certiorari.  A case becomes final when

19
   certiorari has been denied by the Supreme Court or the time for filing a petition for certiorari (90

20
   days from denial of petition for review) has expired. *See* Rules of the Supreme Court of the United

21
   States, Rule 13.1.

22
           Because Alvarez did not file a petition for writ of certiorari, his case became final on April

23
   15, 2003—90 days after the California Supreme Court denied his petition for review on January 15,

24
   2003.  Thus, absent any tolling, Alvarez had until April 15, 2004, to file a timely federal habeas

25
   corpus petition. *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

26
           The limitations period is tolled during the pendency of a properly filed state collateral

27
   challenge to the judgment. 28 U.S.C. § 2244(d)(2).  Alvarez's first state habeas petition was filed

28

1  in superior court on December 17, 2003. At that point, 246 days of the limitations period had

2  already elapsed. The statute was tolled for 28 days, until January 14, 2004, when the petition was

3  denied.

4        Alvarez then waited another 14 months, until March 11, 2005, before filing his next state

5  habeas petition, in the California Court of Appeal. In *Evans v. Chavis*, 546 U.S. 189 (2006), the

6  Supreme Court held a state habeas petition is "pending" within the meaning of § 2244(d)(2), and

7  thus tolls the statute during "gaps" between petitions, only if the subsequent petition was timely filed

8  under the applicable state rule—in California, within a "reasonable time." *Id.* at 198. The Supreme

9  Court further determined that, where the state court does not indicate the reason for its ruling, the

10 federal court must decide whether the state habeas petition was filed within what California would

11 consider a reasonable time. *Id.* The Supreme Court noted that 60 days is the longest amount of time

12 most states allow a petitioner to present a claim to a higher court, and found the six-month delay

13 before it unreasonable under state law. *Id.* at 201; *accord Gaston v. Palmer*, 447 F.3d 1165, 1167

14 (9th Cir. 2006) ("Given the length of the delays between Gaston's filings in the California state

15 courts, given the lack of a clear statement by the California legislature or the California courts that

16 Gaston's delays are 'reasonable,' and given the lack of explanation or justification for the delays, we

17 now hold that Gaston is not entitled to 'gap' tolling for the delays described above of 15 months, 18

18 months, and 10 months."). Here, Alvarez's 14-month delay in proceeding to the state appellate court

19 was clearly unreasonable. Thus, Alvarez is not entitled to "gap" tolling between his first and second

20 state habeas petitions.

21       This is significant because the statute of limitations expired during that interval. Alvarez

22 had 119 days remaining in the limitations period after tolling for the first state habeas petition, or

23 until May 13, 2004, to file a timely federal petition, which he failed to do. Further, Alvarez's

24 subsequent state habeas petitions did not revive the limitations period once it had expired. *Ferguson*

25 *v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation

26 of the limitations period that has ended before the state petition was filed"). In addition, petitioner's

27 last state habeas did not toll the statute at all, because it was denied as untimely under state law and

28 therefore was not "properly filed." *Pace v. diGuglielmo*, 544 U.S. 408 (2005); *Bonner v. Carey*, 425

Mot. to Dismiss Pet. For Writ of HC As Untimely                                Alvarez v. Ayers, Jr.

C 06-05027 MJJ

4

1  F.3d 1145, 1148-1149 (9th Cir. 2005), amended 439 F.3d 993 (9th Cir. 2006). Accordingly, the

2  federal petition is untimely.

3

4                              **CONCLUSION**

5          Respondent respectfully requests that the petition for writ of habeas corpus be dismissed

6  with prejudice for failure to comply with 28 U.S.C. § 2244(d)

7          Dated:  August 30, 2007

8                              Respectfully submitted,

9                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

10                             DANE R. GILLETTE
                               Chief Assistant Attorney General

11                             GERALD A. ENGLER
                               Senior Assistant Attorney General

12                             PEGGY S. RUFFRA
                               Supervising Deputy Attorney General

13

14

15

16                             VIOLET M. LEE
                               Deputy Attorney General

17                             Attorneys for Respondent

18

19  20100812.wpd
    SF2007401783

20

21

22

23

24

25

26

27

28

Mot. to Dismiss Pet. For Writ of HC As Untimely                    Alvarez v. Ayers, Jr.
                                                                   C 06-05027 MJJ

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | VIOLET M. LEE, State Bar No. 77144
Deputy Attorney General
6 |  455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 | Telephone:  (415) 703-5896
Fax:  (415) 703-1234
8 | Email:  Violet.Lee@doj.ca.gov

9 | Attorneys for Respondent

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | ANGEL JESUS ALVAREZ,                                    C 06-05027 MJJ

16 | Petitioner,                     **MOTION TO DISMISS
PETITION FOR WRIT OF
HABEAS CORPUS AS
UNTIMELY**

17 | v.

ROBERT AYERS, JR., Warden,

18 | Respondent.                    Hearing:      October 30, 2007
Time:         9:30 a.m.
19 |                                Courtroom:    11
Judge:        The Honorable
20 |                                              Martin Jenkins

21

22 |       PLEASE TAKE NOTICE that on October 30, 2007, at 9:30 a.m., respondent will

23 | move the Court for an order dismissing the petition for writ of habeas corpus for failure to

24 | comply with the statute of limitations set forth in 28 U.S.C. § 2244(d).  A motion to dismiss in

25 | lieu of an answer on the merits is proper where the petition is procedurally defective.  *See White

26 | v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989); *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.

27

28

1    1990); Rules Governing 28 U.S.C. § 2254 Cases, Rule 4, and Advisory Committee Notes.[1/]

2

3                                    **STATEMENT OF THE CASE**

4            A Santa Clara County jury convicted petitioner Angel Jesus Alvarez of aggravated sexual

5    assault of a child (Cal. Penal Code § 269), two counts of corporal injury or punishment of a child

6    (Cal. Penal Code § 273d(a)), and two counts of misdemeanor child endangerment (Cal. Penal Code

7    § 273a(b)). Exh. 1. On May 26, 2000, the trial court sentenced Alvarez to state prison for a term

8    of 17 years to life.

9            On June 16, 2000, Alvarez filed a notice of appeal. Exh. 2.

10           On June 24, 2002, while his appeal was pending, Alvarez filed a petition for writ of habeas

11   corpus in the California Court of Appeal. Exh. 3.

12           On October 25, 2002, the California Court of Appeal affirmed the judgment on appeal and

13   denied the petition for writ of habeas corpus. Exh. 1.

14           On December 2, 2002, Alvarez filed a petition for review in the California Supreme Court.

15   Exh. 4.

16           On January 15, 2003, the California Supreme Court denied the petition for review. Exh.

17   4.

18           On December 17, 2003, Alvarez filed a petition for writ of habeas corpus in the Santa

19   Clara County Superior Court. Pet.'s "Attachment Re: Section B" at 2.

20           On January 14, 2004, the Santa Clara County Superior Court denied the petition for writ

21   of habeas corpus. Pet.'s Attachment Re: Section B" at 2.

22           On March 11, 2005, Alvarez filed a petition for writ of habeas corpus in the California

23   Court of Appeal. Exh. 5.

24           On March 23, 2005, the California Court of Appeal denied the petition. Exh. 5.

25           On January 12, 2006, Alvarez filed a petition for writ of habeas corpus in the California

26

27   _____

28           1. We have noticed a hearing date in accordance with the local rules, but have no objection
     to the matter being decided without argument. See Civil L.R. 7-1(b).

Mot. to Dismiss Pet. For Writ of HC As Untimely                              Alvarez v. Ayers, Jr.
                                                                             C 06-05027 MJJ

1   Supreme Court. Exh. 6.

2           On June 28, 2006, the California Supreme Court denied the petition for writ of habeas

3   corpus, citing *In re Clark*, 5 Cal.4th 750 (1993). Exh. 6.

4           On August 21, 2006, Alvarez filed the instant federal petition for writ of habeas corpus.

5   On June 26, 2007, the Court ordered respondent to show cause within 14 days why a writ of habeas

6   corpus should not be issued.   On July 23, 2007, the Court granted respondent's motion for an

7   extension of time to September 15, 2007, to respond to the order to show cause.

8                                   **ARGUMENT**

9

10                        **THE PETITION IS UNTIMELY**

11

12          This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

    (AEDPA), which imposes a one-year statute of limitations on the filing of federal habeas petitions.
13
    28 U.S.C. § 2244(d).  The purpose of the statute is to "encourag[e] prompt filings in federal court
14
    in order to protect the federal system from being forced to hear stale claims." *Carey v. Saffold*, 536
15
    U.S. 214, 226 (2002).
16
            The limitations period commences on "the date on which the judgment became final by
17
    the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §
18
    2244(d)(1)(A).  Direct review includes the period for seeking certiorari.  A case becomes final when
19
    certiorari has been denied by the Supreme Court or the time for filing a petition for certiorari (90
20
    days from denial of petition for review) has expired. *See* Rules of the Supreme Court of the United
21
    States, Rule 13.1.
22
            Because Alvarez did not file a petition for writ of certiorari, his case became final on April
23
    15, 2003—90 days after the California Supreme Court denied his petition for review on January 15,
24
    2003.  Thus, absent any tolling, Alvarez had until April 15, 2004, to file a timely federal habeas
25
    corpus petition. *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).
26
            The limitations period is tolled during the pendency of a properly filed state collateral
27
    challenge to the judgment. 28 U.S.C. § 2244(d)(2).  Alvarez's first state habeas petition was filed
28

1  in superior court on December 17, 2003.  At that point, 246 days of the limitations period had

2  already elapsed.  The statute was tolled for 28 days, until January 14, 2004, when the petition was

3  denied.

4        Alvarez then waited another 14 months, until March 11, 2005, before filing his next state

5  habeas petition, in the California Court of Appeal.  In *Evans v. Chavis*, 546 U.S. 189 (2006), the

6  Supreme Court held a state habeas petition is "pending" within the meaning of § 2244(d)(2), and

7  thus tolls the statute during "gaps" between petitions, only if the subsequent petition was timely filed

8  under the applicable state rule—in California, within a "reasonable time." *Id.* at 198.  The Supreme

9  Court further determined that, where the state court does not indicate the reason for its ruling, the

10  federal court must decide whether the state habeas petition was filed within what California would

11  consider a reasonable time.  *Id.*  The Supreme Court noted that 60 days is the longest amount of time

12  most states allow a petitioner to present a claim to a higher court, and found the six-month delay

13  before it unreasonable under state law.  *Id.* at 201; *accord Gaston v. Palmer*, 447 F.3d 1165, 1167

14  (9th Cir. 2006) ("Given the length of the delays between Gaston's filings in the California state

15  courts, given the lack of a clear statement by the California legislature or the California courts that

16  Gaston's delays are 'reasonable,' and given the lack of explanation or justification for the delays, we

17  now hold that Gaston is not entitled to 'gap' tolling for the delays described above of 15 months, 18

18  months, and 10 months.").  Here, Alvarez's 14-month delay in proceeding to the state appellate court

19  was clearly unreasonable.  Thus, Alvarez is not entitled to "gap" tolling between his first and second

20  state habeas petitions.

21        This is significant because the statute of limitations expired during that interval.  Alvarez

22  had 119 days remaining in the limitations period after tolling for the first state habeas petition, or

23  until May 13, 2004, to file a timely federal petition, which he failed to do.  Further, Alvarez's

24  subsequent state habeas petitions did not revive the limitations period once it had expired. *Ferguson*

25  *v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation

26  of the limitations period that has ended before the state petition was filed").  In addition, petitioner's

27  last state habeas did not toll the statute at all, because it was denied as untimely under state law and

28  therefore was not "properly filed." *Pace v. diGuglielmo*, 544 U.S. 408 (2005); *Bonner v. Carey*, 425

1  F.3d 1145, 1148-1149 (9th Cir. 2005), amended 439 F.3d 993 (9th Cir. 2006). Accordingly, the

2  federal petition is untimely.

3

4  **CONCLUSION**

5       Respondent respectfully requests that the petition for writ of habeas corpus be dismissed

6  with prejudice for failure to comply with 28 U.S.C. § 2244(d)

7       Dated:  August 30, 2007

8                 Respectfully submitted,

9                 EDMUND G. BROWN JR.
               Attorney General of the State of California

10                 DANE R. GILLETTE
               Chief Assistant Attorney General

11

12                 GERALD A. ENGLER
               Senior Assistant Attorney General

13                 PEGGY S. RUFFRA
               Supervising Deputy Attorney General

14

15

16                 VIOLET M. LEE

17                 Deputy Attorney General
               Attorneys for Respondent

18

19  20100812.wpd

20  SF2007401783

21

22

23

24

25

26

27

28

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | BEVERLY WONG, State Bar No.
Legal Secretary
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-1312
Fax: (415) 703-1234
8 | Email: Beverly.Wong@doj.ca.gov

9 | Attorneys for Respondent

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **ANGEL JESUS ALVAREZ,**

Petitioner,

16

17 | v.

**ROBERT AYERS, JR., Warden,**

18

Respondent.

19

C 06-05027 MJJ

**EXHIBITS 1 to 6**

Hearing:     October 30, 2007
Time:        9:30 a.m.
Courtroom:   11
Judge:       The Honorable
             Martin Jenkins

20

21

22

23

24 | # EXHIBITS 1 to 6

25

26

27

28

# EXHIBIT 1

SEE CONCURRING OPINION                    COPY

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

F I L E D

OCT 2 5 2002

| | |
|---|---|
| THE PEOPLE, | H021626 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 198084) |
| v. | |
| ANGEL JESUS ALVAREZ, | |
| Defendant and Appellant. | |

DOCKETED
SAN FRANCISCO

OCT 28 2002

By ___ D. VELASCO
No. SF 2002 DH 1154

| | |
|---|---|
| In re ANGEL JESUS ALVAREZ, | H024639 |
| on Habeas Corpus. | (Santa Clara County Super. Ct. No. 198084) |

DOCKETED
SAN FRANCISCO

OCT 28 2002

By ___ D. VELASCO
No. SF 2002 SH 0014

    Angel Jesus Alvarez was convicted of aggravated sexual assault of a child (Pen. Code, § 269), two counts of corporal injury or punishment of a child (Pen. Code, § 273d, subd. (a)), and two counts of misdemeanor child endangerment. (Pen. Code, § 273a, subd. (b).)[1] On appeal, Alvarez argues (1) the evidence was insufficient to support his aggravated sexual assault conviction; (2) he was improperly prohibited from exploring whether the victim had been molested by a third party; (3) the trial court erred in excluding evidence of his penile swab test for chlamydia; (4) cumulative error warrants

---

    [1] All further unspecified statutory references are to the Penal Code.

reversal; (5) the jury was improperly instructed that duress includes "hardship" and (6) his concurrent terms must be stayed under section 654. We will affirm.

Alvarez has also filed a petition for a writ of habeas corpus in which he contends that his counsel was ineffective. Having previously ordered the petition considered with the appeal, we will deny Alvarez's petition for a writ of habeas corpus.

### FACTS AND PROCEDURAL BACKGROUND

Ruby was the mother of Amanda and Anthony. She became acquainted with defendant and sometimes allowed him to care for Amanda and Anthony. Defendant occasionally kept Amanda and Anthony overnight. They either stayed at a friend's house or at a motel.

In November 1996, defendant agreed to care for the children and ended up caring for them for several nights. When defendant returned the children to Ruby, she noticed that Anthony's eyes were irritated. Anthony said that defendant had put chili in his eyes. That evening, while Ruby bathed the children, she noticed bruises. When Ruby told Amanda to wash her private area, Amanda complained that it burned and irritated her. Amanda told Ruby that when defendant gave her a bath or a shower, he sometimes stuck his finger inside her. Ruby called the police.

After talking to the children, the police officer left and Ruby got the children ready for bed. She asked them why they had not previously told her what defendant had done. Amanda said that she was scared. She said that defendant had warned her that if she told anyone about the spanking "or anything," it would be her fault if she and Anthony were taken away from their mother. Amanda told Ruby that there was something that she had not revealed, saying that defendant had made her drink his "pee-pee milk." When Ruby did not understand, Amanda said, "you know, that it's the white stuff that comes out of his pee pee."

Ruby again called the police. They arrived and spoke with the children. At around 2:00 or 3:00 a.m., Amanda was examined at Santa Clara Valley Medical Center.

2

Amanda, who weighed 56 pounds and was 47 inches tall, had bruises and abrasions on her face, legs, and the front area of her body. According to the nurse practitioner who examined Amanda, these injuries were not consistent with normal childhood play. Amanda's genital examination was relatively normal. Anthony, who weighed 44 pounds and was 41 inches tall, was also examined. He also had bruises and abrasions and a cut on his penis.

Amanda and Anthony were interviewed the next day, November 20, 1996. Amanda said that defendant put chili in Anthony's eyes. She said defendant put his "pee-pee" in her mouth while she was lying down in defendant's van, that "nasty milk" came out, and that she threw up because of the "nasty milk." She said that defendant became angry when she threw up. She also said that defendant had given her "milk" from his "pee-pee" before. She said on that same occasion defendant had touched his "pee-pee" to her "pee" and had touched her "pee" with his finger. She said defendant had threatened to hurt her and to hit her.

Anthony was interviewed. He said that defendant had put chili in Anthony's eyes, pretended to cut off his "pee-pee" with scissors, pulled his "pee-pee" back too much and had hit Anthony.

On December 5, 1996, Amanda returned to the hospital to have additional photographs taken. Ruby reported that Amanda had developed a vaginal discharge. The discharge was cultured and the results demonstrated that Amanda had chlamydia organism growing in her vagina. The November 20, 1996 baseline culture had been negative. Based upon this information, and the known incubation period for chlamydia, the physician's assistant opined that Amanda had been infected seven to 14 days before December 5, 1996, and less than three days before November 20, 1996.

Defendant was charged with the following counts: (1) continual sexual abuse (§ 288.5, subd. (a)); (2) aggravated sexual assault of a child; (3) forcible lewd or lascivious act upon a child (§ 288, subd. (b)(1)); (4) child endangerment ; (5) corporal

3

punishment or injury of a child (§ 273d, subd. (a)); (6) corporal punishment of a child; and (7) child endangerment.

At trial, Anthony testified that he was seven years old and in the first grade. He told the jury that defendant put chili in his eyes, and that defendant had done that more than once. Anthony said that defendant spanked Amanda with his shoe. Anthony also said that defendant put chili on Anthony's penis.

Amanda testified that she was eight years old and in the third grade. She said that defendant had put his "private" into her mouth, and that something "like water" came out of defendant's "private" and went into her mouth. This happened several times and took place in defendant's van and in the house. She said that defendant put his "private" near her "private," put his tongue on her "private," and put his finger in her "private." She said that defendant told her she would get into trouble if she told her mother.

DEFENSE

Defendant testified and denied committing the charged crimes. Testifying about his activities the weekend before his arrest, defendant stated that he had purchased some items at the grocery store, including fresh serrano chilis and green and yellow gummy worms. While he was driving in the van with the children, he heard the grocery bag rustling. As they were preparing to go to lunch, defendant discovered that Anthony had been hiding the chilis in his pocket. Inside the restaurant, Anthony kept rubbing his eyes and complaining of pain. Defendant took him to the restroom and splashed water into his eyes. Anthony continued to rub his eyes. Defendant believed that the chilis had caused the problem with Anthony's eyes.

Defendant testified that Ruby had told him to use his belt to "whup their asses" if Amanda and Anthony got out of control. Defendant used his belt to spank Amanda for spitting in her soup. Defendant spanked Anthony twice that weekend for playing with scissors. Anthony was using scissors to cut threads from his jeans, and defendant said, "You want to cut yourself down there?"

4

Defendant and the children spent Saturday night in the van. Defendant said that there was an unrefrigerated carton of milk in the van. Defendant testified that he and the children spent Sunday at his friend's flower shop. Anthony's eyes were red and the skin had broken. Defendant applied hydrogen peroxide under Anthony's eyes, not realizing that hydrogen peroxide should not be used near the eyes. Anthony felt a stinging sensation and said, "Don't put chili in my eyes." Defendant told him it was not chili.

Defendant spent Sunday night in the van with the children. During the middle of the night, defendant saw Amanda drinking the unrefrigerated milk. Amanda threw up in the middle of the night. When she threw up, she said the milk smelled like "pee-pee."

Defendant spent Monday night with the children at a Motel 6. Defendant delivered the children to Ruby at about 8:20 a.m. on Tuesday morning. Defendant argued with Ruby, saying that he had been forced to miss a class because he had to care for Ruby's children. He told Ruby that he spanked the children, that Anthony grabbed some chili and touched his eyes, and that defendant had tried to wash out Anthony's eyes.

Fifteen hours after he dropped off the children, defendant was arrested. According to defendant, he told the police that he had not molested Amanda, and had not put chilis in Anthony's eyes or on his penis. Defendant said that while he was in jail he spoke with Ruby. When he asked why she was making the accusations, she responded, "You shouldn't have fucked with me, this is what you get for fucking with me."

Defendant testified that he had never experienced symptoms of chlamydia. He normally had severe bronchitis once a year and that was sometimes treated with antibiotics. When arrested, police used a swab to wipe the outside of his penis and he independently took a test in which the inside of his urethra was tested.

Ramon Quintanilla testified that defendant lived in his house while defendant was going to school. Quintanilla said that defendant brought Amanda and Anthony to the house every other weekend. An employee of a restaurant testified that he recalled an occasion where one of the children with defendant got something in his eye and was

rubbing it and crying. The employee did not see how the irritant got in the child's eye. Leslie Hernandez testified that she had helped defendant watch the children during the weekend before defendant's arrest. Ejaz Anam testified that on the Monday before defendant's arrest, Anam had loaned defendant money to pay for a motel.

Amy Portmore, qualified as an expert in sexually transmitted diseases, testified about chlamydia. She stated that two categories of chlamydia were pertinent. These were (1) chlamydia trachomatis, which is a sexually transmitted disease; and (2) chlamydia pneumoniae, which is a respiratory infection that causes pneumonia and bronchitis. Dr. Portmore examined a blood analysis performed on defendant for chlamydia. Based upon the results, she surmised that defendant had had chlamydia but she could not say which type that he had had. She stated that there was very little data on whether chlamydia could be transmitted by digital penetration but stated that such transmission was possible. She estimated that up to 5 percent of cases were transmitted this way. Dr. Portmore testified that the incubation period for chlamydia is one to three weeks for genital transmission.

The parties stipulated that while defendant was in jail he was seen by the jail medical staff nine times. The medical reports contain no indication that defendant had physical symptoms of any kind. The parties also stipulated that the police seized various items from defendant's van. These items included underwear and a sleeping bag which tested negative for the presence of semen.

Defendant was convicted of aggravated sexual assault and two counts of corporal injury of a child. He was convicted of the lesser included offense, misdemeanor child endangerment, in counts 4 and 7. The jury found defendant not guilty of counts one and three.

Defendant was sentenced to 15 years to life for aggravated sexual assault. He was sentenced to two years on count 5 and a concurrent term of two years on count 6. He received concurrent jail terms for the two misdemeanors.

DISCUSSION

A. *Sufficiency of the Evidence of Aggravated Sexual Assault*

Defendant contends that there was insufficient evidence that he committed the oral copulation by means of force, violence, duress, or fear of immediate and unlawful bodily injury. This argument is without merit.

Section 269 is violated when the defendant commits certain acts upon a child who is under 14 years of age and 10 or more years younger than the defendant. Among the included acts is "(4) Oral copulation, in violation of section 288a, when committed by force, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 269, subd. (a)(4), italics added.)

Duress means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary sensibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*People v. Pittmon* (1985) 170 Cal.App.3d 38, 50; see *also People v. Schulz* (1992) 2 Cal.App.4th 999, 1005; *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320.)

Duress involves psychological coercion but psychological coercion, without more, may not be sufficient. (*People v. Hecker* (1990) 219 Cal.App.3d 1238, 1250-1251.) When considering whether duress exists, we examine the totality of the circumstances, including the age of the victim and her relationship to the defendant. (*People v. Pittmon, supra*, 170 Cal.App.3d at p. 51.) A defendant's position of dominance and authority are relevant. (*People v. Schultz, supra*, 2 Cal.App.4th at p. 1005.) In deciding whether there was duress, it is also useful to consider the nature of the act. For example, the prohibited conduct may greatly exceed the minimum touching necessary and may include conduct that is vile, disgusting or unnatural to the victim. We may also examine the nature of the act in view of the age and maturity of the victim. Some children approaching 14 years of age may be maturing sexually and willing to acquiesce or perform a wider range of

7

conduct than a younger child. In sum, there is sufficient evidence of duress if the totality of the circumstances supports an inference that the victim's participation was at least partly the result of an implied threat. (*People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1578-1579; *People v. Espinoza, supra,* 95 Cal.App.4th at p. 1321.)

In this case, there was sufficient evidence to warrant an inference that Amanda's participation in the act of oral copulation was at least partly the result of an implied threat. At the time of the offense, Amanda was five years old. The act of molestation was not a mild act of touching. Defendant committed acts of oral copulation upon Amanda, ejaculating in her mouth, and causing her to throw up. Defendant was in a position of authority, being Amanda's longtime babysitter. Amanda testified that defendant told her to keep their sexual activity secret and said that if she told her mother she would get into trouble. Amanda told her mother that defendant had said she and Anthony would be taken away from their mother if they ever revealed that they were spanked "or anything." Amanda testified that defendant spanked her, and that he had hit her with a shoe when he was mad. Defendant admitted spanking Amanda.

Defendant contends that this evidence is insufficient because it is not clear that the implied threats preceded the molestations. But Amanda testified to multiple acts of molestation. She stated that defendant had orally copulated her more than two times that weekend, and that he had committed other sexual acts with her. By defendant's own account, he spanked Amanda relatively early on during the weekend encounter. Defendant's claim that the evidence is "hopelessly unclear" on the timing of the threats overlooks our task as a reviewing court. "This court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People v. Redmond* (1969) 71 Cal.2d 745, 755; see also *People v. Johnson,* (1980) 26 Cal.3d 557, 576-577.) "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no

8

hypothesis whatever is there sufficient substantial evidence to support it. [Citation.]"
(*People v. Redmond, supra,* 71 Cal.2d at p. 755; see also *People v. Johnson, supra,*
26 Cal.3d at pp. 576-577.) Viewing the evidence under these standards, there was
substantial evidence of duress.

## B. *Evidence of Molestation by Third Party*

Relying upon Evidence Code section 782, defendant argues that the trial court
abused its discretion because it failed to hold a hearing so that Amanda could be
questioned about whether her biological father, Ivan, had molested her and whether she
had witnessed Ivan and Rubio having sex. We disagree.

Evidence Code section 782 restricts a defendant's ability in a sexual offense case
to present evidence of the victim's sexual conduct to attack the victim's credibility.[2] The
statute mandates that a certain procedure be followed before the evidence may be
admitted.

Evidence Code section 782 does not apply here. The proffered evidence was not
the type of evidence governed by Evidence Code section 782. According to defendant's
offer of proof, Amanda told defendant in October 1996, that Ivan had touched her "down
there." Defendant also claimed that sometime in late summer of 1996 Amanda confided
in defendant that she had seen her mother and father kissing each other and "doing nasty
things."

---

[2] Under Evidence Code section 782, the defendant must (1) make a written
motion "stating that the defense has an offer of proof of the relevancy of evidence of the
sexual conduct of the complaining witness proposed to be presented and its relevancy in
attacking the credibility of the complaining witness. . . ." and (2) accompany the motion
with an affidavit stating the offer of proof. If the court finds the offer of proof sufficient,
the court "shall order a hearing out of the presence of the jury, if any, and at the hearing
allow the questioning of the complaining witness regarding the offer of proof made by
the defendant." At the end of the hearing, if the court finds that the evidence "is relevant
pursuant to Section 780, and is not inadmissible pursuant to Section 352 of this code, the
court may make an order stating what evidence may be introduced . . . ." (Evid. Code,
§ 782.)

With respect to Amanda's statement that her father touched her "down there," Evidence Code section 782 was inapplicable because the statement was not being offered to attack Amanda's credibility or to show the basis of her sexual knowledge. Evidence Code section 782 concerns the introduction of evidence to attack the victim's credibility. In seeking to introduce Amanda's statement that her father touched her "down there," defendant does not argue that Amanda's statement was false. This is therefore not a situation where a prior false accusation of molestation is relevant to the issue of the victim's credibility. (See *People v. Franklin* (1994) 25 Cal.App.4th 328, 335.)

Relying upon *People v. Daggett* (1990) 225 Cal.App.3d 751, defendant contends the evidence was admissible to establish a basis for Amanda's sexual knowledge apart from defendant's acts. However, in defendant's offer of proof, this evidence was not offered for that purpose. Rather, the evidence that Amanda said her father touched her "down there" was offered because defendant claimed that Amanda's statement was true and that it was therefore relevant to show that Amanda may have contracted chlamydia from someone other than defendant.

Evidence Code section 782 also does not apply to Amanda's statement that she saw her mother and father doing "nasty things." As noted, Evidence Code section 782 concerns the sexual conduct of the complaining witness, in this case Amanda. Amanda's statement that she saw her mother and father doing "nasty things" does not implicate sexual conduct by Amanda. In *People v. Casas* (1986) 181 Cal.App.3d 889, 895, the court indicated that sexual conduct, as used in Evidence Code section 782, encompassed behavior that shows the actor's or speaker's willingness to engage in sexual activity. (See also *People v. Franklin, supra*, 25 Cal.App.4th at p. 334.) Amanda's observation of her parents does not fall within this definition.

For these reasons, we conclude that Evidence Code section 782 does not apply. As a result, we necessarily reject defendant's claim that the trial court abused its discretion in failing to hold a hearing under Evidence Code section 782.

We also conclude that the exclusion of the evidence does not warrant reversal. With respect to touching by Ivan, the trial court did not abuse its discretion in excluding the evidence because it was not especially probative on the issue of the source of Amanda's infection. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201 [appellate court reviews trial court's ruling as to admissibility of evidence for abuse of discretion].) First, the testimony indicated that it was highly unlikely, if not impossible, for chlamydia to be transmitted digitally. Second, any touching by Ivan had to have occurred prior to October 6, 1996, yet there was no evidence that Amanda had any symptoms prior to November 20, 1996, and Amanda's November 20, 1996 baseline culture was negative. The evidence disclosed that the normal incubation period for chlamydia is seven to 14 days, and possibly three weeks. Both experts agreed that it was unlikely for symptoms to appear after this period. Accordingly, the trial court could properly conclude that the evidence that Amanda told defendant that Ivan touched her "down there" was not probative on the issue of the source of Amanda's chlamydia infection.

The trial court also did not abuse its discretion in excluding the evidence that Amanda saw her parents doing "nasty things." It was within the trial court's discretion to decide the evidence was not probative on the issue of Amanda's ability to describe sexual actions. Amanda testified that defendant put his penis in her mouth, that liquid came out, and that it made her throw up. She told her mother that defendant made her drink his "pee-pee milk" and that "white stuff" came out of his "pee pee." The detail and specificity of Amanda's description of orally copulating defendant is in stark contrast to her comment about "nasty things." However, even if the trial court did err in excluding the evidence, the exclusion certainly did not result in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, § 354.) The link between Amanda's statement in late summer 1996 that she saw her parents doing "nasty things" and her specific description of acts she claimed defendant committed in November 1996 was too weak for it to be reasonably probable that the exclusion affected the verdict.

## C. *Penile Swab Evidence*

Defendant argues that evidence of a penile swab test performed on defendant on June 18, 1997, was improperly excluded. We conclude that reversal is not required. At trial, defendant sought to introduce evidence of the results of defendant's penile swab test (which were presumably negative). Defense counsel recognized that there was a significant intervening time between Amanda's December 1996 infection and defendant's June 18, 1997 test. As justification for the test delay, counsel said that he had not received notice of Amanda's positive chlamydia test "until quite late."

Although we believe that the trial court should have allowed defendant to introduce this evidence, we conclude that the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) It is unlikely that evidence that defendant tested negative for chlamydia on June 18, 1997, would have convinced the jury that defendant did not have chlamydia in November 1996. This is especially true given that evidence was introduced, via a blood analysis, that defendant *had* had chlamydia in the past, either chlamydia trachomatis, which is what Amanda had, or chlamydia pneumoniae. Given the other evidence of defendant's guilt, including Amanda and Anthony's testimony, it is not reasonably probable that the jury would have reached a different result had they considered the results of defendant's June 18, 1997 penile swab test.[3]

## D. *Instruction Defining Duress*

---

[3] Defendant also argues that cumulative error requires reversal. This argument is without merit. (See *People v. Kelly* (1990) 51 Cal.3d 931, 970.)

Defendant contends that his aggravated sexual assault conviction must be reversed because the jury was improperly instructed on the definition of duress. We conclude that reversal is not required.

The trial court instructed the jury under CALJIC No. 10.42, which defined duress.[4] Among other things, it stated that the definition of duress meant a "direct or implied threat of . . . *hardship* . . . ." (CALJIC No. 10.42, italics added.)

In 1993, the Legislature deleted the term "hardship" from the rape and spousal rape statute, sections 261 and 262. *People v. Valentine* (2001) 93 Cal.App.4th 1241 held that the California Legislature intended to exclude "hardship" from the list of threatened harms that qualify as forcible oral copulation (§ 288a) or forcible penetration with a foreign object (§ 289, subd. (a)) because it removed "hardship" from the definition of "duress" for purposes of rape and spousal rape.

Relying upon *Valentine*, defendant says that "hardship" must also necessarily be removed as a basis for finding duress under section 269, concerning aggravated sexual assault. Since the trial court's instruction did not delete the term "hardship," defendant contends his aggravated sexual assault conviction must be reversed.

However, as already discussed, in this case there was evidence of duress in the form of direct or implied threats of force, violence, danger or retribution. Unlike *Valentine*, the theory of hardship as the source of the duress was not a theory emphasized

---

[4] Defendant was convicted in count two of aggravated sexual assault under section 269. Under section 269, the crime of aggravated sexual assault includes, "Oral copulation, in violation of Section 288a, when committed by force, violence, duress, menace, or fear of immediate or unlawful bodily injury on the victim or another person." The court instructed the jury on the elements of aggravated sexual assault by giving CALJIC No. 10.55, which did not define duress. CALJIC No. 10.42, pertaining to count three, lewd and lascivious conduct upon a child under 14 by means of force, violence, duress, etc., did define duress. The jury was informed that counts one, two and three were alternative charges for the same criminal conduct and that it could convict defendant of no more than one of these offenses.

here. Accordingly, it is not reasonably probable that a different result would have occurred had the jury considered the instruction with the word "hardship" omitted. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)

### E. *Section 654*

Defendant contends the trial court should have stayed sentence on the misdemeanor child endangerment counts. We disagree.

Section 654 provides, in pertinent part, "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 has been interpreted to permit multiple convictions stemming from a single act or omission but to bar multiple punishment for those convictions. (*People v. Siko* (1988) 45 Cal.3d 820, 823.) The purpose of section 654 is to ensure that a defendant's punishment is commensurate with his culpability. (*People v. Norrell* (1996) 13 Cal.4th 1, 8.)

Section 654 was not violated here. The two corporal punishment counts were supported by evidence that defendant beat Amanda and Anthony with such severity that he left bruises on their bodies. Defendant admitted spanking the children with his belt. The count 7 verdict, for misdemeanor child endangerment as to Anthony, was supported by evidence that defendant put chili in Anthony's eyes. The verdict in count 4, misdemeanor child endangerment as to Amanda, was supported by evidence that defendant molested Amanda in ways besides forcing her to orally copulate him (the basis for the count 2 verdict). Thus, the two convictions for misdemeanor child endangerment were based upon conduct separate from the conduct giving rise to the other counts, and were not part of a continuous course of conduct.

Finally, defendant's argument that he is entitled under *Apprendi v. New Jersey* (2000) 530 U.S. 466 to a jury trial on "factual determinations concerning the defendant's mental state at the time of his or her crimes under Penal Code section 654" is without

14

merit.  A similar argument was rejected in *People v. Cleveland* (2001) 87 Cal.App.4th 263, 265-266, with which we agree.  (See also *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022.)

## DISPOSITION

The judgment is affirmed.  The petition for a writ of habeas corpus is denied.

_____
                    RUSHING, J.


WE CONCUR:



_____
BAMATTRE-MANOUKIAN, ACTING P.J.




_____
        MIHARA, J.




*People v. Alvarez.*
H021626

RUSHING, J., Concurring

I concur in the judgment because I believe that defendant's conviction should be affirmed. However, I concur specially because I disagree with the holding in *People v. Valentine* (2001) 93 Cal.App.4th 1241.

*Valentine* relies upon the Legislature's action under Penal Code sections 261 and 262 to claim the Legislature meant to take similar action under other statutes.[1] In this respect, *Valentine* ignores the plain wording of sections 261 and 262. Section 261, subdivision (b), states that, "*As used in this section*, 'duress' means . . . ." (Italics added.) Section 262, subdivision (c), similarly states that, "*As used in this section*, 'duress' means . . . ." (Italics added.) These plain words limit those definitions of duress to sections 261 and 262. "When a statute is unambiguous, its language cannot 'be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process. [Citation.]' [Citation.]" (*Shah v. Glendale Federal Bank* (1996) 44 Cal.App.4th 1371, 1374.) Case law defining duress defines the term to include "hardship." (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 50.) And repeals by implication are not favored. (*Scott Co. v. Workers' Comp. Appeals Bd.* (1983) 139 Cal.App.3d 98, 105.) We must therefore assume that when the Legislature amended the definitions of "duress" for purposes of sections 261 and 262 it was aware of the existing case law that defined "duress" differently for other purposes and chose to leave those definitions untouched. (*Ibid.*)

*Valentine's* contrary conclusion ignores fundamental rules of statutory construction. As we have mentioned, the rape statutes define "duress" for purposes of those statutes only and case law has defined "duress" for other purposes. There is no ambiguity, doubt, or uncertainty here. There is simply nothing to interpret or construe

---

[1] All further unspecified statutory references are to the Penal Code.

such that legislative history must be consulted.  Moreover, there is nothing absurd about the differing definitions of "duress" as the *Valentine* concurring opinion acknowledges. The *Valentine* concurring opinion noted that the Legislature may have had good reason to retain "hardship" under other Penal Code sections and noted that the majority's contrary conclusion was "close to engaging in judicial legislation." (*Valentine, supra,* 93 Cal.App.4th at p. 1255 (conc. opn. of Woods, J.).)

For these reasons, I disagree with *Valentine* and believe that the instruction given by the trial court was not improper.

RUSHING, J.

*People v. Alvarez*
H021626

# EXHIBIT 2



# CALIFORNIA APPELLATE COURTS

### Case Information

Welcome

Search

E-mail

Calendar

Help

Opinions



C|C

home

## 6th Appellate District

Change court ▼

Court data last updated: 08/15/2007 10:05 AM

**Case Summary**    **Docket**    **Scheduled Actions**    **Briefs**
**Disposition**    **Parties and Attorneys**    **Trial Court**

## Docket (Register of Actions)

**The People v. Alvarez**
**Case Number H021626**

| Date | Description | Notes |
|------|-------------|-------|
| 06/16/2000 | Notice of appeal lodged/received (criminal). | |
| 06/16/2000 | Counsel appointment order filed. | |
| 06/16/2000 | Court reporter extension granted. | Reporter: Schafer, Joan (006053). Deadline extended to: 08/25/00. |
| 06/19/2000 | Court reporter extension granted. | Reporter: Traube, Lorna (006206). Deadline extended to: 08/11/00. |
| 06/23/2000 | Telephone conversation with: | ctrr Del Rosario. Wil turn in her xcript on June 27th |
| 06/26/2000 | Recommendation of counsel by SDAP filed. | Katarzyna Kozik, Esq., is assctd as cnsl for applt |
| 06/27/2000 | Court reporter extension granted. | Reporter: DelRosario, C. (091074). Deadline extended to: 07/26/00. per signed acknowledgement. |
| 07/10/2000 | Filed document entitled: | Ntfctn of cnsl for applt's change of telephone number effective immediately (Atty scrn alrdy mdfd) |
| 07/27/2000 | Telephone conversation with: | Sue, received RT from ctrr DelRosario. |
| 08/14/2000 | Telephone conversation with: | Manule at appeals; Ctrr Traube's tx is in |
| 08/29/2000 | Telephone conversation with: | Teresita, received RT from ctrr Schafer. |
| 08/29/2000 | Notice of completion of transcripts received/filed. | Re record on appeal |
| 08/29/2000 | Record on appeal filed. | C-2; R-5 (Record is in 2 doghouses) |
| 08/29/2000 | Probation report filed. | |
| 10/06/2000 | Motion/application to augment record filed. | By appellant & rex to file AOB (Tct for order) |
| 10/10/2000 | 35e letter received from: | Atty Kozik rqstng tx of tapes re Peo's Exhs 1B, 2B & 3B; & rptr's tx re prmlnry instrctns to jury on 2/8/00 rprtd by ctrr Schafer |

| | | |
|---|---|---|
| 10/12/2000 | Order filed. | Applt's applcn to augmnt the rcrd on appeal is denied; Time to file AOB is extended to 30 dys frm the date of flng of the augmtd rcrd on appeal rqstd by applt pur to 35(e) CRC. |
| 10/17/2000 | Notice to reporter to prepare transcript. | Ctrr Schafer ntfd on 10/12/00 to prpre tx of proc of 2/8/00 |
| 10/26/2000 | Notice of completion of transcripts received/filed. | Re rule 35(e) augmtd rcrd on appeal |
| 10/26/2000 | Filed augmented record pursuant to rule 35(e). | C-1 (Supp Clk's tx containing tx of tape recordings admitted into evidence (Peo's Exh nos. 1B, 2B & 3B); R-1 (Rptr's tx of crt's prlmnry instrctns to the jury gvn on 2/8/00 rprtd by ctrr Schafer) |
| 11/16/2000 | Petition for review in Supreme Court received. | From appellant from the order denying applt's mtn to augment rcrd on appeal |
| 11/22/2000 | Granted - extension of time. | Attorney: Kozik, Katarzyna Party: Alvarez, Angel (Rex to file AOB to 12/25/00-1st; Grtd; No fur exts, etc.) |
| 11/22/2000 | Petition for review filed in Supreme Court. | file requested by John |
| 11/22/2000 | Record transmitted to Supreme Court. | |
| 12/04/2000 | 35e letter received from: | Appellant's atty rqstng cpy of any Information or Amended Information filed on or after 7/28/97 and a copy of Court Exhibit 1B (not Peo's Exh 1B), a tx of electronic recording admitted into evidence as Court Exh 1A |
| 12/14/2000 | Notice of completion of transcripts received/filed. | Re rule 35(e) augmented record on appeal |
| 12/14/2000 | Filed augmented record pursuant to rule 35(e). | C-1 (Cpy of Information or amnded Information fld on after 7/28/97 & cpy of Court Exh no.1B (not Peo's Exh 1B), whch is a tx of an electronic recording admitted into evidence as Court Exh 1A |
| 12/22/2000 | Petition for review denied in Supreme Court. | Petn for rvw is denied (Sprme Crt ordr is dtd 12/20/00) |
| 12/29/2000 | Record returned from Supreme Court. | |
| 01/10/2001 | Granted - extension of time. | Attorney: Kozik, Katarzyna Party: Alvarez, Angel (Rex to file AOB to 2/12/01-2nd; Grtd; No fur exts, etc.) |
| 02/09/2001 | Motion/application to augment record filed. | By appellant & rex to file AOB (Tct for order) |

| | | |
|---|---|---|
| 02/15/2001 | Augmentation granted. (See order.) | Rcrd ordrd augmtd w/supp rptr's tx of parties opening statements held on 6/9/99 rprtd by Ctrr Schafer; AOB due 30 dys frm date of flng of augmtd rcrd on appeal (CCC) |
| 02/22/2001 | Notice to reporter to prepare transcript. | Ctrr J. Schafer ntfd on 2/20/01 to prpre tx of proc of 6/9/99 |
| 03/20/2001 | Telephone conversation with: | appeals desk, no rt from ctrr Schafer received |
| 03/20/2001 | Telephone conversation with: | ctrr Schafer, did not received notice, she will file cxr for 30 days. |
| 03/22/2001 | Note: | per fax, ctrr Schafer submitted cxr. |
| 03/23/2001 | Court reporter extension granted. | ctrr Schafer to 4/19/01. |
| 03/27/2001 | Augmented record filed. | R-1 |
| 05/01/2001 | Default sent to court appointed counsel. | Attorney: Kozik, Katarzyna Party: Alvarez, Angel |
| 06/01/2001 | Telephone conversation with: | Atty Kozik; She mailed AOB via certified mail on 5/31/01 |
| 06/05/2001 | Appellant's opening brief. | Attorney: Kozik, Katarzyna Party: Alvarez, Angel (Per rule 40(n)CRC) |
| 07/02/2001 | Granted - extension of time. | Attorney: Lee, Violet Party: The People (Rex to file RBF to 8/4/01-1st; Grtd; No fur exts, etc.) |
| 08/06/2001 | Granted - extension of time. | Attorney: Lee, Violet Party: The People (Rex to file RBF to 9/3/01-2nd; Grtd; No fur exts, etc.) |
| 08/24/2001 | Filed document entitled: | Notice of Change of Address of Kat Kozik effective 9/1/01 |
| 09/05/2001 | Change of address filed for: | Katarzyna Kozik (Old address) P. O. Box 13546 Berkeley CA 94712 (Effective 9/1/01-see event #630) |
| 09/05/2001 | Respondent notified pursuant to rule 17(b). | Attorney: Lee, Violet Party: The People |
| 10/02/2001 | Respondent's brief. | Attorney: Lee, Violet Party: The People |
| 10/22/2001 | Granted - extension of time. | Attorney: Kozik, Katarzyna Party: Alvarez, Angel (Rex to file ARB to 11/11/01-1st; Grtd) |
| 11/14/2001 | Telephone conversation with: | appellant's atty. Mailed ARB per 40 (n) on 11-13-01. |
| 11/15/2001 | Appellant's reply brief. | Attorney: Kozik, Katarzyna Party: Alvarez, Angel (Timely per rule 40(n) CRC) |
| 11/15/2001 | Case fully briefed. | |
| 01/08/2002 | Received document entitled: | Supplemental letter brief from counsel for appellant (TCT for permission to file) |
| 01/16/2002 | Filed document entitled: | Appellant's supplemental letter brief |

| | | (Permission to file granted this day) (PBM) |
|---|---|---|
| 02/08/2002 | Received document entitled: | Rspdt's rspnse to applt's supplemental LBF (TCT for permission to file) |
| 02/13/2002 | Response filed to: | Respondent's response to applt's supplemental LBF (Permission to file granted this day) |
| 04/03/2002 | Case on conference list. | April list |
| 04/19/2002 | Oral argument waiver notice sent. | |
| 04/24/2002 | Waiver of oral argument filed by: | atty general obo resp (tc) |
| 04/26/2002 | Request for oral argument filed by: | atty Kozik obo aplnt (pa) |
| 07/18/2002 | Calendar notice sent. Calendar date: | Thursday, August 8, 2002, at 9:30 a.m. |
| 08/08/2002 | Cause argued and submitted. | |
| 10/25/2002 | Opinion filed. | affirmed; clr, pbm, ndm (not published) see concurring opinion by CLR |
| 12/02/2002 | Petition for review in Supreme Court received. | From appellant |
| 12/03/2002 | Petition for review filed in Supreme Court. | |
| 12/03/2002 | Record transmitted to Supreme Court. | |
| 02/04/2003 | Note: | petition for review denied, per supreme court website on 01/15/03. |
| 02/04/2003 | Telephone conversation with: | supreme court, requested order denying petition for review. |
| 02/21/2003 | Record returned from Supreme Court. | |
| 02/25/2003 | Telephone conversation with: | supreme court, once again requested order denying petition |
| 02/26/2003 | Petition for review denied in Supreme Court. | 01/15/03 |
| 02/26/2003 | Remittitur issued. | |
| 02/26/2003 | Case complete. | |
| 03/06/2003 | Record purged - to be shipped to state records center. | |
| 06/08/2007 | Shipped to state retention center, box # / list #: | 148/85 |

**Click here** to request automatic e-mail notifications about this case.

# EXHIBIT 3

# CALIFORNIA APPELLATE COURTS

### Case Information



| | |
|---|---|
| **Welcome** | ## 6th Appellate District |
| **Search** | Court data last updated: 08/15/2007 10:05 AM |
| **E-mail** | |
| **Calendar** | **Case Summary    Docket    Scheduled Actions    Briefs** |
| **Help** | **Disposition    Parties and Attorneys    Trial Court** |
| **Opinions** | |

Change court ▾

## Docket (Register of Actions)

**In re ANGEL ALVAREZ on Habeas Corpus**
**Case Number H024639**

| Date | Description | Notes |
|---|---|---|
| 06/24/2002 | Petition for a writ of habeas corpus filed. | |
| 07/01/2002 | Considered with case # | H021626, People v. Alvarez |
| 07/01/2002 | Case fully briefed. | |
| 07/01/2002 | Order filed. | The petition for writ of habeas corpus will be considered with petitioner's appeal is case no. H021626, People v. Alvarez. |
| 07/05/2002 | Note: | H021626 on April conference list |
| 10/25/2002 | Opinion filed. | petition for writ of habeas corpus is denied; clr, pbm, ndm (not published) see concurring opinion by clr |
| 10/25/2002 | Case complete. | |
| 12/03/2002 | Petition for review filed in Supreme Court. | |
| 12/03/2002 | Record transmitted to Supreme Court. | |
| 02/26/2003 | Petition for review denied in Supreme Court. | 01/15/03 |
| 07/16/2003 | Voice Mail message for: | Cordell @ Supreme Ct. re requesting file to be returned. |
| 07/18/2003 | Record returned from Supreme Court. | |
| 07/18/2003 | Record purged - to be shipped to state records center. | |
| 05/25/2006 | Shipped to state retention center, box # / list #: | 203/83 |

**Click here** to request automatic e-mail notifications about this case.

© 2004 Judicial Council of California

# EXHIBIT 4

# CALIFORNIA APPELLATE COURTS
## Case Information



## Supreme Court

Court data last updated: 08/15/2007 10:53 AM

Change court ▼

**Case Summary**   **Docket**   **Briefs**
**Disposition**   **Parties and Attorneys**   **Lower Court**

### Docket (Register of Actions)

**PEOPLE v. ALVAREZ**
**Case Number S111782**

| Date | Description | Notes |
|------|-------------|-------|
| 12/02/2002 | Petition for review filed | by counsel for appellant/petitioner (Angel Jesus Alvarez). |
| 12/03/2002 | Record requested | H021626 & H024639 |
| 12/04/2002 | Received Court of Appeal record | 1-file jacket (H024639) |
| 12/10/2002 | Received Court of Appeal record | H021626-one box |
| 01/15/2003 | Petition for review denied | |

**Click here** to request automatic e-mail notifications about this case.

© 2004 Judicial Council of California

Supreme Court
Welcome
Search
E-mail
Calendar
Help
Opinions
C|C
home

**EXHIBIT 5**

# CALIFORNIA APPELLATE COURTS

### Case Information



| Welcome | **6th Appellate District** | Change court ▾ |

Court data last updated: 08/15/2007 10:05 AM

**Search**

**E-mail**      **Case Summary**   **Docket**   **Scheduled Actions**   **Briefs**
                    **Disposition**   **Parties and Attorneys**   **Trial Court**

**Calendar**

**Help**        ## Docket (Register of Actions)

**Opinions**   **In re Angel Alvarez on Habeas Corpus**
                **Case Number H028544**

| Date | Description | Notes |
|------|-------------|-------|
| 03/11/2005 | Petition for a writ of habeas corpus filed. | |
| 03/16/2005 | Exhibits lodged************* | One volume (Photographs) |
| 03/23/2005 | Case fully briefed. | |
| 03/23/2005 | Order denying petition filed. | The petition for writ of habeas corpus is denied. (clr, pbm, rjm) |
| 03/23/2005 | Case complete. | |
| 05/24/2005 | Record purged - to be shipped to state records center. | |

**Click here** **to request automatic e-mail notifications about this case.**

© 2004 Judicial Council of California

# EXHIBIT 6

# CALIFORNIA APPELLATE COURTS



## Case Information

### Supreme Court

Change court ▼

Court data last updated: 08/15/2007 10:53 AM

Supreme
Court

Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

<u>Case Summary</u>   <u>Docket</u>   <u>Briefs</u>
<u>Disposition</u>   <u>Parties and Attorneys</u>   <u>Lower Court</u>

## Docket (Register of Actions)

**ALVAREZ (ANGEL JESUS) ON H.C.**
**Case Number <u>S140391</u>**

| Date | Description | Notes |
|------|-------------|-------|
| 01/12/2006 | Petition for writ of habeas corpus filed | Angel Jesus Alvarez, Petitioner by Frank G. Prantil, Counsel |
| 06/28/2006 | Petition for writ of habeas corpus denied | (See In re Clark (1993) 5 Cal.4th 750.) |

**<u>Click here</u> to request automatic e-mail notifications about this case.**

© 2004 Judicial Council of California

1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11
**ANGEL JESUS ALVAREZ,**                              C 06-05027 MJJ
12
                                    Petitioner,        **[PROPOSED] ORDER**
13                                                     **DISMISSING PETITION FOR**
                                                       **WRIT OF HABEAS CORPUS**
14              **v.**

**ROBERT AYERS, JR., Warden,**
15
                                    Respondent.
16

17

18          GOOD CAUSE APPEARING, it is ordered that the petition for writ of habeas corpus

19   be dismissed with prejudice because it was filed more than one year after the case became final

20   on direct appeal.  28 U.S.C. § 2244(d).

21

22

23   Dated: _____          _____
                                                     The Honorable Martin Jenkins
24

25

26

27

28

[Proposed] Order                                                    Alvarez v. Ayers, Jr.
                                                                    Case No. C 06-05027 MJJ