1   LAW OFFICES OF SCOTT L. TEDMON
    A Professional Corporation
2   SCOTT L. TEDMON, CA. BAR # 96171
    717 K Street, Suite 227
3   Sacramento, California 95814
    Telephone: (916) 441-4540
4   Email: tedmonlaw@comcast.net

5   Attorney for Petitioner
    ANGEL JESUS ALVAREZ
6

7              IN THE UNITED STATES DISTRICT COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                   SAN FRANCISCO DIVISION

10

11  ANGEL JESUS ALVAREZ,                )
                                        )
12                    Petitioner,       )   No. C 06-05027 MJJ
                                        )
13         v.                           )   **PETITIONER ALVAREZ'S RESPONSE**
                                        )   **OPPOSING RESPONDENT'S MOTION**
14                                      )   **TO DISMISS PETITION FOR WRIT**
                                        )   **OF HABEAS CORPUS AS UNTIMELY**
15  ROBERT AYERS, JR., Warden,          )
                                        )   Date:  N/A
16                    Respondent.       )   Time:  N/A
    _____)   Judge: Honorable Martin J. Jenkins

17

18         Petitioner Angel Jesus Alvarez, by and through his counsel of record, Scott L. Tedmon,

19  hereby submits to the Court his Response to Respondent's Motion to Dismiss the Petition for Writ

20  of Habeas Corpus.

                                          **I**

21
                               **STATEMENT OF THE CASE**
22
           Petitioner agrees with Respondent's "Statement of the Case" as set forth in their Motion to
23
    Dismiss Petition, beginning at Page 2, Line 3 through Page 3, Line 7 and incorporates it as though
24
    fully set forth herein.
25
                                          **II**
26
            **PETITIONER IS ENTITLED TO EQUITABLE TOLLING BASED**
27         **ON EXTRAORDINARILY EGREGIOUS ATTORNEY MISCONDUCT**

28         Respondent argues that the one-year statute of limitation as set forth 28 U.S.C. § 2244(d),

---

**PETITIONER'S RESPONSE TO MOT. DISMISS**  1  –

1   the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), expired prior to Petitioner

2   filing his federal petition.  As such, Respondent concludes that Petitioner failed to timely file his

3   federal petition and accordingly, it should be dismissed with prejudice.

4       Petitioner does not dispute Respondent's factual and legal arguments to the extent they were

5   presented relating to the AEDPA statute of limitations.  However, there is an enormous volume of

6   evidence which Petitioner now presents to this Court which supports a finding that Petitioner is

7   entitled to equitable tolling based on extraordinarily egregious attorney misconduct.

8       The legal precedent in the Ninth Circuit which gives rise to equitable tolling based on

9   egregious attorney misconduct is found in Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003).  In

10  Spitsyn, Petitioner Spitsyn's mother retained an attorney to represent him in his federal writ  nearly

11  a full year before the AEDPA deadline.  Prior to the AEDPA deadline passing, repeated inquiries

12  regarding the federal writ status were sent to the attorney from Spitsyn and his mother.  Despite their

13  attempts to communicate, the attorney never filed a federal petition and the deadline passed with no

14  filing by or on behalf of Spitsyn.  Approximately two weeks after the deadline passed for filing the

15  federal writ, the attorney wrote a letter of regret to Spitsyn and returned the Spitsyns' payment but

16  did not send the file to Spitsyn.  Some three months later and only after disciplinary proceedings

17  were commenced by the Washington State Bar Association, the attorney returned the file to Spitsyn.

18  Proceeding pro se, Spitsyn filed his own federal habeas petition some 226 days after the statute of

19  limitations had run.  Consequently, absent a tolling of the statute of limitations, Spitsyn's petition

20  was untimely and it was denied on that basis by the district court.

21      In their review of Spitsyn, the Ninth Circuit stated that while they had determined equitable

22  tolling issues in prior cases, they had not applied equitable tolling in non-capital cases where attorney

23  negligence had caused the filing of a petition to be untimely.  The Court stated that although ordinary

24  negligence will not justify equitable tolling, they acknowledged that where an attorney's misconduct

25  is sufficiently egregious, it may constitute an "extraordinary circumstance" warranting equitable

26  tolling of AEDPA's statute of limitations. To support that position, the Court cited Ford v. Hubbard,

27  330 F.3d 1086, 1106 (9th Cir. 2003) where they held that "there are instances in which an attorney's

28  failure to take necessary steps to protect his client's interests is so egregious and atypical that the

1    court may deem equitable tolling appropriate." The Court acknowledged that equitable tolling based

2    on egregious attorney misconduct is a discretionary doctrine that turns on the facts and circumstances

3    of each particular case and does not lend itself to bright-line rules.

4         The Court then referenced the Third Circuit case of Nara v. Frank, 264 F. 3d 310, 320 (3d

5    Cir. 2001 and the Second Circuit case of Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003)

6    for the proposition that egregious attorney misconduct which is far enough outside the range of

7    behavior that reasonably could be expected by a client may be considered "extraordinary

8    circumstances" that would justify the application of equitable tolling to the one-year limitation

9    period of the AEDPA.  In their decision, the Court found that Spitsyn's attorney's conduct was so

10   deficient that there were legitimate reasons, caused by extraordinary circumstances beyond Spitsyn's

11   control, as to why the federal petition was not timely filed, such that equitable tolling for some

12   period of time was appropriate.  In the case at bar, Petitioner presents specific facts to this Court that

13   go well beyond those enumerated in Spitsyn as they relate to extraordinary egregious attorney

14   misconduct.

15        In support of his position on the issue of equitable tolling arising out of extraordinarily

16   egregious attorney misconduct, Petitioner directs the Court to his declaration attached hereto.  In his

17   declaration, Petitioner sets forth the facts and circumstances surrounding the retaining of counsels

18   Frank Prantil and Gary Diamond to represent Petitioner in his habeas matters.  More importantly,

19   Petitioner details in line-item, chronological fashion the extraordinarily egregious and

20   unconscionable conduct of both Mr. Prantil and Mr. Diamond in their representation of Petitioner.

21   Beyond the mere four corners of his declaration, in Exhibit A to his response opposing Respondent's

22   motion, Petitioner has supplied the Court with some 160 pages of documents which verify and

23   confirm the facts set forth in his declaration.[1]  Additionally, in Exhibit B, Petitioner has provided a

24   declaration from investigator Kenneth Addison wherein Mr. Addison recounts his dealings with both

25

26        [1]    In order to assist the Court's review, counsel has included a signed and unsigned version
     of Petitioner's declaration.  The unsigned version of Petitioner's declaration is identical in substance
27   to the signed version but has incorporated the specific citations to the documents contained in
     Exhibit A for ease of review.  Counsel has sent the unsigned version and Exhibit A to Petitioner for
28   his review and signature and will file it with the Court upon receipt.

PETITIONER'S RESPONSE TO MOT. DISMISS  3  –

1    Mr. Prantil and Mr. Diamond as it related to Petitioner's case. While the declaration of Petitioner,

2    taken together with the documents contained in Exhibit A and the declaration of Mr. Addison, speak

3    for themselves regarding the outrageously egregious conduct by Mr. Prantil and Mr. Diamond, a

4    summary of what this Court will find upon review of the record filed herewith is in order.

5        On October 25, 2002, Petitioner's conviction and sentence was affirmed by the California

6    Court of Appeals, Sixth District. On December 2, 2002, a petition for review of his direct appeal

7    was filed in the California Supreme Court by Petitioner's court-appointed appellate counsel, Kat

8    Kozik. In early December of 2002, upon advice of attorney Kozik, Petitioner began writing to

9    several attorneys whom he might retain to litigate a collateral attack of his wrongfully obtained

10   conviction. Among those attorneys to whom Petitioner wrote were Frank Prantil of Sacramento and

11   Gary Diamond of Rocklin. A letter was received by Petitioner from Prantil dated December 9, 2002

12   wherein Prantil advised what his fee would be to review the case. Prantil also suggested that

13   Petitioner hire an investigator. (See Exhibit A, pages A1-A2).

14       On January 15, 2003, the California Supreme Court denied the petition for review. Given

15   that no petition for certiorari was filed, Petitioner's case became final on April 15, 2003. During the

16   month of February, some two month before the case became final, Petitioner received separate letters

17   from Prantil and Diamond. Prantil's letter, dated February 5, 2003, urged Petitioner to retain him

18   immediately because the state petition needed to be filed before March 15th. Further, Prantil stated

19   that in order to stop the federal AEDPA clock, he would file a petition upon receipt of the

20   Petitioner's signature verification (See Exhibit A, page A4). It is clear from this letter that Prantil

21   was acutely aware of the time constraints imposed by the AEDPA.

22       On March 7, 2003, Petitioner received a letter from Diamond dated February 28, 2003

23   wherein Diamond claimed he had won habeas relief in 100% of his cases in the last year.   (See

24   Exhibit A, page A5). On that same date, Petitioner receive a letter from Prantil dated March 3, 2003

25   wherein Prantil cited certain habeas cases he was currently working on. In March of 2003, Petitioner

26   retained Prantil and Diamond, and attorneys Richard Dangler and Kent Russell to review his case.

27       On April 8, 2003, Petitioner received a letter from Prantil dated April 1, 2003 wherein Prantil

28   stated he was mistaken about the AEDPA deadline he had mentioned in his letter of 2/5/03 and said

1  they had until April 11, 2004 to file something. (See Exhibit A, pages A11-A12). During the month

2  of April, various letters went back and forth from Petitioner and Prantil. On April 25, 2003,

3  Diamond wrote to Petitioner and stated that he would have no problem working with another

4  attorney on the case. (See Exhibit A, page A14). After deciding to retain Diamond and Prantil,

5  Petitioner wrote letters to both counsel advising they would be working together on his case. (See

6  Exhibit A, pages A15-A16). In June of 2003, Petitioner singed retainer agreements with both

7  Diamond and Prantil. (See Exhibit A, pages A17-A27).

8       Soon after both Diamond and Prantil were retained and during the months of June through

9  September of 2003, the case languished as Prantil and Diamond failed to communicate with each

10  other. (See Exhibit A, pages A29-A32). During this period of time, Diamond did not communicate

11  with Petitioner. (See Alvarez Declaration, page 4, lines 16-21). On September 16, 2003, Petitioner

12  received a letter from Prantil dated September 11, 2003 wherein he shared his litigation strategy.

13  (See Exhibit A, pages A32-A33). In this letter, Prantil makes specific reference to his concern

14  regarding the AEDPA and California's untimeliness holding of In Re Clark. However, Prantil

15  assures Petitioner that he is in "good shape" as far as the AEDPA is concerned because his direct

16  appeal was denied in January of 2003.

17       In October, Petitioner hired investigator Kenneth Addison of Sacramento to conduct

18  investigation and work with Diamond and Prantil. (See Exhibit A, pages A34-A35). In November,

19  the relationship between Prantil and Diamond deteriorated to the point where Prantil told Petitioner

20  he refused to draft a habeas petition unless Petitioner fired Diamond or got Diamond to work with

21  him. (See Alvarez Declaration, page 4, lines 26-27).

22       On December 17, 2003, Prantil filed a habeas petition in the Santa Clara County Superior

23  Court without Diamond's assistance. On January 26, 2004, Petitioner received a letter from Prantil

24  dated January 11, 2004 wherein he provided a copy of the denial of the Santa Clara County Superior

25  Court. Prantil stated that the next step is for Diamond to file the court of appeal petition. (See

26  Exhibit A, page A36).

27       Despite the fact that Prantil had earlier stated that the AEDPA deadline was April 11, 2004,

28  and that both Prantil and Diamond were continuing to represent Petitioner, the record clearly reflects

1  that no petition was filed by either Prantil or Diamond prior to April 11, 2004.  In point of fact, even

2  with the 28 days of tolling resulting from the filing of a petition and decision of the Santa Clara

3  County Superior Court, which extended the AEDPA deadline to May 13, 2004, incredibly no

4  petition was filed with the court of appeal by either Prantil or Diamond.

5       During the months of February to June of 2004, Addison conducted extensive investigation,

6  collected evidence and kept in regular contact with Petitioner.  Additionally, Addison advised

7  Petitioner that Diamond was not returning his calls.  (See Alvarez Declaration, page 6, line 1 and

8  Exhibit B - Addison Declaration, page 3, lines 1-10).

9       From June through September of 2004, significant issues regarding Diamond continued.

10  (See Exhibit A, pages A60-A68).  On September 3, 2004, Petitioner received a letter from Prantil

11  wherein he stated that he had heard Diamond had stipulated to a six-month suspension of his bar

12  license.  In that same letter, Prantil said that it is "imperative" to file a petition with the court of

13  appeal.  Prantil goes on to state that, "So the contents are not that important.  What is important

14  though is that: (1) we must file immediately, otherwise when we get to federal court the AG may

15  contend that we have delayed filing and therefore we were not diligent and the case is time barred

16  under AEDPA, and (2) the petition and only the petition to the state supreme court must contain all

17  the issues that we need to litigate at the federal level."  (See Exhibit A, page A67-A68).

18       At this point, it is clear from the record that both Prantil and Diamond had engaged in

19  outrageous and extraordinarily egregious misconduct in their "representation" of Petitioner.  Their

20  complete lack of action in filing appropriate petitions in a timely manner on Petitioner's behalf

21  effectively amounted to client abandonment.  To make matters worse, on October 5, 2004, Petitioner

22  received a letter from Prantil dated September 30, 2004 wherein Prantil states that this is not his case

23  and he now needs additional payment to prepare a petition for the state Court of Appeal.  (See

24  Exhibit A, page A71).  This statement was made by Prantil despite the fact that in his retainer

25  agreement with Petitioner, it clearly states that part of his duties are to: "(2) Research, draft, file and

26  litigate to completion a petition for habeas corpus to be filed in the California Court of Appeal, Sixth

27  Appellate District.  (3) Research, draft, file and litigate to completion a petition for review, or for

28  habeas corpus to be filed in the California Supreme Court."  (See Exhibit A, page A25, paragraphs

1  (2) and (3)).  Prantil also confirms in his retainer agreement that he is to work with Gary Diamond

2  and the object of this joint representation is to litigate to its fullest those issues found by Prantil or

3  Diamond.  (See Exhibit A, page A25, Fourth Paragraph).

4       As the calendar turned from 2004 to 2005, still no petition was filed by Prantil.  Due to

5  Prantil's refusal to file a petition in the state court of appeal, Petitioner then retained attorney Kent

6  Russell of San Francisco to prepare a state habeas petition for filing.  (See Alvarez Declaration, page

7  7, lines 16-23).  From mid-February to mid-March, Petitioner had not heard from Prantil so he filed

8  the habeas petition drafted by attorney Russell in the California Court of Appeal, Sixth District on

9  March 11, 2005.  On March 23, 2005, the Court of Appeal denied the petition without comment.

10 (See Alvarez Declaration, page 8, lines 1-16).

11      In April, Prantil wrote a letter to Petitioner dated April 4, 2005 wherein he stated, "I don't

12 know why you filed with the court of appeal on your own and without my help.  That is behind us!

13 Please do not file a petition with the state supreme court.  That is my job and you would be foolish

14 to try this yourself because if the issues are not properly raised and fully exhausted you will lose

15 months of time when we finally get to federal court."  (See Exhibit A, page A90-A92).  It is

16 probative to note that although Prantil's letter of April 4, 2005 was written almost a full year after

17 the AEDPA statute of limitations had expired,  Prantil continues to state it is his job to file the state

18 petition in order to properly protect Petitioner's federal habeas case.  As the record clearly

19 demonstrates, nothing could be further from the truth.  In point of fact, Prantil's extraordinarily

20 egregious conduct in this matter is far beyond that of even Spitsyn's attorney, as set forth by the

21 Ninth Circuit's decision cited previously.

22      Additional time passed until finally, in September of 2005, Prantil provided Petitioner with

23 a draft of a habeas petition for the California Supreme Court, albeit incomplete.  (See Exhibit , pages

24 A108-A125).  During the last week of September, Petitioner called Prantil and asked why he was

25 taking so long.  Prantil stated that since there was no "deadline" to worry about with the state habeas

26 petition, there was no need to rush.  (See Alvarez Declaration, page 9, line 28 to page 10, line 2)

27      In October of 2005, Prantil sent Petitioner another incomplete draft of the state habeas

28 petition. (See Exhibit A, pages A127-A148).  In November of 2005, Prantil sent Petitioner a letter

1    dated November 7, 2005 wherein he states he was still unable to provide a final draft because he had

2    just located and reviewed the declarations and evidence provided by investigator Addison.  (See

3    Exhibit A, pages A149-A150).  On December 29, 2005, Prantil finally provided Petitioner with a

4    complete and final draft of the habeas petition to be filed in the California Supreme Court.   (See

5    Exhibit A, page A151).  On January 12, 2006, almost 10 months after the state Court of Appeals

6    denied Petitioner's habeas petition, Prantil filed a habeas petition with the California Supreme Court.

7    (See Exhibit A, page A152).

8            On July 6, 2006, Petitioner received a letter from Prantil dated July 6, 2006 wherein Prantil

9    mailed Petitioner a copy of the California Supreme Court's 6/28/06 denial.  Prantil stated he needed

10   additional funds to proceed in federal court.  Then, incredibly and for the first time, Prantil admitted

11   to Petitioner that he was ineligible to practice law before any state court.  Further, Prantil provided

12   Petitioner a document that disclosed he had been busy defending himself before the California State

13   Bar in hearings on 4/27/05, 4/28/05, 5/11/05, 6/15/05, 8/9/05 and 10/12/05.  (See Exhibit A, plages

14   A156-A159).  Upon receipt of Prantil's letter, Petitioner immediately wrote a letter to Prantil dated

15   July 11, 2006 wherein Petitioner states his disgust and outrage as to how Prantil had misled him.

16   Specifically, Petitioner stated to Prantil in the second paragraph of his letter, "In March 2005, the

17   state appellate court denied my petition without comment - no procedural bar.  On many occasions

18   since then, you assured me that we were good on the timing and it took you 10 months to file my

19   petition!  Now my petition cannot be reviewed in federal court!  This is my life on the line!"

20   Petitioner goes on to detail other areas in which Prantil lied to him.  (See Exhibit A, page A160).

21           A review of the record provided herein clearly demonstrates that the misconduct engaged in

22   by Frank Prantil and Gary Diamond in their "representation" of Petitioner goes well beyond

23   egregious.  Prantil and Diamond's misconduct in this case is extraordinarily egregious and is, in a

24   word, outrageous.  The facts of this case, as detailed herein and in the record, clearly provide the

25   "extraordinary circumstances" necessary to warrant this Court's finding that equitable tolling of the

26   AEDPA statue of limitations is appropriate.  Based on the foregoing, Petitioner respectfully requests

27   the Court find that equitable tolling of the AEDPA statute of limitations is appropriate and order

28   Respondent to show cause why Petitioner's Writ of Habeas Corpus should not be issued.

1

### III

2

### PETITIONER HAS MADE A COLORABLE SHOWING OF
### FACTUAL INNOCENCE SUFFICIENT TO EXCUSE PROCEDURAL
### DEFAULT AND HIS WRIT SHOULD BE DETERMINED ON THE MERITS

3

4          As a second and independent basis for allowing Petitioner to proceed with his writ of habeas

5   corpus on the merits, Petitioner contends that he has made a colorable showing of factual innocence

6   sufficient to excuse the procedural default sought by Respondent.  Pursuant to holding in Coley v.

7   Gonzales, 55 F.3d 1385 (9th Cir. 1995), procedural default can be excused if there is a colorable

8   showing of factual innocence.  In Coley, the Ninth Circuit stated, "Application of the fundamental

9   miscarriage of Justice exception 'makes clear that a claim of "actual innocence" is not itself a

10  constitutional claim, but instead is a gateway through which a habeas petitioner must pass to have

11  his otherwise barred constitutional claim considered on the merits.'  Herrera v. Collins, 122 L.Ed.

12  2d 203, 113 S.Ct 853, 863 (1993)."  The factual innocence exception is utilized only to remedy a

13  procedural error of constitutional proportion that has probably resulted in the conviction of an

14  innocent person.  This is precisely what Petitioner's present circumstances entail and the factual

15  innocence exception should be utilized by this Court to allow Petitioner's otherwise barred

16  constitutional claims to be considered on the merits.

17          In support of his position, Petitioner respectfully refers the Court to his federal petition for

18  writ of habeas corpus.  Petitioner's contends that the fact-based issues raised in his writ support a

19  colorable showing of factual innocence.  While Petitioner will not restate herein the entire writ he

20  previously filed, there are facts and corresponding arguments raised within his writ which make a

21  colorable showing of factual innocence.  Among these include:

22          1. The government's failure to disclose that the alleged victim, Amanda, was infected with

23  chlamydia until it was too late for Petitioner to be excluded as the alleged perpetrator.  (See Writ at

24  pages 8 and 9).

25          2.  The government's failure to produce the test results of the red blanket found in

26  Petitioner's van.  (See Writ at pages 9 and 10).

27          3.  Petitioner's penile swab exam of June 16, 1997 which was negative for the detection of

28  chlamydia.  (See Writ at page 13).

1    4. Statements obtained from various witnesses by Investigator Ken Addison which support

2  Petitioner's claim of factual innocence.  (See Writ at pages 24-26).

3    The Supreme Court took up this issue in the case of <u>Schlup v. Delo</u>, 115 S.Ct. 851, 867

4  (1995).  In <u>Schlup</u>, the Court held, "To establish the requisite probability, the petitioner must show

5  that it is more likely than not that no reasonable juror would have convicted him in light of the new

6  evidence."  A review of the facts set forth in Petitioner's writ establish a colorable showing of factual

7  innocence.  Further, no reasonable juror would have convicted Petitioner in light of the new evidence

8  as summarized in items 1-4 above and set forth in detail in his writ and exhibits attached thereto.

9  As such, Petitioner requests this Court find that the factual innocence exception applies and allow

10  Petitioner's otherwise barred constitutional claims to be considered on the merits.

11                                              **IV**

12                                       **CONCLUSION**

13    Based on the foregoing, along with the records and files in this case, Petitioner Angel Jesus

14  Alvarez requests that Respondent's Motion to Dismiss the Writ of Habeas Corpus be denied and that

15  Respondent be ordered to show cause why Petitioner's Writ of Habeas Corpus should not be issued.

16  DATED: December 5, 2007            Respectfully submitted,
                                       LAW OFFICES OF SCOTT L. TEDMON
17
                                        /s/ Scott L. Tedmon
18                                     SCOTT L. TEDMON
                                       Attorney for Petitioner Angel Jesus Alvarez
19

20

21

22

23

24

25

26

27

28

**PETITIONER'S RESPONSE TO MOT. DISMISS** 10 –

**PETITIONER'S RESPONSE TO MOTION TO DISMISS**

SIGNED DECLARATION OF ANGEL JESUS ALVAREZ
(Does Not Include Citations to Exhibit A)

1   LAW OFFICES OF SCOTT L. TEDMON
    A Professional Corporation
2   SCOTT L. TEDMON, CA. BAR # 96171
    717 K Street, Suite 227
3   Sacramento, California 95814
    Telephone: (916) 441-4540
4   Email: tedmonlaw@comcast.net

5   Attorney for Petitioner
    ANGEL JESUS ALVAREZ
6

7

8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  ANGEL JESUS ALVAREZ,            )
                                    )
13              Petitioner,         )    No.  C06-5027 MJJ
                                    )
14       v.                         )    **DECLARATION OF PETITIONER**
                                    )    **ANGEL JESUS ALVAREZ**
15                                  )
    ROBERT AYERS, JR.,              )
16                                  )
                Respondent.         )
17  _____ )

18      ANGEL ALVAREZ states under penalty of perjury:

19      1. I am the Petitioner in the above-entitled case.

20      2.  10/25/02:  While at High Desert State Prison (HDSP) in Susanville, California, my

21  wrongful conviction and life sentence were affirmed by the California Court of Appeal, Sixth

22  District, No. H-021626

23      3. 12/02/02: Petition for Review of direct appeal was filed in the California Supreme Court,

24  No. S-111782, by my court-appointed appellate attorney.

25      4.  After the Petition for Review was filed, my appellate attorney notified me that if and

26  when the petition is denied, she would not be able to continue representing me in any other court

27  proceeding under the terms of her appointment.  She advised me to seek and retain private counsel

28  to litigate a collateral attack.

**Dec. Of Angel Jesus Alvarez**        –  1  –

5. 12/02/02: During this week, I wrote to several attorneys in Northern California, including Frank G. Prantil of Sacramento (Prantil) and Gary M. Diamond (Diamond) of Rocklin and asked for fee information.

6. 12/16/02: Prison officials delivered a letter to me from Prantil dated 12/09/02. In this letter he quoted his fees to "review" my case and suggested I hire a private investigator. He stated he should be paid, separately from his fees to litigate, to "supervise and communicate" with the investigator.

7. December 2002: Over a telephone call, Prantil insisted I should retain him immediately, but I told him I was waiting for other attorneys to reply before I decide.

8. 01/15/03: The state of California Supreme Court denied the Petition for Review.

9. January 2003: During another phone call, Prantil claimed:

    a. He knew the other attorneys I had written to;

    b. He was better skilled than them because on many occasions he had to "take over" cases the other attorneys couldn't handle;

    c. He had won the release of many clients through writs of habeas corpus; and

    d. He would provide "published cases" to prove his winning ability.

10. 02/10/03: On this day I received a letter from both Prantil and Diamond. Diamond's letter, dated 02/02/03, only quoted his fees to review my case. Prantil's letter, dated 02/05/03, urged me to retain him immediately because the AEDPA clock on my case was set to expire on 03/15/03. I was unable to reach Prantil over the phone, so I called my court-appointed appellate attorney who told me she was almost certain the AEDPA deadline was over a year away.

11. 02/24/03: On or about this day, I wrote to Prantil asking for an explanation to his recent letter. I also asked why he had failed to provide me with the promised citations of his "published cases" he had boasted about over the telephone.

12. 03/07/03: On this day I received a letter from both Diamond and Prantil. Diamond's letter, dated 02/28/03, Diamond claimed to have won habeas relief in 100% of his cases in the last year. Prantil's letter, dated 03/03/03, Prantil cited <u>People v. Sanchez</u> (2001) and <u>Hart v. Gomez</u> (9th Cir. 1999). Sanchez was a murder case reversed on direct appeal and Hart was a child molestation

case reversed on federal habeas corpus.  Prantil further claimed he had "several cases presently pending before the 9th Circuit" that he believed would be published, and that soon another one of his clients would have his murder convictions set aside.  He made no mention of my letter of 02/24/03.

13.  March 2003: I retained Prantil (letter dated 3/24/03), Diamond, and attorneys Richard Dangler and Kent Russell to review my case.  The fees quoted by each attorney was paid in full.

14.  04/08/03: I received a letter from Prantil dated 04/01/03.  Prantil stated he was mistaken about the deadline mentioned in his letter of 02/05/03 and made the following statement:

"Once we file in the state court, the AEDPA clock stops running and it doesn't start running again until 30 days after the state supreme court denies the habeas petition to be filed there."

15.  04/08/03: Also on this day, I met with Diamond at HDSP to discuss his review of my case.  Even though I had paid and asked for a written evaluation, he decided to provide one in person, nothing in writing.  I told Diamond I would make my decision on who to retain after the other attorneys complete their review of my case.

16.  04/11/03: I received a letter from Prantil dated 04/07/03 where he confirmed receipt of my legal paperwork.  He promised a written evaluation by the end of the month (April 2003).  April came and went and I received nothing.  Prantil claimed he had sent it but HDSP legal mail logs reflect nothing was received from Prantil for me during that period.

17.  April 2003: I wrote to all attorneys asking if anyone objected to working with an attorney, from a separate firm, in a habeas litigation team.

18.  04/25/03: I received a letter from Diamond, dated 04/20/03, and he stated he had no problem working with an attorney from another firm.

19.  05/15/03: After deciding to retain Diamond and Prantil, I wrote to Diamond and informed him he would be working with Prantil.

20.  05/19/03: I mailed a letter to Prantil notifying him that I had decided to retain him to work in a habeas litigation team with Diamond.

21.  June 2003: I signed retainer agreements with both Diamond and Prantil.  The fees quoted by both attorneys were paid in full.  Prantil's retainer agreement, in pertinent part:

page 1-2:

**Dec. Of Angel Jesus Alvarez**        **- 3 -**

1    "Attorney (Prantil) agrees to do the following:

2    Research, draft, file, and litigate to completion a petition for habeas

3 corpus to be filed in the

4    (1) Superior Court, Santa Clara.

5    (2) California Court of Appeal, Sixth Appellate District.

6    (3) California Supreme Court.

7    page 2:

8    ...It is further understood the ATTORNEY [Prantil] will be part of the habeas team to litigate

9 as stated above.  Attorney GARY DIAMOND has been retained to litigate and ATTORNEY

10 [Prantil] will work with him and jointly litigate."

11    22.  Despite having agreed to work together, during the time between June 6, 2003 and

12 September 16, 2003, Prantil complained on the phone that Diamond was not returning his phone

13 calls or letters, causing the case to languish from July to December 2003.  See Prantil letters dated

14 7/10/03 and 8/18/03.  After my letters went unanswered, I called Diamond on the telephone.

15 Diamond promised he would contact Prantil but he did not.  Diamond also promised habeas petition

16 drafts and none were ever mailed to me or Prantil.

17    23.  09/16/03: I received a letter from Prantil dated 09/11/03.  Prantil shared his litigation

18 strategy with me, which included his concern regarding AEDPA time limits.

19    24. October 2003: I hired investigator Kenneth Addison of Sacramento (Addison) to conduct

20 investigation and work with Diamond and Prantil.

21    25.  November 2003:  Prantil told me over the phone he refused to draft a habeas petition

22 unless I fire Diamond or get Diamond to work with him.

23    26.  12/17/03: Prantil filed a habeas petition in the Superior Court, without Diamond's help.

24    27.  12/18/03: During a phone call to Diamond, I reprimanded him for not working with

25 Prantil.  Diamond agreed to put in his share of the work by promising to file the next habeas petition,

26 if the one filed by Prantil in the Superior Court was denied.  I notified Diamond that Addison was

27 also on our team.  Diamond promised to call Prantil and Addison, and provide us with a habeas

28 petition draft.  Neither occurred.

Dec. Of Angel Jesus Alvarez        –  4  –

28.  01/26/04: I received a letter from Prantil dated 01/22/04.  Prantil had received and had provided me with a copy of the denial of the Superior Court.  Prantil also mailed a copy of the denial to Diamond.  In his letter, Prantil requested the next petition be filed by Diamond in the Court of Appeal.

29.  January to February 2004: According to Addison, he placed several calls to Diamond's office, but Diamond never returned his calls.  Prantil informed me that his calls to Diamond were also being ignored.  During February, Diamond had come to the prison (HDSP) and apologized.  He claimed he had been working very hard and had not had time to call anyone back.  Diamond promised he could rectify the injustice done to me if I am patient with him.  I asked him to provide me with some evidence of work product and he agreed to mail it to me within a week.  I never received anything.  I just kept getting letters from Diamond with empty promises.

30.  02/18/04: I received a letter from Prantil dated 02/12/04.  He had replied to some questions I made to him over the phone.  For the first time he notified me that he was unable to file anything in the U.S. Supreme Court:

"...the fees I will need to litigate through to the 9th Circuit.  I don't go any further.  I am not a [sic] admitted to the Supreme Court..."

In a phone call he explained that there was a costly and time-consuming bar exam he had to take in order to file and litigate in the U.S. Supreme Court.  Since the High Court only took one out of 20,000 cases, he told me it was a waste of time and money.  Prantil had also begun to insist that Diamond file the next petition in the state Court of Appeal.

31.  February to June 2004: I was in regular contact with Addison as he located and interviewed several witnesses.  Addison had conducted an extensive investigation and had collected evidence.  Addison told me he had mailed documents of his progress to both Prantil and Diamond.  He further notified me that Diamond was not returning his calls.

32.  March 2004 to November 2004: Addison had struggled to retrieve evidence from a previous private investigator I had hired, Eduardo Guilarte of San Jose (Guilarte).  Addison had diligently worked with attorney Eugene Martinez of Salinas (Martinez), and convinced Guilarte to release and turn over a tape recorded interview with a possible witness.  Unfortunately, Guilarte

1    edited the recording, possible to avoid an inquiry into the legality of the interview.  Subsequently,

2    Addison prepared an investigative report during the negotiations dated 05/13/04.

3          33.  May 2004: New evidence from Amelia Guerrero was documented by Addison and copies

4    mailed to Prantil and Diamond.

5          34.  06/18/04: I received a letter from Prantil dated 06/15/04.  Among other things he stated:

6    "I don't know what Diamond is doing, since I have not heard from him."

7          35.  07/13/04: I received a letter from Prantil dated 07/06/04.  Prantil had spoken to Addison

8    about me wanting to fire Diamond.  Prantil stated:

9    "Today I received word from Mr. Addison. Both Addison and myself have found it almost

10   impossible to reach him [Diamond]".

11         36.  09/02/04: I received a letter from Diamond dated 08/26/04.  In his letter, Diamond

12   complained that he had been waiting to hear from Addison and hadn't received any phone calls from

13   Addison.  Addison told me he was able to prove he had called Diamond's office several times

14   through telephone records.

15         37.  09/03/04: I received a letter from Prantil dated 08/31/04.  Prantil stated:

16   "I have heard from a reliable source that Mr. Diamond has stipulated to a six month

17   suspension of his license".

18         38.  09/03/04: On or around this date, I asked Addison to contact Diamond and fire him.  On

19   09/13/04, I was told by Mr. Addison that Diamond finally called Addison back and accepted the

20   termination but refused to refund any money.  I was told by both Prantil and Addison that they never

21   received anything from Diamond.  I never saw a single piece of work product from Diamond's

22   office.  I was told by both Prantil and Addison that they never received anything from Diamond.

23         39.  09/24/04: I received a letter from Addison dated 09/21/04.  In his letter, Addison stated:

24   "I agree with your assessment regarding the relationship between Mr. Martinez and Mr.

25   Guilarte...Mr. Martinez's failure to monitor, instruct, and supervise Mr. Guilarte is in of itself

26   ineffective assistance of counsel.  Now, we can prove that Mr. Guilarte lied to me and Mr. Martinez

27   about his initial contact with Tanya..."

28         40.  10/05/04: I received a letter from Prantil dated 09/30/04.  Prantil was requiring an

Dec. Of Angel Jesus Alvarez       -  6  -

1   additional payment to prepare a petition for the state Court of Appeal. I disagreed. I had retained him

2   to prepare a petition through all three state court levels.  He stated in his letter:

3       "And finally, I will need to be compensated for the work Diamond should have done."

4       41.   10/05/04: I received a letter from Addison dated 10/01/04: He reported that he had

5   interviewed more witnesses (Quintanilla Family) and my former appellate attorney, Kat Kozik of

6   Berkeley (Kozik).  Addison obtained evidence in support of IAC, additional new evidence from

7   Mayra-Alicia Quintanilla, of which I had no prior knowledge, and my entire case file on appeal from

8   Kozik.

9       42.   December 2004: Prantil refused to draft the next petition without additional payment,

10  even though the retainer-agreement required him to.  I was compelled to retain attorney Kent Russell

11  of San Francisco (Russell).  Russell was retained to prepare the habeas petition to file in the state

12  court of appeal.

13      43.   12/17/04: I received a letter from Addison dated 12/14/04.  Addison had turned over

14  copies of his investigation to Russell.

15      44.   January to February 2005: Russell provided drafts to me of a habeas petition to file in

16  the state Court of Appeal.

17      45.   01/20/05: I received a letter from Prantil dated 01/18/05.  While he still refused to

18  provide a draft for the Court of Appeal, he opted to write to the Santa Clara County District Attorney

19  so Addison would be allowed to view the physical items seized by police.

20      46.   02/01/05: Since Prantil refused to honor his contract, I left him a telephone message

21  demanding his reasons in face of the contract we signed.

22      47.   02/16/05: I received a letter from Prantil dated 02/11/05.  Prantil wrote to me to notify

23  me that he was going on vacation.

24      48.   02/22/05: I received a letter from Addison dated 02/15/05.  Addison reported that he had

25  made contact with Detective Stephens of the San Jose Police Department and obtained evidence

26  record logs to support the habeas petition.

27      49.   03/11/05: I hadn't heard from Prantil since he had gone on vacation, so I filed the habeas

28  petition drafted by Russell in the California Court of Appeal, Sixth District.  From February to

**Dec. Of Angel Jesus Alvarez**          –  7  –

1   March, Addison provided photocopying.

2       50. 03/13/05: I called and also wrote to Prantil to withdraw from my case and refund part

3   of the retainer.

4       51. March 2005: I received a letter from Prantil dated 03/17/05 wherein he apologized for

5   not replying to my letters. He stated:

6       "I apologize for not getting back to you sooner. It has taken me a little longer than I

7   anticipated to get caught up from my vacation."

8       52. 03/23/05: The California Court of Appeal, Sixth District, denied the habeas petition with

9   one word: "DENIED". No comment or citation was made by the court.

10      53. April 2005: I received a letter from Prantil dated 04/04/05. Prantil stated:

11      "I don't know why you filed with the court of appeal without my help...Please do not file a

12  petition with the state supreme court. That is my job..."

13      54. 04/25/05: I filed a formal complaint against Diamond. (His full name: Gary Michael

14  Diamond, Bar # 155028). The Office of Chief Trial Counsel assigned Inquiry #05-7725 to the

15  complaint.

16      55. June 2005: I reviewed a declaration draft by Addison of due diligence regarding his

17  investigation of my case, dated 06/17/05. Over the telephone, I urged Prantil to start drafting a

18  habeas petition for the state California Supreme Court.

19      56. June 2005: Based on Diamond's dishonesty and misconduct, I also filed a claim with the

20  Client Security Fund of the State Bar of California, case number 05-F-2512.

21      57. June 2005: I hired law enforcement expert Frank Saunders of Santa Cruz (Saunders) to

22  review the San Jose Police evidence logs and the laboratory reports of the Santa Clara County crime

23  lab.

24      58. July 2005: Addison provided me with documents indicating Diamond was no longer a

25  member of the California State Bar. Diamond had resigned, pending charges against him.

26      59. 07/12/05: I was transferred from High Desert State Prison in Susanville to San Quentin

27  State Prison in San Quentin, California.

28      60. July 2005: I received a letter from Prantil dated 07/21/05. Prantil had received a sworn

1  declaration from Saunders.  Saunders had reviewed the law enforcement records in my case and had

2  provided his expert opinion.  Prantil also promised a habeas draft <u>within 14 days</u>.

3      61. August 2005: During a telephone call in the first week of August 2005, Prantil stated he

4  hadn't received Addison's declaration of due diligence and requested that I ask Addison to provide

5  him with another one.  I was also concerned because I hadn't received the habeas draft in 14 days

6  as he had promised in his last letter.  Prantil told me "we are good on time, no deadline for state

7  habeas" and stated he would provide a draft within a week.

8      62. 08/24/05: I wrote Prantil a letter reminding him that it had been five (5) months since

9  the state Court of Appeal had denied the habeas petition I had filed there.

10     63. August 2005: I received a letter from Prantil dated 08/30/05.  Prantil had received

11  Addison's declaration of due diligence.  I still had not received any habeas draft for the state supreme

12  court.

13     64. September 2005: I received a letter from Prantil dated 09/19/05.  Prantil had finally

14  drafted a habeas petition for the California Supreme Court, but it was incomplete and not ready to

15  file.  The petition had blanks where pertinent dates had to be inserted.  One page of the petition

16  belonged to one of Prantil's other clients. (Prantil asked me to return that page and I mailed it back).

17     65. September 2005: During the last week of September 2005, in a telephone call, I asked

18  Prantil why he was taking so long.  He stated that since there was no "deadline" to worry about with

19  state habeas petitions, there was no need to rush.  I requested he provide me with a complete and

20  accurate draft as soon as possible.

21     66. October 2005: I received a letter from Prantil dated 10/11/05.  Prantil claimed he had

22  finished drafting the habeas petition to be filed in the state supreme court but that he was unable to

23  print it out due to problems with his computer.  He gave me no indication as to when he would send

24  me the final draft.

25     67. October 2005: I received a letter from Prantil dated 10/14/05.  He provided me with

26  another incomplete draft.  He stated he was unable to finish because he wanted my input, and

27  couldn't locate certain exhibits, particularly the Opinion affirming my conviction on direct appeal.

28     68. November 2005: I received a letter from Prantil dated 11/07/05.  Prantil was still unable

**Dec. Of Angel Jesus Alvarez**        – 9 –

1 to provide a final draft because he had just located and reviewed the declarations and evidence

2 provided by Addison <u>over a year before</u>.

3      69. December 2005: I received a letter from Prantil dated <u>12/29/05</u>. Prantil finally provided

4 me with a complete and final draft of the habeas petition to be filed in the California Supreme Court.

5 I signed the verification and mailed it back to Prantil.

6      70. January 2006: I received a letter from Prantil dated 01/17/06. Almost 10 months after

7 the California Court of Appeal had denied my habeas petition, Prantil filed a habeas petition in the

8 California Supreme Court on 01/12/06.

9      71. March 2006: I wrote to Prantil to see if a ruling by the California Supreme Court applied

10 to my case. I provided Prantil with the citation.

11      72. April 2006: I received a letter from Prantil dated 04/20/06 requesting the citation of the

12 recent ruling of the state high court. (I had already provided it in my letter to him in March.)

13      73. 04/27/06: I mailed Prantil the citation again.

14      74. 04/27/06: Also on this day, I received a letter from the State Bar of California. The

15 Client Security Fund had ruled in my favor and refunded all of the money I had paid Diamond.

16      75. June 2006: I received a letter from Prantil dated 06/13/06. Prantil again asks for the

17 citation to a case the California Supreme Court had ruled on back in March 2006.

18      76. 06/20/06: I wrote Prantil back and provided the citation for the third time. (This time,

19 I kept a copy of the letter I wrote to Prantil.)

20      77. July 2006: I received a letter from Prantil dated 07/06/06. Prantil mailed me a copy of

21 denial of the California Supreme Court, dated 06/28/06. Prantil stated that he needed additional

22 funds to proceed in the federal courts.

23      He then proceeded to admit, for the first time, that he had been ineligible to practice law

24 before any state court since March 2006. He also provided a document that explained his various

25 delays in 2005. He had been busy defending his license before the State Bar Hearing Department

26 in hearings on 04/27/05, 04/28/05, 05/11/05, 06/15/05, 08/09/05, and 10/12/05! He further notified

27 me that as of 04/18/06, he was not allowed to practice law in the Ninth Circuit Court of Appeals.

28      Finally, he stated that even though he was ineligible to practice law, he could still provide

1  attorney services by drafting my legal briefs and have me file them in pro se.

2      (NOTE: This was not the first time Prantil had been dishonest with me. In addition to his

3  dishonesty and consistent delays in replying to my inquiries, he failed to notify me of his status with

4  the State Bar. When he expressed a willingness to illegally practice law, it compelled me to seek

5  new counsel for federal court representation.)

6      78. 7/11/06: I wrote a letter to Prantil expressing my anger and serious concerns about

7  Prantil's obvious failures to adequately represent me.

8      79. 08/21/06: After retaining attorneys Scott and Cliff Tedmon of Sacramento (Tedmon),

9  they filed a petition for writ of habeas corpus in the U.S. District Court.

10     80. January 2007: I received a letter from Tedmon dated 01/08/07. Tedmon notified me that

11 Prantil had passed away in December 2006.

12     81. January 2007 to April 2007: During sessions in the law library at San Quentin State

13 Prison, I came across a published case with Prantil's name: Prantil v. State Bar of California (1979).

14 From there I learned that:

15     a. Prantil had previously been disciplined by the California State Bar in 1979;

16     b. Prantil had been charged and convicted of a felony in state court in 1985;

17     c. Prantil had previously been disbarred by the California State Bar in 1989;

18     d. Prantil had been convicted of several felonies in federal court in 1985; and

19     e. Prantil had lied to me about being admitted to the U.S. Supreme Court. (See #30 above).

20         He had been disbarred from the U.S. Supreme Court in 1989.

21     I declare, under penalty of perjury, under the laws of the State of California and the United

22 States of America, that the facts stated in this declaration are true and correct to the best of my

23 knowledge, and that the facts stated on information and belief are true to the best of my knowledge

24 and belief.

25     Executed this  27th  day of November 2007, at San Quentin, California.

26          /s/ A. J. Alvarez .
           ANGEL JESUS ALVAREZ
27          Petitioner

28

**PETITIONER'S RESPONSE TO MOTION TO DISMISS**

UNSIGNED DECLARATION OF ANGEL JESUS ALVAREZ
(Includes Citations to Exhibit A)

1  LAW OFFICES OF SCOTT L. TEDMON
   A Professional Corporation
2  SCOTT L. TEDMON, CA. BAR # 96171
   717 K Street, Suite 227
3  Sacramento, California 95814
   Telephone: (916) 441-4540
4  Email: tedmonlaw@comcast.net

5  Attorney for Petitioner
   ANGEL JESUS ALVAREZ

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  ANGEL JESUS ALVAREZ,              )
                                      )
13              Petitioner,           )      No.  C06-5027 MJJ
                                      )
14         v.                         )      **DECLARATION OF PETITIONER**
                                      )      **ANGEL JESUS ALVAREZ**
15                                    )
    ROBERT AYERS, JR.,                )
16                                    )
                Respondent.           )
17  _____)

18      ANGEL ALVAREZ states under penalty of perjury:

19      1. I am the Petitioner in the above-entitled case.

20      2.  10/25/02:  While at High Desert State Prison (HDSP) in Susanville, California, my

21  wrongful conviction and life sentence were affirmed by the California Court of Appeal, Sixth

22  District, No. H-021626

23      3. 12/02/02: Petition for Review of direct appeal was filed in the California Supreme Court,

24  No. S-111782, by my court-appointed appellate attorney.

25      4.   After the Petition for Review was filed, my appellate attorney notified me that if and

26  when the petition is denied, she would not be able to continue representing me in any other court

27  proceeding under the terms of her appointment.  She advised me to seek and retain private counsel

28  to litigate a collateral attack.

**Dec. Unsigned Of Angel Jesus Alvarez**- 1 -

5.  12/02/02: During this week, I wrote to several attorneys in Northern California, including Frank G. Prantil of Sacramento (Prantil) and Gary M. Diamond (Diamond) of Rocklin and asked for fee information.

6. 12/16/02:  Prison officials delivered a letter to me from Prantil dated 12/09/02. (Exh. A1-A2).  In this letter he quoted his fees to "review" my case and suggested I hire a private investigator. He stated he should be paid, separately from his fees to litigate, to "supervise and communicate" with the investigator.

7. December 2002: Over a telephone call, Prantil insisted I should retain him immediately, but I told him I was waiting for other attorneys to reply before I decide.

8. 01/15/03: The state of California Supreme Court denied the Petition for Review.

9. January 2003: During another phone call, Prantil claimed:

    a. He knew the other attorneys I had written to;

    b. He was better skilled than them because on many occasions he had to "take over" cases the other attorneys couldn't handle;

    c. He had won the release of many clients through writs of habeas corpus; and

    d. He would provide "published cases" to prove his winning ability.

10.  02/10/03: On this day I received a letter from both Prantil and Diamond.  Diamond's letter, dated 02/02/03 (Exh. A3), only quoted his fees to review my case.  Prantil's letter, dated 02/05/03 (Exh. A4), urged me to retain him immediately because the AEDPA clock on my case was set to expire on 03/15/03.  I was unable to reach Prantil over the phone, so I called my court-appointed appellate attorney who told me she was almost certain the AEDPA deadline was over a year away.

11.  02/24/03: On or about this day, I wrote to Prantil asking for an explanation to his recent letter.  I also asked why he had failed to provide me with the promised citations of his "published cases" he had boasted about over the telephone.

12.  03/07/03: On this day I received a letter from both Diamond and Prantil.  Diamond's letter, dated 02/28/03 (Exh. A5), Diamond claimed to have won habeas relief in 100% of his cases in the last year.  Prantil's letter, dated 03/03/03 (Exh. A6-A7), Prantil cited <u>People v. Sanchez</u> (2001)

Dec. Unsigned Of Angel Jesus Alvarez - 2 -

and <u>Hart v. Gomez</u> (9th Cir. 1999). Sanchez was a murder case reversed on direct appeal and Hart was a child molestation case reversed on federal habeas corpus. Prantil further claimed he had "several cases presently pending before the 9th Circuit" that he believed would be published, and that soon another one of his clients would have his murder convictions set aside. He made no mention of my letter of 02/24/03.

13. March 2003: I retained Prantil (Exh. A8-A9), Diamond (Exh. A10), and attorneys Richard Dangler and Kent Russell to review my case. The fees quoted by each attorney was paid in full.

14. 04/08/03: I received a letter from Prantil dated 04/01/03. (Exh. A11-A12). Prantil stated he was mistaken about the deadline mentioned in his letter of 02/05/03 and made the following statement:

"Once we file in the state court, the AEDPA clock stops running and it doesn't start running again until 30 days after the state supreme court denies the habeas petition to be filed there."

15. 04/08/03: Also on this day, I met with Diamond at HDSP to discuss his review of my case. Even though I had paid and asked for a written evaluation, he decided to provide one in person, nothing in writing. I told Diamond I would make my decision on who to retain after the other attorneys complete their review of my case.

16. 04/11/03: I received a letter from Prantil, dated 04/07/03 (Exh. A13), where he confirmed receipt of my legal paperwork. He promised a written evaluation by the end of the month (April 2003). April came and went and I received nothing. Prantil claimed he had sent it but HDSP legal mail logs reflect nothing was received from Prantil for me during that period.

17. April 2003: I wrote to all attorneys asking if anyone objected to working with an attorney, from a separate firm, in a habeas litigation team.

18. 04/25/03: I received a letter from Diamond, dated 04/20/03 (Exh. A14), and he stated he had no problem working with an attorney from another firm.

19. 05/15/03: After deciding to retain Diamond and Prantil, I wrote to Diamond and informed him he would be working with Prantil. (Exh. A15).

20. 05/19/03: I mailed a letter to Prantil notifying him that I had decided to retain him to

1    work in a habeas litigation team with Diamond. (Exh. A16).

2    21. June 2003: I signed retainer agreements with both Diamond (Exh. A17-A22) and Prantil.

3    (Exh. A23-A27).  The fees quoted by both attorneys were paid in full.  Prantil's retainer agreement,

4    in pertinent part:

5    page 1-2:

6    "Attorney (Prantil) agrees to do the following:

7    Research, draft, file, and litigate to completion a petition for habeas

8    corpus to be filed in the

9    (1) Superior Court, Santa Clara.

10    (2) California Court of Appeal, Sixth Appellate District.

11    (3) California Supreme Court.

12    page 2:

13    ...It is further understood the ATTORNEY [Prantil] will be part of the habeas team to litigate

14    as stated above.  Attorney GARY DIAMOND has been retained to litigate and ATTORNEY

15    [Prantil] will work with him and jointly litigate."

16    22.  Despite having agreed to work together, during the time between June 6, 2003 and

17    September 16, 2003, Prantil complained on the phone that Diamond was not returning his phone

18    calls or letters, causing the case to languish from July to December 2003.  See Prantil letters dated

19    7/10/03 (Exh. A28) and 8/18/03 (Exh. A29-A32).  After my letters went unanswered, I called

20    Diamond on the telephone.  Diamond promised he would contact Prantil but he did not.  Diamond

21    also promised habeas petition drafts and none were ever mailed to me or Prantil.

22    23. 09/16/03: I received a letter from Prantil dated 09/11/03. (Exh. A32-A33).  Prantil shared

23    his litigation strategy with me, which included his concern regarding AEDPA time limits.

24    24. October 2003: I hired investigator Kenneth Addison of Sacramento (Addison) to conduct

25    investigation (Exh. A34) and work with Diamond and Prantil. (Exh. A35).

26    25.  November 2003:  Prantil told me over the phone he refused to draft a habeas petition

27    unless I fire Diamond or get Diamond to work with him.

28    26. 12/17/03: Prantil filed a habeas petition in the Superior Court, without Diamond's help.

27. 12/18/03: During a phone call to Diamond, I reprimanded him for not working with Prantil. Diamond agreed to put in his share of the work by promising to file the next habeas petition, if the one filed by Prantil in the Superior Court was denied. I notified Diamond that Addison was also on our team. Diamond promised to call Prantil and Addison, and provide us with a habeas petition draft. Neither occurred.

28. 01/26/04: I received a letter from Prantil dated 01/22/04. (Exh. A36). Prantil had received and had provided me with a copy of the denial of the Superior Court. Prantil also mailed a copy of the denial to Diamond. In his letter, Prantil requested the next petition be filed by Diamond in the Court of Appeal.

29. January to February 2004: According to Addison, he placed several calls to Diamond's office, but Diamond never returned his calls. Prantil informed me that his calls to Diamond were also being ignored. During February, Diamond had come to the prison (HDSP) and apologized. (Exh. A37). He claimed he had been working very hard and had not had time to call anyone back. Diamond promised he could rectify the injustice done to me if I am patient with him. I asked him to provide me with some evidence of work product and he agreed to mail it to me within a week. I never received anything. I just kept getting letters from Diamond with empty promises.

30. 02/18/04: I received a letter from Prantil dated 02/12/04. (Exh. A38). He had replied to some questions I made to him over the phone. For the first time he notified me that he was unable to file anything in the U.S. Supreme Court:

"...the fees I will need to litigate through to the 9th Circuit. I don't go any further. I am not a [sic] admitted to the Supreme Court..."

In a phone call he explained that there was a costly and time-consuming bar exam he had to take in order to file and litigate in the U.S. Supreme Court. Since the High Court only took one out of 20,000 cases, he told me it was a waste of time and money. Prantil had also begun to insist that Diamond file the next petition in the state Court of Appeal.

31. February to June 2004: I was in regular contact with Addison as he located and interviewed several witnesses. (Exh. A39-A55). Addison had conducted an extensive investigation and had collected evidence. Addison told me he had mailed documents of his progress to both

1   Prantil and Diamond.  He further notified me that Diamond was not returning his calls.

2   32.  March 2004 to November 2004: Addison had struggled to retrieve evidence from a

3   previous private investigator I had hired, Eduardo Guilarte of San Jose (Guilarte).  Addison had

4   diligently worked with attorney Eugene Martinez of Salinas (Martinez), and convinced Guilarte to

5   release and turn over a tape recorded interview with a possible witness.  Unfortunately, Guilarte

6   edited the recording, possible to avoid an inquiry into the legality of the interview.  Subsequently,

7   Addison prepared an investigative report during the negotiations dated 05/13/04. (Exh. A56-A59).

8   33.  May 2004: New evidence from Amelia Guerrero was documented by Addison and copies

9   mailed to Prantil and Diamond. (Exh. 45-A47).

10   34.  06/18/04: I received a letter from Prantil dated 06/15/04.  (Exh. A60).  Among other

11   things he stated:

12   "I don't know what Diamond is doing, since I have not heard from him."

13   35.  07/13/04: I received a letter from Prantil dated 07/06/04.  (Exh. A61-A62).  Prantil had

14   spoken to Addison about me wanting to fire Diamond.  Prantil stated:

15   "Today I received word from Mr. Addison. Both Addison and myself have found it almost

16   impossible to reach him [Diamond]".

17   36.  09/02/04: I received a letter from Diamond dated 08/26/04. (Exh. A63).  In his letter,

18   Diamond complained that he had been waiting to hear from Addison and hadn't received any phone

19   calls from Addison.  Addison told me he was able to prove he had called Diamond's office several

20   times through telephone records. (Exh. A64-A66).

21   37. 09/03/04: I received a letter from Prantil dated 08/31/04. (Exh. A67-A68). Prantil stated:

22   "I have heard from a reliable source that Mr. Diamond has stipulated to a six month

23   suspension of his license".

24   38.  09/03/04: On or around this date, I asked Addison to contact Diamond and fire him.  On

25   09/13/04, I was told by Mr. Addison that Diamond finally called Addison back and accepted the

26   termination but refused to refund any money.  I was told by both Prantil and Addison that they never

27   received anything from Diamond.  I never saw a single piece of work product from Diamond's

28   office.  I was told by both Prantil and Addison that they never received anything from Diamond.

39. 09/24/04: I received a letter from Addison dated 09/21/04. (Exh. A69-A71). In his letter, Addison stated:

"I agree with your assessment regarding the relationship between Mr. Martinez and Mr. Guilarte...Mr. Martinez's failure to monitor, instruct, and supervise Mr. Guilarte is in of itself ineffective assistance of counsel. Now, we can prove that Mr. Guilarte lied to me and Mr. Martinez about his initial contact with Tanya..."

40. 10/05/04: I received a letter from Prantil dated 09/30/04. (Exh. A71). Prantil was requiring an additional payment to prepare a petition for the state Court of Appeal. I disagreed. I had retained him to prepare a petition through all three state court levels. He stated in his letter:

"And finally, I will need to be compensated for the work Diamond should have done."

41. 10/05/04: I received a letter from Addison dated 10/01/04. (Exh. A72-A74). He reported that he had interviewed more witnesses (Quintanilla Family) and my former appellate attorney, Kat Kozik of Berkeley (Kozik). Addison obtained evidence in support of IAC, additional new evidence from Mayra-Alicia Quintanilla, of which I had no prior knowledge, and my entire case file on appeal from Kozik.

42. December 2004: Prantil refused to draft the next petition without additional payment, even though the retainer-agreement required him to. I was compelled to retain attorney Kent Russell of San Francisco (Russell). Russell was retained to prepare the habeas petition to file in the state court of appeal.

43. 12/17/04: I received a letter from Addison dated 12/14/04. (Exh. A75-A76). Addison had turned over copies of his investigation to Russell.

44. January to February 2005: Russell provided drafts to me of a habeas petition to file in the state Court of Appeal.

45. 01/20/05: I received a letter from Prantil dated 01/18/05. (Exh. A77). While he still refused to provide a draft for the Court of Appeal, he opted to write to the Santa Clara County District Attorney so Addison would be allowed to view the physical items seized by police.

46. 02/01/05: Since Prantil refused to honor his contract, I left him a telephone message demanding his reasons in face of the contract we signed.

47. 02/16/05: I received a letter from Prantil dated 02/11/05. (Exh. A78-A79). Prantil wrote to me to notify me that he was going on vacation.

48. 02/22/05: I received a letter from Addison dated 02/15/05. (Exh. A80-A81). Addison reported that he had made contact with Detective Stephens of the San Jose Police Department and obtained evidence record logs to support the habeas petition.

49. 03/11/05: I hadn't heard from Prantil since he had gone on vacation, so I filed the habeas petition drafted by Russell in the California Court of Appeal, Sixth District. From February to March, Addison provided photocopying. (Exh. A82-A85).

50. 03/13/05: I called and also wrote to Prantil to withdraw from my case and refund part of the retainer. (Exh. A86-A87).

51. March 2005: I received a letter from Prantil dated 03/17/05 (Exh. A88-A89) wherein he apologized for not replying to my letters. He stated:

"I apologize for not getting back to you sooner. It has taken me a little longer than I anticipated to get caught up from my vacation."

52. 03/23/05: The California Court of Appeal, Sixth District, denied the habeas petition with one word: "DENIED". No comment or citation was made by the court.

53. April 2005: I received a letter from Prantil dated 04/04/05. (Exh. A90-A92). Prantil stated:

"I don't know why you filed with the court of appeal without my help...Please do not file a petition with the state supreme court. That is my job..."

54. 04/25/05: I filed a formal complaint against Diamond. (His full name: Gary Michael Diamond, Bar # 155028). The Office of Chief Trial Counsel assigned Inquiry #05-7725 to the complaint.

55. June 2005: I reviewed a declaration draft by Addison of due diligence regarding his investigation of my case, dated 06/17/05. (Exh. A93-A96). Over the telephone, I urged Prantil to start drafting a habeas petition for the state California Supreme Court.

56. June 2005: Based on Diamond's dishonesty and misconduct, I also filed a claim with the Client Security Fund of the State Bar of California, case number 05-F-2512.

57. June 2005: I hired law enforcement expert Frank Saunders of Santa Cruz (Saunders) to review the San Jose Police evidence logs and the laboratory reports of the Santa Clara County crime lab. (Exh. A101-A104).

58. July 2005: Addison provided me with documents indicating Diamond was no longer a member of the California State Bar. (Exh. A97-A99). Diamond had resigned, pending charges against him.

59. 07/12/05: I was transferred from High Desert State Prison in Susanville to San Quentin State Prison in San Quentin, California.

60. July 2005: I received a letter from Prantil dated 07/21/05. (Exh. A100-A104). Prantil had received a sworn declaration from Saunders. Saunders had reviewed the law enforcement records in my case and had provided his expert opinion. Prantil also promised a habeas draft within 14 days.

61. August 2005: During a telephone call in the first week of August 2005, Prantil stated he hadn't received Addison's declaration of due diligence and requested that I ask Addison to provide him with another one. I was also concerned because I hadn't received the habeas draft in 14 days as he had promised in his last letter. Prantil told me "we are good on time, no deadline for state habeas" and stated he would provide a draft within a week.

62. 08/24/05: I wrote Prantil a letter reminding him that it had been five (5) months since the state Court of Appeal had denied the habeas petition I had filed there. (Exh. A105).

63. August 2005: I received a letter from Prantil dated 08/30/05. (Exh. A106-A107). Prantil had received Addison's declaration of due diligence. I still had not received any habeas draft for the state supreme court.

64. September 2005: I received a letter from Prantil dated 09/19/05. Prantil had finally drafted a habeas petition for the California Supreme Court, but it was incomplete and not ready to file. The petition had blanks where pertinent dates had to be inserted. (Exh. A108-A125). One page of the petition belonged to one of Prantil's other clients. (Prantil asked me to return that page and I mailed it back).

65. September 2005: During the last week of September 2005, in a telephone call, I asked

1   Prantil why he was taking so long.  He stated that since there was no "deadline" to worry about with

2   state habeas petitions, there was no need to rush.  I requested he provide me with a complete and

3   accurate draft as soon as possible.

4       66.  October 2005: I received a letter from Prantil dated 10/11/05. (Exh. A126).  Prantil

5   claimed he had finished drafting the habeas petition to be filed in the state supreme court but that he

6   was unable to print it out due to problems with his computer.  He gave me no indication as to when

7   he would send me the final draft.

8       67.  October 2005: I received a letter from Prantil dated 10/14/05.  He provided me with

9   another incomplete draft. (Exh. A127-A148).  He stated he was unable to finish because he wanted

10  my input, and couldn't locate certain exhibits, particularly the Opinion affirming my conviction on

11  direct appeal.

12      68.  November 2005: I received a letter from Prantil dated 11/07/05. (Exh. A149-A150).

13  Prantil was still unable to provide a final draft because he had just located and reviewed the

14  declarations and evidence provided by Addison <u>over a year before</u>.

15      69.  December 2005: I received a letter from Prantil dated <u>12/29/05</u>. (Exh. A151).  Prantil

16  finally provided me with a complete and final draft of the habeas petition to be filed in the California

17  Supreme Court.  I signed the verification and mailed it back to Prantil.

18      70.  January 2006: I received a letter from Prantil dated 01/17/06. (Exh. A152).  Almost 10

19  months after the California Court of Appeal had denied my habeas petition, Prantil filed a habeas

20  petition in the California Supreme Court on 01/12/06.

21      71.  March 2006: I wrote to Prantil to see if a ruling by the California Supreme Court applied

22  to my case.  I provided Prantil with the citation.

23      72.  April 2006: I received a letter from Prantil dated 04/20/06 (Exh. A153) requesting the

24  citation of the recent ruling of the state high court.  (I had already provided it in my letter to him in

25  March.)

26      73.  04/27/06: I mailed Prantil the citation again.

27      74.  04/27/06: Also on this day, I received a letter from the State Bar of California.  The

28  Client Security Fund had ruled in my favor and refunded all of the money I had paid Diamond.

1    75. June 2006: I received a letter from Prantil dated 06/13/06. (Exh. A154). Prantil again

2    asks for the citation to a case the California Supreme Court had ruled on back in March 2006.

3    76. 06/20/06: I wrote Prantil back and provided the citation for the third time. (Exh. A155).

4    (This time, I kept a copy of the letter I wrote to Prantil.)

5    77. July 2006: I received a letter from Prantil dated 07/06/06. (Exh. A156-A159). Prantil

6    mailed me a copy of denial of the California Supreme Court, dated 06/28/06. Prantil stated that he

7    needed additional funds to proceed in the federal courts.

8    He then proceeded to admit, for the first time, that he had been ineligible to practice law

9    before any state court since March 2006. He also provided a document that explained his various

10    delays in 2005. He had been busy defending his license before the State Bar Hearing Department

11    in hearings on 04/27/05, 04/28/05, 05/11/05, 06/15/05, 08/09/05, and 10/12/05! He further notified

12    me that as of 04/18/06, he was not allowed to practice law in the Ninth Circuit Court of Appeals.

13    Finally, he stated that even though he was ineligible to practice law, he could still provide

14    attorney services by drafting my legal briefs and have me file them in pro se.

15    (NOTE: This was not the first time Prantil had been dishonest with me. In addition to his

16    dishonesty and consistent delays in replying to my inquiries, he failed to notify me of his status with

17    the State Bar. When he expressed a willingness to illegally practice law, it compelled me to seek

18    new counsel for federal court representation.)

19    78. 7/11/06: I wrote a letter to Prantil expressing my anger and serious concerns about

20    Prantil's obvious failures to adequately represent me. (Exh. A160).

21    79. 08/21/06: After retaining attorneys Scott and Cliff Tedmon of Sacramento (Tedmon),

22    they filed a petition for writ of habeas corpus in the U.S. District Court.

23    80. January 2007: I received a letter from Tedmon dated 01/08/07. Tedmon notified me that

24    Prantil had passed away in December 2006.

25    81. January 2007 to April 2007: During sessions in the law library at San Quentin State

26    Prison, I came across a published case with Prantil's name: Prantil v. State Bar of California (1979).

27    From there I learned that:

28    a. Prantil had previously been disciplined by the California State Bar in 1979;

Dec. Unsigned Of Angel Jesus Alvarez    - 11 -

1    b.  Prantil had been charged and convicted of a felony in state court in 1985;

2    c.  Prantil had previously been disbarred by the California State Bar in 1989;

3    d.  Prantil had been convicted of several felonies in federal court in 1985; and

4    e.  Prantil had lied to me about being admitted to the U.S. Supreme Court.  (See #30 above).

5        He had been disbarred from the U.S. Supreme Court in 1989.

6        I declare, under penalty of perjury, under the laws of the State of California and the United

7    States of America, that the facts stated in this declaration are true and correct to the best of my

8    knowledge, and that the facts stated on information and belief are true to the best of my knowledge

9    and belief.

10       Executed this _____ day of _____ 2007, at San Quentin, California.

11       _____
         ANGEL JESUS ALVAREZ
12       Petitioner

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PETITIONER'S RESPONSE TO MOTION TO DISMISS**

# EXHIBIT  A
# (Pages A1 - A160)

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

December 9, 2002

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

Thank you for your letter! I made a cursory look. When retained to review your case I will review your letter again. Without a review of the transcripts I cannot give you a definite opinion. I can say that habeas is not a vehicle to relitigate the facts of your case, except that if your trial attorney failed to properly investigate, (as your letter states), habeas is a proper vehicle. When making a claim of IAC we must show that a different result was probable had your attorney properly performed. And the cost of such investigation is your cost, and is independent of any of my fees to litigate. It has been my experience that investigators are rather flaky and generally give the client the run around **after** they have taken an advance. I believe it is better practice for me to handle the payment of the investigator fees from funds deposited by you into my trust account for that purpose. I will charge my hourly rate of $300 to supervise and communicate with the investigator, which hourly fee is also separate from the fees to litigate that I will quote you in my review letter. When this is done, the investigator doesn't get paid until he completes his task. You make the call.

Based upon your estimate of 1709 pages I will $2,563 to ~~$2,700~~ conduct the necessary review. That fee must be paid up front. I will work with your family on the fees to litigate. Generally I accept two-thirds down, with the balance to be paid over a 9 month period in equal monthly installments. I will continue to work with you or your family as long as the monthly payments are made.

Now to answer your questions. First my review letter will give you three options for attorney fees. Two flat rate fees and one by the hour. The range of $6,500-$17,500 is just to litigate through the state court level. This is the highest fee because the petition filed at the state level must set out all the facts and constitutional arguments. When we get to federal court the fee is generally around $8,500 to litigate at the district court

*A 1*

level.  The fee covers the anticipated work to be done there
which is different from the work done at the state level.  The
procedure is different, the pleadings and the work to be done.
But because I have set up the facts and constitutional arguments
in the state petition, the fee is not as high.

I cannot investigate, because I cannot be a witness and your
attorney at the same time.  If a witness goes sideways on us, I
would become a witness against him or her.  Therefore, only an
investigator may take the statement and investigate the case.

I have no qualms about representing you.  I am here to
litigate and protect the Constitution.  If your federal
constitutional rights were violated, I will litigate to the
fullest.  I don't back down from a fight and I give you my best.

I don't know any of the attorneys mentioned.

I don't know any of the persons you mention.

I have already stated my payment plan above.


Sincerely yours,

FRANK PRANTIL

A 2

# DIAMOND & SCHMIDT

Attorneys At Law

---

GARY M. DIAMOND
P.O. Box 420 · Rocklin, CA 95677
(916) 434-2657

BILL SCHMIDT
791 Price St. PMB #170 · Pismo Beach, CA 93449
(805) 556-0844 · Fax (805) 556-0141
bschmidt@ncinternet.net

February 2, 2003

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez,

I am in receipt of your recent letter. In answer to your question, Our fee for reviewing your case would be $1,000.00. Our fee to file a State Habeas Petition would be an additional $6,500.00. If it was required to file in Federal Court after filing in State Court, an additional $2,500.00 would be due.

If as you mentioned, we would be filing directly in the Federal Courts, our fee would be $8,500.00 total.

If I could answer any additional questions, please don't hesitate to contact my office.

Sincerely,

Gary Diamond
Diamond & Schmidt
Attorneys at Law

# DIAMOND & SCHMIDT

Attorneys At Law

GARY M. DIAMOND
P.O. Box 420
Rocklin, CA 95677

(916) 434-2657

A 3

11

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

February 5, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

Thank you for your letter. Upon receipt of the transcripts, briefs and review fee, I will send you a review fee agreement, and a verification for your signature. We are running short on time and will need to file a state petition before the 15th of March. Therefore, even before I conduct the review I will file a petition upon receipt of the verification, in order to stop the federal AEDPA clock mentioned in my first letter to you.

**Therefore, time is of the essence.**

Please provide an address for your family. I prefer to send copies of correspondence to family, because sometimes the CDC "misplaces" letters. Also, I find it very difficult to connect by telephone because I am out of my office quite often. I do my own research and I read the transcripts of my client's trials. I do not use paralegals. Therefore, it is very difficult and I prefer to contact family by mail. If they telephone me and I am not in at the time of their call, I will be glad to return the call if they will provide a date and time of when I may be able to reach them.

Sincerely yours,

FRANK PRANTIL

A4

# DIAMOND & SCHMIDT

Attorneys At Law

GARY M. DIAMOND
P.O. Box 420 · Rocklin, CA 95677
(916) 434-2657

BILL SCHMIDT
791 Price St. PMB #170 · Pismo Beach, CA 93449
(805) 556-0844 · Fax (805) 556-0141
bschmidt@ncinternet.net

February 28, 2003

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030 (A-Facility)
Susanville, CA 96127-3030

Dear Mr. Alvarez,

Thank you for your recent letter. In answer to your questions:

1.    I am confused with this question. If I prepare the writ and you pay for our services, why would you want to file it pro per?

2.    We never file any documents without the client reading and approving them.

3.    Over the last year over 100% of our writs have received Orders to Show Cause. Our fee includes filing the writ in the State Appellate and State Supreme Court.

4.    The fee we charge to review your case is applied to the preparation of the writ of habeas corpus.

If I could answer any additional questions, please don't hesitate to contact my office.

Sincerely,

Gary Diamond
Diamond & Schmidt
Attorneys at Law

# DIAMOND & SCHMIDT

Attorneys At Law

GARY M. DIAMOND
P.O. Box 420
Rocklin, CA 95677

(916) 434-2657

A5

V.

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

March 3, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

Thank you for your letter!  The only recent published cases are PEOPLE v. SANCHEZ 86 C.A.4th 970, and JAMES THOMAS HART v. GOMEZ.  I don't have the Hart cite but it was a 1999 federal 9th Circuit, reversing the denial of by all the state courts and the federal district court of the habeas petitions I filed. Hart was falsely convicted of child molest.  The 9th Circuit, as I said, reversed all the lower courts and granted the writ.  When the case was returned to the state superior court, the DA did not retry the case but dismissed the charges. The Sanchez case was a murder case, and get this, reversed by the state court of appeal. Wow!

I have several cases presently pending before the 9th Circuit, which I believe will be published.  In fact I have an en banc motion pending where the 9th Circuit ordered the AG to file a response to my petition.  That has been pending since October, another sign that the en banc petition will be granted and the original decision by the three judge panel reversed, and my client's murder conviction set aside.

I will quote three fee options in my review letter.  One will be by the hour.  One will be flat rate fees to first exhaust your state remedy, and then other quotes to litigate at the district court and 9th Circuit level.  The other option is a flat rate fee to go from the superior court all the way to the 9th Circuit.  This last option usually saves money but most imates prefer to go at this in stages.

The fee I quote to litigate at the state level includes petitions to be filed at all three levels of the state courts, i.e. superior, court of appeal, and state supreme court.  I have not had a state habeas petition granted **ever**.  The state courts are filled with X-DAs who for the most part don't even read the petitions before them, especially those written by inmates. There is a definite art to writing a brief.  There are tactics as to what issues should be raised.  All of this will be discussed

A 6

in my review letter.

I will not file any petition without sending you a draft for your approval.

I think you would be making a serious mistake if you filed my work, pro se.

The review fee is not applied to any future work. It is only for the review, which is very important. I won't lead you on. If you have a good case I will tell you. And I will give you reasons for my opinion so that you and your family can decide whether to proceed with retaining me to litigate.

I would like to send copies of correspondence between us to your family. Please provide an address.

Sincerely yours,

FRANK G. PRANTIL

A 7

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

March 24, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

I have received the necessary funds to conduct the review outlined in my first letter to you. Enclosed please find two copies of the review fee agreement. Please sign one copy and return. The other copy, which I have signed is for your records.

Upon receipt of the review fee agreement, I will conduct my review which normally takes between 5-6 weeks depending upon my case load.

I have received $2,900 from your family. I will either send them a refund, or we can apply the difference to the fees to litigate.

And finally, I need to review the briefs filed in your appeal, as well as a copy of the opinion affirming your conviction. If you do not have them, please advise. I will order them from the court and the cost can come out of the credit remaining.

Sincerely yours,

FRANK PRANTIL

A8

## ATTORNEY FEE AGREEMENT FOR REVIEW OF CASE

This agreement is required by California Business and Professions Code Section 6148 and is intended to fulfill the requirements of that section. It is executed in duplicate with each party having received an executed original. CLIENT acknowledges receipt of an executed original by his signature hereto.

## LEGAL SERVICES TO BE PROVIDED:

ANGEL ALVAREZ, hereinafter referred to as CLIENT, hereby retains FRANK PRANTIL, hereinafter referred to as ATTORNEY, to review **only** CLIENT's state conviction, in the case of PEOPLE v. ALVAREZ, Superior Court of the State of California, County of Santa Clara. ATTORNEY acknowledges receipt of approximately 1709 pages. ATTORNEY agrees to review these pleadings and materials and within 5-6 weeks will send CLIENT a letter outlining the issues ATTORNEY sees, CLIENT's chances of success and the necessary fees to litigate, whether state and/or federal, depending upon what the review discloses. To conduct this review, CLIENT agrees to pay ATTORNEY $2,563, receipt of which is hereby acknowledged.

Legal services under this contract are **only** for the review of CLIENT's case and for the letter outlining the issues that ATTORNEY sees from his review. No other services are to be provided.

This agreement constitutes the entire agreement and understanding between CLIENT and ATTORNEY. No promises, terms, conditions or obligations are made between the parties, except as provided for by this written agreement. This agreement supersedes any previous agreement, whether written or verbal, and any previous representations or communications, if there were any, between the parties. If CLIENT wishes that ATTORNEY provide any legal services not provided for under this agreement, a separate written agreement between ATTORNEY and CLIENT will be required.

This agreement is executed on _____ , 2003, at Sacramento, California.

_____
CLIENT

_____
ATTORNEY

A 9

— negligence —
rest.

# DIAMOND & SCHMIDT

Attorneys At Law

| | |
|---|---|
| GARY M. DIAMOND | BILL SCHMIDT |
| P.O. Box 420 · Rocklin, CA 95677 | 791 Price St. PMB #170 · Pismo Beach, CA 93449 |
| (916) 434-2657 | (805) 556-0844 · Fax (805) 556-0141 |
| | bschmidt@ncinternet.net |

March 25, 2003

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030
Susanville, CA 96127

Dear Mr. Alvarez,

I have reviewed all of your legal material. I have schedule an appointment to visit you Tuesday,
April 8, 2003 at 11:00am to discuss your case.

I look forward to meeting with you.

Sincerely,

*Gary Diamond*

Gary Diamond
Diamond & Schmidt
Attorneys at Law

*A 10*



**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

April 1, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

Thank you for your letter.  In view of your letter, I will
be sending copies of future correspondence between us to Mr.
Falconi, at the address in San Jose, unless you direct othewise.

I was mistaken about the deadline stated in my 2/15/03
letter.  Since the petition for review was denied on 1/15/03, we
have until April 11, 2004 to file something.  I apologize for
this mistake.  Obviously we will file well before the deadline.
Once we file in the state court, the AEDPA clock stops running
and it doesn't start running again until 30 days after the state
supreme court denies the habeas petition to be filed there.

Sanchez was a direct appeal.

Habeas litigation does not usually require an appearance by
counsel.  The petitions are filed and the court enters written
decisions.  There are exceptions.  One in particular is that if
and when we get to the 9th Circuit, I will go into SF and argue
in person before a three judge panel.

There will be no savings for your family for me to draft the
petition for you to file pro se.  The money you are paying me is
to draft that petition, make changes and file through the three
levels of state court.  If you were to do this yourself, it would
save you very little, and may jeopardize some of the strategy
that I use when we litigate through the three levels.

And, in close to 100 petitions filed by me in the last nine
years, not one evidentiary hearing was issued by a state court,
and in only one case was the AG ordered to file an answer.
Therefore, there is almost no chance that an OSC will be issued
by any state court.  When we get to federal court the procedure
is different.  And no court, either state of federal will appoint
counsel for an indigent.  It is also a very rare bird.  Death
Penalty cases are different.

A 11

Therefore, there is no way that you will obtain appointed counsel. And for sure the court will not appoint me. In the rare case where a federal judge appoints counsel, the case goes back to the federal public pretender. I can tell you many horror stories about the federal defender here in Sacto.

I understand your desire to save money. I will work with your family and do my best to reach a fee that will work for all of us. And generally I will accept a downpayment of two-thirds, with payments by the month thereafter. My review letter will provide your family three options for payment of fees. But until I conduct the review I have no way to quote fees.

Sincerely yours,

FRANK PRANTIL

A 12

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

April 7, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

I have received the briefs, letters and opinion of the court of appeal.  Thank you!

I should have the review completed before the end of this month.

Sincerely yours,

FRANK PRANTIL

cc:  Angelo Falconi

*A 13*

# DIAMOND & SCHMIDT

Attorneys At Law

GARY M. DIAMOND
P.O. Box 420 · Rocklin, CA 95677
(916) 434-2657

BILL SCHMIDT
791 Price St. PMB #170 · Pismo Beach, CA 93449
(805) 556-0844 · Fax (805) 556-0141
bschmidt@ncinternet.net

April 20, 2003

Angel Alvarez, P-81998
H.D.S.P./A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

I am in receipt of your recent letter. Our fee for filing a writ on your behalf in state court would be an additional $6,500.00. If the writ needs to be filed in Federal Court we would require an additional $2,500.00.

As to working with another attorney, we would not have a problem with this, however the division of responsibilities would have to be clearly defined before we would proceed with this arrangement.

Sincerely,

Gary Diamond
Attorney at Law

A 14

Angel Alvarez, CDC No. P-81
H.D.S.P. / A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Wednesday, May 14, 2003

Gary Diamond
Attorney At Law
P.O. Box 420
Rocklin, CA 95677

RE: State Petition For Writ of Habeas Corpus

Mr. Diamond:

Thank you for being so patient with my family and I. We recently came up with sufficient funds to retain you. I look forward to working with you. We will send you the money within the next week or two. Thank you once again for your patience.

About you working with another attorney, it will most likely be Frank Prantil from Sacramento, but it has not been confirmed. If we send you the funds now, you could begin drafting a petition for Writ of Habeas Corpus? Also please confirm the exact amount due to retain you. I will notify my family as soon as I receive your response.

Respectfully Yours,

—
—
Angel Alvarez

A 15

XVII

Sunday, May 18, 2003

Frank Prantil, Attorney
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814


RE: State Petition For Writ of Habeas Corpus


Dear Mr. Prantil:

My family recently notified me that they received your letter dated 5-01-03. It was my understanding that you would correspond with me and send my family a copy. Did you send me the same letter too?

My family has reviewed your "review letter", and we decided to retain you, for the fee you quoted (approx $9,600.00), provided you would be willing to work with another attorney. My family and I have discussed this thoroughly and would greatly appreciate it you would working with attorney Gary Diamond of Rocklin. We will still pay you your entire retainer as soon as you notify me of your decision.

If you do not want to work with attorney Gary Diamond, please return all materials sent to you to:

C. Maldonado
1357 Adrian Way
San Jose, CA 95122

I look forward to working with you.

P.S

Respectfully yours,   Angel Alvirez P-81998  H.D.S.P / A-Facility   P.O. Box 3030
Susanville, 96122

A 16

# DIAMOND & SCHMIDT

Attorneys at Law

| GARY M. DIAMOND | WILLIAM SCHMIDT |
|---|---|
| P.O. Box 420 • Rocklin, CA 95677 | 791 Price St. PMB #170 • Pismo Beach, CA 93449 |
| (916) 434-2657 | (805) 556-0844 • Fax: (805) 556-0141 |
| | bschmidt@ncinternet.net |

July 9, 2003

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030 (A Fac.)
Susanville, CA 96127

Dear Angel,

Enclosed please find a copy of your signed fee agreement along with the other documents for
your records.

Sincerely,

*Gary Diamond*

Gary Diamond
Diamond & Schmidt
Attorneys at Law

A 17

XXV

# DIAMOND & SCHMIDT

## Attorneys At Law

| GARY M. DIAMOND | BILL SCHMIDT |
|---|---|
| P.O. Box 420 · Rocklin, CA 95677 | 791 Price St. PMB #170 · Pismo Beach, CA 93449 |
| (916) 434-2657 | (805) 556-0844 · Fax (805) 556-0141 |
| | bschmidt@ncinternet.net |

## ATTORNEY-CLIENT FEE CONTRACT

This **ATTORNEY-CLIENT FEE CONTRACT** ("contract") is entered into by and between Angel Alvarez, P-81998 ("Client") and the law firm of <u>Diamond & Schmidt</u>, Attorneys at Law ("Law Firm")

1.   CONDITIONS. This contract will not take effect, and Law Firm will have no obligation to provide legal services, until Client returns a signed copy of this contract and pays the fixed fee called for under paragraph 5.

2.   **SCOPE AND DUTIES.**  Client hires Law Firm to provide legal services in connection with **Angel Alvarez's** Writ of Habeas Corpus challenging his criminal conviction. Firm will provide the following services: Review all relevant legal material, develop a strategy with Client, Draft and file a Writ of Habeas Corpus through the state courts.

3.   **LEGAL SERVICES SPECIFICALLY EXCLUDED.**  All other legal matters that are not germane on an integral part of the items specified in number 2 of this document are not covered by this contract, including any appeals unless a separate agreement is reached.

4.   **RESPONSIBILITIES OF LAW FIRM AND CLIENT.**  Law Firm shall take reasonable steps to keep Client informed of progress and to respond to Client's inquires. Client shall be truthful to the Law Firm, cooperate with Law Firm, keep Law Firm informed of developments, abide by this contract, keep Law Firm advised of Client's address, telephone number and whereabouts.

5.   **FEES.**  Client agrees to pay a total fee of $5,750.00, for Law Firm's services under this contract. The appropriate amount will be deposited by Law Firm into trust account per State Bar Regulations. Included in this amount is a non-refundable fee of $2,000. After reviewing the relevant legal material an additional $ 2,000 will be withdrawn. The remaining $1,750 will be withdrawn after the filing of the Writ of Habeas Corpus.

6.   **ARBITRATION OF FEES OR COSTS** If a dispute arises between Attorney and Client regarding attorney fees or costs under this agreement, the dispute will be submitted for arbitration under Business and Professions Code § 6200-6206, to be provided by, and in accordance with the rules of, the State Bar of California, and Attorney and Client will be bound by the result. Client understands and acknowledges that, by agreeing to binding arbitration, Client waives the right to a court or jury trial.

*A 18*

XXVI

7.  **REPRESENTATION OF ADVERSE INTEREST**.  Client is informed that the Rules of Professional Conduct of the State Bar of California require that before a Law Firm may begin or continue to represent the Client when the Law Firm has had a relationship with another party interested in the matter Law Firm must disclose all foreseeable adverse consequences. Client is advised that individuals other than himself may be paying for these legal services and this matter has been discussed in detail and Client has relayed to Law Firm that there is no conflict of interest.

8.  **ETHICAL OBLIGATIONS**.  Client is informed that the State Bar of California does not require Law Firm to carry malpractice insurance.

9.  **DISCHARGE AND WITHDRAWAL**.  Client may discharge Law Firm at any time. Law Firm is expressly authorized to withdrawal from this matter if:

    a.  Client fails to follow Law Firm's advise on a material matter ~~with~~ which JK results in or would render Law Firm's continuing representation unlawful or unethical;

    b.  Client fails to reasonably cooperate with Law Firm in preparation of and handling of Client's case.

    c.  Client misrepresents of fails to disclose material facts to Law Firm.

    d.  Client fails to pay fees and/or costs as provided for herein; or

    e.  Client fails to keep Law Firm informed of his/her current address and telephone number.

10. **NOTICE**.  Client agrees to advise Law Firm in writing of any charges in Client's address or telephone number. Absent written notice of Client's change of address mailed to Law Firm Return Receipt Requested, mailing by the Law Firm of any and all pleadings, investigation reports, correspondence, statements or other documents to the last known address of Client will constitute sufficient delivery and notice to Client

    Clients Address:    **Angel Alvarez, P-81998**
    **High Desert State Prison**
    **P.O. Box 3030**
    **Susanville, CA 96127**

11. **DISCLAIMER OF GUARANTEE**.  Nothing in this contract and nothing in the Law Firm's statement's to Client will be construed as a promise or guarantee about the outcome of Client's matter. Law Firm makes no such promises or guarantees. Law Firm's comments about the outcome of Client's matter are expressions of opinion only.

A 19

12. **GOVERNING LAW.** This contract is made in the City of Rocklin, County of Placer, State of California. All payments due to Law Firm pursuant to this Contract shall be made to Law Firm's Rocklin address (P.O. Box 420, Rocklin, California 95677), and any action for enforcement of this Contract must be brought and maintained in Placer County.

13. **EFFECTIVE DATE.** This contract will take effect when Client has performed the conditions stated in paragraph 1, but its effective date will be retroactive to the date the Law Firm first provided services. The date at the beginning of this contract is for reference only. Even if this contract does not take effect, Client will be obligated to pay Law Firm the reasonable value of any services Law Firm may have performed for Client.

"Attorney"                                          "Attorney"
William L. Schmidt          or           Gary M. Diamond

_____          7-8-03

"Client"
Angel Alvarez, P-81998

_____          Date 06/17/03

*A 20*

XXVIII

# DIAMOND & SCHMIDT

Attorneys At Law

GARY M. DIAMOND
P.O. Box 420 • Rocklin, CA 95677
(916) 434-2657

BILL SCHMIDT
791 Price St. PMB #170 • Pismo Beach, CA 93449
(805) 556-0844 • Fax (805) 556-0141
bschmidt@ncinternet.net

June 13, 2003

## AUTHORIZATION FOR RELEASE OF INFORMATION:
## GENERAL RECORDS

I, **Angel Alvarez, P-81998** , hereby authorize the California Department of Corrections (CDC) to release to Diamond & Schmidt, Attorneys at Law, all documents and records contained in my Central File ("C-File") by the CDC.

06-17-2003
_____
Date

_____
Angel Alvarez, P-81998

By signature below, I, **Angel Alvarez, P-81998** authorize the California Department of Corrections (CDC), to release to Diamond & Schmidt, Attorneys at Law, all documents and records contained in my medical file.

06-17-2003
_____
Date

_____
Angel Alvarez, P-81998

A 21

# DIAMOND & SCHMIDT

Attorneys At Law

| | |
|---|---|
| GARY M. DIAMOND<br>P.O. Box 420 • Rocklin, CA 95677<br>(916) 434-2657 | BILL SCHMIDT<br>791 Price St. PMB #170 • Pismo Beach, CA 93449<br>(805) 556-0844 • Fax (805) 556-0141<br>bschmidt@ncinternet.net |

June 13, 2003

## REPRESENTATION OF ADVERSE INTEREST

Client is informed that the Rules of Professional Conduct of the State Bar of California require that before an attorney may begin or continue to represent the client when the law firm has had a relationship with another party interested in the matter the law firm must disclose all foreseeable adverse consequences. Client is advised that individuals other than himself will be paying for these legal services and this matter has been discussed in detail and Client has relayed to Law Firm that there is no conflict of interest.

In this case, Client is advised that **Claudia Maldonado** has agreed to remit the amount of **$5,750.00** for Law Firm's Services. Any such agreement will not affect Clients obligation to pay attorneys fees and costs under attorney client contract, nor will Attorney be obligated under this agreement to enforce such agreement. Any such amounts actually received by Attorney, however, will be credited against the Attorney fees set forth in the attorney client contract.

I do hereby give the Law Firm of Diamond & Schmidt expressed written consent and authority to discuss my situation and case file with Claudia Maldonado. I furthermore indemnify and hold harmless those parties that may disclose information.

I acknowledge that a photocopied, faxed, scanned or e-mailed copy of this document carries the full force and authority of the original.

By my signature below I denote that I have read and understand the foregoing.

06/17/2003
Date

Angel Alvarez, P-81998

A 22

XXX

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

June 9, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

    I have received the necessary funds to represent you in the litigation of a petition for writ of habeas corpus.

    Enclosed please find two copies of the criminal retainer agreement. Please sign one copy and return. The other copy, which I have signed is for your records.

    Upon receipt of my signed copy of the agreement I will contact Mr. Diamond and get to work.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 23

## CRIMINAL RETAINER AGREEMENT

This agreement is required by California Business and Professions Code Section 6148 and is intended to fulfill the requirements of that section. It is executed in duplicate with each party having received an executed original.

## LEGAL SERVICES TO BE PROVIDED:

ANGEL ALVAREZ, hereinafter referrred to as CLIENT, hereby retains FRANK PRANTIL, hereinafter referred to as ATTORNEY, to represent him in filing a petition for habeas corpus, to collaterally attack his conviction in the case of PEOPLE v. ALVAREZ, Superior Court County of Santa Clara.

CLIENT agrees to pay a non-refundible retainer of $9,500, receipt of which is hereby acknowledged.

The non-refundible retainer is a true retainer, which is paid to ATTORNEY solely for the purpose of ensuring the availability of ATTORNEY in this matter. **This retainer is non-refundible regardless of when the case or the representation of CLIENT by ATTORNEY is concluded**. The retainer fee has been agreed upon by the parties, as a flat rate fee, instead of paying ATTORNEY by the hour. (His hourly rate is $300.) Under this agreement no other fees will be necessary to litigate through the three levels of the state courts. Therefore, as consideration to ATTORNEY for setting this flat rate fee, CLIENT agrees and understands that the retainer is non-refundible.

ATTORNEY agrees to do the following:

(1) Research, draft, file, and litigate to completion a

1

*A 24*

petition for habeas corpus to be filed in the Superior Court, Santa Clara.

(2) Research, draft, file, and litigate to completion a petition for habeas corpus to be filed in the California Court of Appeal, Sixth Appellate District.

(3) Research, draft, file, and litigate to completion a petition for review, or for habeas corpus to be filed in the California Supreme Court.

~~If an evidentiary hearing is ordered in any of the above proceedings, or if any of the courts order ATTORNEY to be present at any of the proceedings, CLIENT will pay $2,250 per day, as an additional charge, i.e. additional to the $9,500 retainer.~~ *CROSSED OUT AS AGREED VIA COLLECT CALL W/ ATTORNEY ON 6-12-03 at approx. 3:08 pm A.A.*

It is further understood that the issues of the petition are outlined in ATTORNEY's letter to CLIENT dated May 1, 2003, and if additional issues are to be raised **at CLIENT'S request**, CLIENT will pay on an hourly basis of $300, to research, oversee the investigation, and draft these additional issues.

It is further understood that ATTORNEY will be part of the habeas team to litigate as stated above. Attorney GARY DIAMOND has been retained to litigate and ATTORNEY will work with him and jointly will litigate. ATTORNEY, however, is only responsible for those issues which are stated in the May 1, 2003, letter. Attorney DIAMOND is responsible for other issues. The object of this joint representation is to litigate to its fullest those issues found by ATTORNEY, or attorney DIAMOND.

If CLIENT wishes that ATTORNEY provide any legal services not provided for under this agreement, a separate written agreement between ATTORNEY and CLIENT will be required. It is further

2

*A 25*

understood that the flat rate fee stated in this agreement does not include visiting CLIENT at prison. If CLIENT wishes ATTORNEY to visit him at prison, a separate fee arrangement must be made between ATTORNEY and CLIENT.

### RESPONSIBILITIES OF ATTORNEY AND CLIENT:

ATTORNEY will perform the legal services called for under this agreement, will keep CLIENT informed of progress and developments, and will respond to CLIENT's inquiries and communications. CLIENT will be truthful and cooperative with ATTORNEY, will keep ATTORNEY reasonably informed of developments and CLIENT's whereabouts, including CLIENT's current address.

### COSTS:

CLIENT will pay all "costs" in connection with ATTORNEY's representation of CLIENT under this agreement, including investigative costs, if necessary. The investigative costs are the sole responsibility of CLIENT, who must make arrangements with all investigators that may be involved in the investigation. Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, messenger service fees, photocopying expenses, printing fees and process server fees, if necessary. ATTORNEY will obtain CLIENT's consent before incurring any costs in excess of $250.00 for consultants, or expert witnesses. Within 15 days of receipt of the costs of photocopying or printing briefs, pleadings, petitions, or other legal documents, CLIENT agrees to reimburse ATTORNEY for these costs.

### DISCHARGE AND WITHDRAWAL:

CLIENT may discharge ATTORNEY at any time. ATTORNEY may withdraw with CLIENT's consent or for good cause. Good cause includes any breach of this contract by CLIENT, including but not limited to failure to pay fees or costs, or the CLIENT's refusal to cooperate with ATTORNEY. Good cause also includes any situation where ATTORNEY's continuing representation would be unlawful or unethical.

### DISCLAIMER OF GUARANTEE:

Nothing in this contract and nothing in ATTORNEY's statements to CLIENT will be construed as a promise or guarantee about the outcome of CLIENT's matter. ATTORNEY makes no such promises or guarantees. ATTORNEY's comments about any outcome are merely expressions of opinion.

A 26

3

### INSURANCE DISCLOSURE:

ATTORNEY discloses that he does <u>not</u> have nor does he maintain errors and omissions insurance coverage applicable to the services rendered under this agreement.

### EFFECTIVE DATE OF AGREEMENT:

The effective date of this agreement will be the date this agreement is executed by CLIENT and accepted by ATTORNEY, and when ATTORNEY receives the fees and costs provided for under this agreement.

### ENTIRE AGREEMENT:

This agreement constitutes the entire agreement and understanding between CLIENT and ATTORNEY, consisting of four (4) pages. No promises, terms, conditions or obligations are made between the parties, except as provided for by this written agreement. This agreement supersedes any previous agreement, whether written or verbal, and any previous representations or communications, if there were any, between the parties.

### ACKNOWLEDGEMENT OF RECEIPT OF A COPY OF THIS AGREEMENT

CLIENT acknowledges receipt of a copy of this agreement.

### EXECUTION OF AGREEMENT:

This agreement is executed at Sacramento, California, on June 9, 2003.

_____
ANGEL ALVAREZ
Client

_____
FRANK G. PRANTIL
Attorney

A 27

4

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

July 10, 2003

GARY DIAMOND
Attorney at Law
P.O. Box 420
Rocklin, CA 95677

Re: Angel Alvarez

Dear Gary:

As you probably know we both will be working on Mr. Alvar-
ez's habeas petitions.  I have been retained to exhaust his state
remedy.

I suggest that we meet sometime next week, possibly at the
law library in Auburn, in order to compare our findings, delegate
responsibility, and reach a plan to get the ball rolling.

Please call me Monday afternoon so that we may agree on a
date and time to meet.

Sincerely yours,

FRANK PRANTIL

A 28

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

August 18, 2003

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

Thank you for your letter! I have attempted several times to get together with Mr. Diamond, including sending him a letter, and as yet, no luck. I don't know what issues he has found. We need to get together, maybe a letter from you will tip the scale.

I am here to help you, that is really my goal. Your ideas about investigation are good ones. I recommend either of the two investigators:

MICHAEL A. ROSENBLUM
Attorney at Law
1442A Walnut Street
#195
Berkeley, CA 94709
510-444-6699

KENNETH ADDISON
Private Investigator
717 K Street
Suite 218
Sacramento, CA 95814
444-0888

There are a couple of things that need to be addressed.

First, I have given you a flat rate fee based upon my review of the case. The agreement states that if you want other issues raised, the flat rate fee does not include such work. I will need to charge by the hour, ($300), and will need an advance.

Secondly, it is not my function to be both the investigator and attorney. In fact it is legally wrong. The reason being, if a witness went sideways on a statement given me, I would then be a witness to attack the credibility of the witness and to testify to what the witness told me. Because an attorney cannot be both

*A 29*

a witness and the attorney for the defendant, I would be required to remove myself from the case, in order to testify.  So the **bottom line is** I don't do any investigation.

And let me say a few things about investigators.  Once they get the money, the work is very slow.  My experience has been that if monies are placed in my trust account for the investigator, and I tell him that the money is there but he won't see a dime until the project is completed, the work gets done!!!!!!!!!! Imagine that.  So, I recommend that monies be paid to either Gary or my trust account, and let either of us super-vise the investigation.  The costs of investigation supervision are not included in the flat rate fee that I have given you; again, my hourly rate comes into play.

I am not trying to squeeze money out of your family because I know how difficult it is to obtain funds.  What I am trying to do is to do the work and be paid a reasonable fee for my work. If you want to go to an hourly rate, I will be glad to change our agreement and provide that.  I get frustrated when a client asks for a flat rate fee, my agreement says the flat rate fee is based upon my review letter, and then the client wants me to do much more than I agreed to.

The issues I have found are good ones, so don't discount them.  The failure to instruct on the lesser charge alone violat-ed your right to a fair trial.

Writs are very difficult to obtain because of the damn judges.  Most could give a "shit" and regard habeas as a waste of their precious judicial time.

Circuit Judge Stephen Reinhardt, in a dissenting opinion in WOOLERY v. ARAVE (9th Cir. 1993) 8 F.3d 1325, stated the follow-ing:

"The Great Writ of habeas corpus is not a very popular instrument these days.  **Surprisingly, it is the federal judiciary which appears to find the use of the writ increas-ingly distasteful,** (emphasis added).  A habeas corpus peti-tioner must cross a field filled with procedural landmines before the merits of his claims may be heard in federal court: exhaustion of remedies, procedural default, abuse of the writ, etc.  Often he must do so without the help of a lawyer because there is no right to counsel on collateral attack, even though fundamental constitutional rights are ordinarily at stake.  The various doctrinal obstacles pro-vide abundant opportunities for state officials to foreclose any decision on the merits of habeas application simply by resorting to procedural arguments."

And that is only the top of the glacier.  Habeas is so complicated, **only an attorney that does this exclusively should even try.**  For example, you know about time limitation under AEDPA.  Another example is habeas is the only litigation where a

A 30

party does not have a right to appeal.  If the federal district court denies your petition, we must file a notice of appeal and also a motion for certificate of appealability, COA.  And the motion for a COA is first filed with the damn district judge that denied the petition, so guess what, the motion is denied.  Then an inmate must with 35 days file a motion with the 9th Circuit for a COA.  Recently I was shocked when the motions panel for the 9th Circuit denied a COA when the decision of the district court conflicted **irreconcilably** with 9th Circuit law.  The district judge ruled that my client had only 40 days from the denial by the state supreme court to file for certiorari, when in fact the rule is 90 days.  The decision clearly conflicted with <u>BOWEN v. ROE</u>, (9th Cir. 1999) 188 F.3d 1157, where the United States Court of Appeals for the 9th Circuit, held that the period of direct review includes the period within which the defendant can file for a writ of certiorari from the U.S. Supreme Court, whether or not the petition is actually filed.  Under Rule 13 of the Supreme Courts rules, the period is 90 days not 40 as the district court ruled. I have filed a petition for rehearing en banc requesting the entire panel for the 9th Circuit, some 50 justices, to look at the case.  Clearly both the district court and motions panel ignored applicable law, so it will be interesting to see what the circuit does.

You have come to the right place for help.  This is what I have done almost exclusively for the last nine years.  The law is new and changing constantly.  I have learned a lot during this period, and I have learned how to anticipate much of the bullshit that comes down from the bench.  And you are not just paying me for my time.  You are paying me for by creative skills, my ability to write concisely and persuasively.  I am constantly working on this.  I love what I do, and I will give you my best.

I hope my language does not disturb you.  I will give you my best, and there is strategy behind every move I make.  You have a good case based upon what I have seen.  If you want me to supervise the investigation, I will need an advance, and of course an advance for the investigator to be placed in my trust account.

Sincerely yours,

FRANK PRANTIL

cc: Alvarez family

A 31

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


September 11, 2003


ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Mr. Alvarez:

Thank you for your letter!

I am getting a little nervous about time deadlines.  We are
in good shape as far as AEDPA is concerned because your direct
appeal was denied in January, 2003.

But the state is attempting to make things more difficult by
denying petitions as untimely IN RE CLARK, **even when the state
petitions are filed well within AEDPA's time limits.**  The state
is thus attempting to set up a procedural default to block a
hearing on the merits when the case gets to federal court.  I
don't believe it will work because the rule is not consistently
applied.  I prefer, however, to file very soon so that we don't
give the state a chance to pull this fast one.

Therefore, I recommend that we file a petition with the
superior court very soon.  I would like to draft the petition
myself and get it filed.  Mr. Diamond can add additional grounds
if he finds any.  But I recommend that they not be raised until
we get to the state supreme court.  My strategy here is to avoid
the provisions of 28 U.S.C. 2254(d).

Under AEDPA when petitioner's claim has been adjudicated on
the merits by the state court, 28 U.S.C. 2254(d) precludes relief
except where the state court's decision "was based on an unrea-
sonable determination of the facts or law, in light of the evi-
dence presented in the State court proceeding." <u>WILLIAMS v.
TAYLOR</u> (2000) 529 U.S. 362;  <u>VAN TRAN v. LINDSEY</u> (9th Cir. 2000)
212 F.3d 1143, 1154.

This means that if a state court makes a ruling either on
direct appeal, or in habeas litigation, the federal court cannot
grant a writ unless we are able to convince the federal court
that the decision of the state court was unreasonable.  This
presents a very easy avenue for the federal court to get rid of
the case by simply concluding that the decision of the state
court was a reasonable one.

A 32

In view of this problem I have devised a strategy of my own.
It is my experience that generally only the superior court will
enter a written decision denying the petition, usually a one or
two page judgment.  The court of appeal and state supreme court
usually do not do this but they simply enter a one line denial.
Therefore, my strategy is to not give the superior court the
option of deciding crucial issues.  We are not required to do so.
In order to litigate at the federal level we are only required to
state the facts, law, and the reasons why your constitutional
rights were violated.  Therefore, my strategy is to not give the
superior court much to "chew on."  When we file at the state
supreme court level, we will raise all issues.

Now to answer your questions:

First, _____ is a lesser included offense.

"The test in this state of a necessarily included offense is
simply that where an offense cannot be committed without neces-
sarily committing another offense, the latter is a necessarily
included offense," <u>PEOPLE v. PEARSON</u> 1986) 42 Cal.3d 351, 355.

My contention is that because there was no force or _____
you were not guilty of ____, which carries ____years to life, but
could be found guilty of the lesser violation of ____, which
carries a maximum sentence of _____ years.  Both require _____
_____.  But
section ____requires an additional element, i.e. that the _____
by _____.  Therefore, _____, is a lesser included of-
fense to ____.  Look at _____.  A conviction for ____ cannot occur
without the defendant violating _____.  Therefore, _____ is a
lesser included offense to ____.

There can be no procedural default for a claim of IAC.  Your
trial attorney failed to request the lesser included offense, and
your appellate attorney failed to contend on appeal that the
court had a duty sua sponte to instruct on the lesser included
offense.

Concerning the 1138 issue, I like the issue.  I don't be-
lieve the questions were simply to correct typos.  There were
questions about instructions, i.e. the charges, etc.... There-
fore, the court had an obligation to notify counsel, and counsel
should have been present when the questions were answer by the
judge. Again, there can be no procedural default for a claim of
IAC.

Sincerely yours,

FRANK PRANTIL

cc: Alvarez family

A 33

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

October 9, 2003

717 K Street, Suite 218
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

**K.F. ADDISON INVESTIGATIONS
SENT    VIA    FAX
DATE:** _10 - 9 - 03_

High Desert State Prison
Post Office Box 270220
Susanville, CA 96127

## Attention Ms. Trina Kosub, Litigation Coordinator

Re: Inmate legal visit

Dear Ms. Kosub:

Thank you for your assistance this morning regarding my anticipated visit to your institution. I will be representing Mr. Frank Prantil, Attorney at Law, in his representation of our client <u>Mr. Angel Alvarez</u> on the matter of a Writ of Habeas Corpus.

I wish to visit with:
Mr. Angel Alvarez,  CDC # P-81998, A-Facility

I will be requesting a confidential legal visit.

The information that you requested is attached with this facsimile.

I do have an additional request; Due to this matter having a sense of urgency and taking into consideration my numerous visits at other facilities (San Quentin as recent as October 6, 2003) I would respectfully request that my clearance be expedited. Your letter indicates a period of two weeks. A delay of two weeks might cause considerable hardship to my investigation and subsequently, to Mr. Alvarez. I would greatly appreciate anything assistance in this area.

Thank you in advance for your assistance.

Kenneth Addison

cc: Angel Alvarez
    Frank Prantil, Attorney

A 34

# DIAMOND & SCHMIDT

Attorneys At Law

GARY M. DIAMOND
P.O. Box 420 • Rocklin, CA 95677
(916) 434-2657

BILL SCHMIDT
791 Price St. PMB #170 • Pismo Beach, CA 93449
(805) 556-0844 • Fax (805) 556-0141
bschmidt@ncinternet.net

October 29, 2003

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030 (A Fac.)
Susanville, CA 96127

Dear Angel:

I met with Mr. Prantel yesterday and we discussed your case in detail. We have come to an arrangement in how we are going to handle the Superior Court writ. Hopefully, we should have a draft completed by next week and will be able to forward it to you.

Sincerely,

Gary Diamond
Attorney at Law

A 35

XXXVI

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


January 22, 2004


ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

GARY DIAMOND
Attorney at Law
P.O. Box 420
Rocklin, CA 95677

Gentlemen:

Please find your copy of the summary denial by the superior court.  Also, Mr. Diamond I have enclosed for you a copy of the petition filed there.  The next step is for Mr. Diamond to file a petition with the court of appeal, including the contentions I raised plus any additional issue Mr. Diamond wants to raise.

You will note that the court has not cited any U.S. Supreme Court law, so, I don't believe 28 U.S.C. 2254(D) will apply.  And you will note that the court simple ignores our contentions.  In particular you will not that the court states that there was no substantial evidence warranting the giving of a lesser instruction.  The court ignores that the jury failed to find you guilty of continuing sexual abuse predicated upon forceful oral copulation.

If either of you have any questions, please contact me.


Sincerely yours,


FRANK PRANTIL

cc: ALVAREZ FAMILY

A 36

LAW OFFICES OF

# GARY M. DIAMOND

POST OFFICE BOX 420
ROCKLIN, CALIFORNIA 95677
TELEPHONE (916) 434-2657

February 4, 2004

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030 (A Fac.)
Susanville, CA 96127

Dear Angel:

Just a short note to let you know that I have an appointment to visit you Monday, February 9, 2004 at 10:00am.

I look forward to visiting with you.

Sincerely,

Gary Diamond
Attorney at Law

A 37

XLIV

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

February 12, 2004

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

Thank you for your letter!  I will make the corrections you stated.  I will double check concerning appellate IAC, and if grounds exist it will be included in the petition to the state supreme court.  And Gary and my name will appear on the petition, as you request.

My practice is devoted almost exclusively to writs and appeals.  I am very busy, but I will never overload myself, because to do so would not be right.  I never miss deadlines either, I keep on top of my work, period.  I love what I do, and I get back at the great injustice done me over 20 years ago, by doing the best I can to help others.

My review letter outlines the fees I will need to litigate through to the 9th Circuit. I don't go any further.  I am not a admitted to the Supreme Court, and therefore, if you want to waste your money and go there, you will either need to file the petition yourself, or seek other assistance.  The supremes only take one and about 20,000 cases, so in my opinion, it is simply a waste of time and money.  And if that doesn't convince you, what part of a life imprisonment for theft of $50 of video tapes is not cruel and unusual punishment.  That is just one of the bullshit decisions made by our high court.  It is filled with conservatives.  And the one or two liberals are very weak in my opinion.  We don't have a Warren, Brennan, Douglas, or Marshall on the bench.

I would love to fight for you at the federal level.

Sincerely yours,

FRANK PRANTIL

A 38

ANGEL ALvAREZ, CDC NO. P-81998
H.D.S.P.  /  A-Facility
P.O. Box  3030
Susanville, CA  96127-3030

Thursday, March 4, 2004

K.F. Addison and Associates
Attn: Kenneth Addison
717  "K"  Street, Suite 218
Sacramento, CA  95814

K.F. ADDISON AND ASSOCIAT..
INVESTIGATIONS

MAR 1 5 2004

RECEIVE..

        Re:  Release for Information

Dear Mr. Addison:

        I was so pleased that you have continued to remain focused
on my case and keep up with everything as agreed.  After our
telephone conversation today, I returned to my cell to write
up the release for Mr. Guilarte.

        I had never done a release before, but I believe I have
signed a few for Mr. Diamond and Mr. Prantil.  I hope the
release I typed up is sufficient.  I typed out three copies,
signed all three and I am now sending you two of the three.
One is for you to keep, and the other for you to give to Mr.
Guilarte for his records, should he keep any.

        Hopefully you will be able to arrange a confidential
call soon so we can get started.  I am looking forward to
speaking to you.

Sincerely Yours,

Angel Alvarez

A 39

**ANGEL ALVAREZ, CDC NO. P-81998**
H.D.S.P. / A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

In the:

State of California,

County of Lassen,

City of Susanville:


## AUTHORIZATION FOR RELEASE OF INFORMATION

I authorize release of all documents from Eduardo Guilarte-Medina, Private Investigator.

I, Angel Alvarez, d.o.b.: 03/31/1972, CDC NO. P-81998, do authorize: Eduardo Guilarte-Medina, Private Investigator, CA State License # PI-13218, to release and/or copy all documents regarding the investigation conducted on my behalf.

These documents are to include: reports, statements, photographs, video recordings, audio recordings, transcriptions, and investigators notes.

These documents are to be released to: Kenneth Addison, a State of California licensed private investigator, CA State License # PI-8870, **or** any of his authorized agents.

This release executed in duplicate with only Kenneth Addison, Eduardo Guilarte-Medina, and Angel Alvarez, each receiving an executed original. Executed on Thursday, March 4, 2004 in Susanville, California.

_A. J. Aln_   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

ANGEL ALVAREZ, SSN: 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

A 40

ANGEL ALVAREZ, CDC NO. P-81998
H.D.S.P.  /  A-Facility
P.O. Box  3030
Susanville, CA  96127-3030

In the:

State of California,

County of Lassen,

City of Susanville:

## AUTHORIZATION FOR RELEASE OF INFORMATION

I authorize release of all documents from Eduardo Guilarte-Medina, Private Investigator.

I, Angel Alvarez, d.o.b.: 03/31/1972, CDC NO. P-81998, do authorize: Eduardo Guilarte-Medina, Private Investigator, CA State License # PI-13218, to release and/or copy all documents regarding the investigation conducted on my behalf.

These documents are to include:  reports, statements, photographs, video recordings, audio recordings, transcriptions, and investigators notes.

These documents are to be released to: Kenneth Addison, a State of California licensed private investigator, CA State License # PI-8870, **or** any of his authorized agents.

This release executed in duplicate with only Kenneth Addison, Eduardo Guilarte-Medina, and Angel Alvarez, each receiving an executed original.  Executed on Thursday, March 4, 2004 in Susanville, California.

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

ANGEL ALVAREZ,  SSN: 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

A 41

## K. F. ADDISON AND ASSOCIATES
### INVESTIGATIONS

April 13, 2004

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828



Gary Diamond
Attorney at Law
Post Office Box 420
Rocklin, CA 95677

Re: <u>Angel Alvarez</u>

Dear Mr. Diamond:

As you may know, I have been retained by Mr. Alvarez to conduct investigations on his behalf.

Mr. Alvarez has asked me to establish contact with a number of witnesses and obtain statements and/or declarations from them.

I am enclosing one such declaration that I obtained from Leslie Hernandez. I hope it will be of some use.

Should you have any questions, please feel free to contact my office.

Kenneth Addison

Encl. Declaration of Leslie Hernandez

A 42

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

April 13, 2004

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

COPY

Frank Prantil
Attorney at Law
916 Second Street, 2nd Floor
Sacramento, CA 95814

Re: Revised Declaration of Leslie Hernandez

Dear Frank:

Enclosed, please find the revised declaration of Leslie Hernandez. My initial statement and subsequent declaration of Ms. Hernandez omitted an aspect that Mr. Alvarez thought was crucial, that being that she was never spoken to or prepared by the defense attorney representing Mr. Alvarez. This declaration includes that aspect of her statement. Please disregard all other declarations submitted by Ms. Hernandez.

Any questions or comments can be directed to me personally.

Regards,

Kenneth Addison

cc: Angel Alvarez
    Gary Diamond, Attorney

A 43

## K. F. ADDISON AND ASSOCIATES
### INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

April 15, 2004

Angel Alavarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030



Re:  <u>Missed Appointment</u>

Dear Angel:

I just wanted to let you know that my appointment with Amelia on Tuesday was cancelled due to Amelia's schedule.

I thought you should know, in the event you were expecting a report from me on her statement.  We have rescheduled the appointment for the following Tuesday.

What do you know!  You just called me and I just told you this stuff.

 Also, sad to report that I still have not received a return call or email from Mr. Guilarte, I'll continue to work that avenue.

Regarding Alice Johnson, I think you and I should talk more before I make that trip just to make certain that we are both singing from the same sheet of music.

Regards,


Kenneth Addison


cc:  Claudia Maldonado

A 44

# K. r. ADDISON AND ASSOCIATES
### INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

COPY

May 6, 2004

Gary Diamond
Attorney at Law
P.O. Box 420
Rocklin, CA 95677

Re:  Angel Alvarez
     Statement of Amelia Guerrero

Dear Mr. Diamond:

On April 20, 2004 at approximately 12:20pm I arrived at 599 South Bascom Road in San Jose, for the purpose of meeting with Amelia Guerrero.

Angel asked that I contact Mrs. Guerrero and that I obtain a statement from her regarding her recollection of a chance meeting that she had with both children, Amanda and Anthony while attending a 50th birthday for Angel's mother, Renee Castillo.

Apparently, there was an interaction between Mrs. Guerrero and the children during the party.  This interaction could shed some light on precisely how the children felt about Angel, vis-à-vis the children's relationship with their father.

Mrs. Guerrero was interviewed at the flower shop owned and operated by Angel's mother, Renee Castillo, who was present during the interview.

Although Mrs. Guerrero has a basic working knowledge of the English language, her preference was for the interview was to be conducted in Spanish, her native language.  In that connection, I enlisted the bilingual services of Claudia Maldonado, Angel's sister.

A 45

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

I properly identified myself to Mrs. Guerrero and advised her for my reason for contact. I further advised her that she would have to be truthful, which she agreed.

Mrs. Guerrero currently resides at 4751 Trego Drive in San Jose, California 95118. Her home telephone number is 408-269-8530. She was born on April 7, 1925.

Mrs. Guerrero did not appear to have any difficulty understanding and responding appropriately to Claudia Maldonado's translation of this investigator's questions. She did however, present quite frail and would occasionally be overcome with emotion.

Mrs. Guerrero described herself as a long-term friend of the family. She has known Angel since his childhood.

I then drew Mrs. Guerrero's attention to November 1996 and asked her if she recalled attending a party in honor of Renee Castillo's 50th birthday. She stated that she remembered attending the party, which occurred at Emma Prush Park on King Road in San Jose.

She recalled seeing Angel present with two small children, male and female. She made inquiry as to the children and recalled someone telling her that the children were Angel's girlfriend's children.

She recalled approaching the children on one occasion and specifically engaged the female child in a conversation wherein she told Mrs. Guerrero, "Angel is my mom's boyfriend and he protects me from my Dad".

She indicated that she had ample opportunity to observe him interacting with the children. She said they appeared to listen and respond to him very well and that Angel appeared comfortable in the role of their father.

She added, at the end of the party she was unable to secure a ride home and Angel volunteered to drive her home. Once again she had an opportunity, in a different setting, to observe Angel's interaction with the children and marveled with the job Angel had assumed. She stated, "Angel took care of those kids like he was their father."

*A 46*

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

Enclosed please find a declaration, both in English and in Spanish that Mrs. Guerrero had reviewed, agreed with its contents and signed.

Please direct any further questions regarding this interview to my office.

Regards,

Kenneth Addison

cc: Gary Diamond, Attorney
     Claudia Maldonado
     Angel Alvarez, Client

A 47

# K. ï. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

COPY

May 6, 2004

Gary Diamond
Attorney at Law
Post Office Box 420
Rocklin, CA 95677

Re: Angel Alvarez
<u>Telephone contact with Eduardo Guilarte</u>

Dear Mr. Diamond:

Mr. Alvarez has asked that I attempt contact with Mr. Guilarte. As you know Mr. Guilarte is the Private Investigator who was retained by Mr. Eugene Martinez. My objective in contacting Mr. Guilarte is to retrieve investigative reports, investigator's notes, tape recordings, any photographs and diagrams as they relate to Mr. Alvarez's case.

I have communicated with Mr. Guilarte on a previous occasion, March 3, 2004, wherein I properly identified myself to him and my role in this matter. At that time, Mr. Guilarte required that I obtain a release from Mr. Alvarez before he would consider surrendering any work product.

I communicated this request to Mr. Alvarez and on March 7, 2004 I received from Mr. Alvarez, "Authorization for Release of Information", dated March 4, 2004 directed to Mr. Guilarte.

The release instructed Mr. Guilarte to surrender or copy all documents regarding the investigation conducted on Mr. Alvarez's behalf. The documents were to include reports, statements, photographs, video recordings, audio recordings, transcriptions and investigator's notes.

The release specifically requested that the afore mentioned documents be released to myself (Kenneth Addison).

A 48

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

I promptly informed Mr. Guilarte of my receipt of Mr. Alvarez's release and faxed him a copy.

Since that time, I have made numerous attempts via the telephone and emails to arrange a personal meeting between Mr. Guilarte and myself.
There was a slight tenor of resistance in the air, however, on April 30, I contacted Mr. Guilarte at his office and addressed my concerns. In addition, I advised him that I had completed all of his requests to date. Mr. Guilarte inquired as to why the interview could not be conducted over the telephone. I advised Mr. Guilarte that investigative protocol at this stage would require personal contact. I further advised him that if I were ever called to testify in this matter, I would not be able to testify under oath that it was his statement that I had received simply because I had no way of being certain who was on the other end of the telephone.

Guilarte stated on numerous occasions that he would prefer that the interview could occur over the telephone. I told him that this was not acceptable and that I would be glad to travel to him to complete the interview.

Mr. Guilarte then spontaneously stated, "After 33 years in this business I know what you guys are looking for…your looking for something that we did inappropriately". I advised Mr. Guilarte that I was only interested in receiving the work product that he had been retained to generate. Moreover, I advised Mr. Guilarte that I was not interested in any duplication of efforts or retracing what he had already done, however, at this stage I had not been convinced that any investigation was performed because neither Mr. Alvarez nor myself had ever received any work product.

Of particular interest was a tape-recorded statement he obtained from a witness deemed crucial to the defense case in chief. In previous conversations, Mr. Guilarte indicated that he recalled obtaining the statement, however, did not know the current whereabouts of the audiotape. He indicated that he would however, search for the tape and contact me when it was found.

On May 4, 2004 I received an email communication from Mr. Guilarte indicating that he had located the audiotape in question and that he would permit me to listen to the tape, however, refused to release the tape into my custody.

A 49

**K. F. ADDISON AND ASSOCIAT.**
INVESTIGATIONS

He agreed to an interview, however, stated that it would have to be conducted on Thursday, May 13, 2004 at 1:30pm at the Law Office of Eugene Martinez, 146 Central, Salinas, California.

After completing my interview with Mr. Guilarte I will contact your office to advise you of the results. If you have any questions between now and then please feel free to call my office.

Sincerely,

Kenneth Addison

cc: Angel Alvarez
    Frank Prantil, Attorney
    Claudia Maldonado

A 50

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

May 17, 2004

Gary Diamond
Attorney at Law
Post Office Box 420
Rocklin, CA 95677

COPY

Re: Angel Alvarez

Dear Mr. Diamond:

Please find enclosed my most recent statement of Eduardo Guilarte. I expect
to be receiving a copy of the recorded statement on audiocassette taken from
Tanya Rabago. Upon receipt of the tape I will make a copy and forward it to
your office. If Sherri can find the time, maybe she can transcribe it for us.
If not I will have it taken care of.

I am also enclosing my original statement from Mr. Guilarte taken on March
3, 2004. I think it is in the best interest of Mr. Alvarez for you to maintain
all of the originals. I, of course send copies to Frank Prantil and Angel
Alvarez. Let me know if you have any questions.

Sincerely,

Kenneth Addison

cc: Angel Alvarez

A 51

# K. F. ADDISON AND ASSOCIATES
### INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828



May 20, 2004

Gary Diamond
Attorney at Law
Post Office Box 420
Rocklin, CA 95677

Re:  Declaration of Ejaz Anam

Dear Mr. Diamond:

On May 11, 2004 I traveled to Santa Clara, California and met with Mr. Anam.  Mr. Anam is of Pakistani extraction and is a U.S. citizen.  He is well educated and speaks fluent English.

He provided me with a statement, which has been reduced to the declaration, which is enclosed.  Should you have any questions please feel free to give me a call.

Sincerely,

Kenneth Addison

cc:  Angel Alvarez
     Frank Prantil, Attorney
     Claudia Maldonado

A 52

# K. F. ADDISON AND ASSOCIATES
### INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

June 4, 2004

Angel Alvarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030

COPY

Re: Update of Investigation

Dear Angel:

I received your typed written letter of May 27, 2004 and attachments and wanted to respond immediately. Firstly, your letter does in fact find me in good health and spirit. Having recently returned from my Hawaiian vacation, I am well rested and again ready to attack any and all of your requests.

No need to thank me enough for my excellent work. By now, you should know that," Excellent" is the only type of work I do and it's the only type of work you deserve. You and your family have been a delight to work with. My questions are promptly answered and my invoices are even more promptly paid. So, I thank you for the opportunity to conduct this investigation on your behalf to right this wrong, perpetrated on you by the great State of California.

I am pleased that you are happy with Mr. Anam's statement. So far, I feel like you have some real winners in your corner, at least in terms of witnesses.

On June 2nd, I received a phone call from Trina in the Office of Litigation Coordinator. She wanted to interview me regarding your complaint relative to being able to bring tape recorders into the prison facility. At the conclusion of our conversation, I believe that it was agreed upon that I would be allowed to bring and use a tape recorder at our next visit. Regretfully, I have not heard from Mr. Guilarte since my interview nor have I received a copy of his tape recording as promised.

A 53

**K. F. ADDISON AND ASSOCIATE**
INVESTIGATIONS

I will address that issue later today when I email his office and follow it up with a telephone call. To tell you the truth, I am not surprised by his actions or lack thereof.

Thank you for your verbatim transcription of Title 15, CCR 3175 and I agree with your assessment that the prison officials, in all probability confused the laws pertaining to my interview with that of the media. Although, I have been mistaken for Walter Cronkrite in the past.

Now on to the business at hand. There are a couple of items that need to be addressed immediately, number one, is the interview with Ramon and Mayra Quintanilla. Secondly, we need to follow up with Paul Hillestead in San Jose. I think his testimony regarding the chilis in the eyes of Anthony and his take on it is crucial.

Also, I believe we need to commence with locating Tanya so that we might firm up her statement. I would especially like to show that she had never been contacted by Mr. Guilarte or his representative. At this point, I have good reason to question Mr. Guilarte's veracity.

Lastly on this list of things to accomplish, I believe it would be all together appropriate to locate and interview your college professor regarding your contact with her.

Anyway, that's the short list. I am sure we will come up with more in the future but I believe we need to get on these tasks as soon as possible.

When we last spoke we agreed that Claudia would be sending me an additional $2,000.00 in June. If my memory serves me correct, you interrupted that conversation and suggested that instead of piece-mealing this string of payments, that a bulk amount would be more appropriate so that I might continue to have my operating expenses tucked away securely in my trust account. This is always the most uncomfortable part of any business transaction...you know talking about the money but it is a necessary evil and we must address it.

In that connection, at your earliest possible convenience give me a call and we will discuss it.

A 54

**K. F. ADDISON AND ASSOCIATE**
**INVESTIGATIONS**

Given what we have been able to accomplish thus far, I think that you will agree that we have every reason to be encouraged.

In closing, I have made the copies of the enclosed documents and I am returning the originals to you. Incidentally, when I spoke with Trina she told me that you should not have any more difficulty in receiving mail from my office.

Keep a good thought,

Ken Addison

cc:    Frank Prantil, Attorney at Law
       Gary Diamond, Attorney at Law
       Claudia Maldonado

A 55

K.F. ADDISON AND ASSOCIATES
INVESTIGATIONS

People vs. Angel Alvarez

To:  Gary Diamond, Attorney at Law
      Frank Prantil, Attorney at Law

From:  Kenneth Addison
         Investigator, PI-8878



Re:  Statement of Eduardo Guilarte

On May 13, 2004 I traveled to Salinas, California, more specifically the Law
Offices of Eugene Martinez, located at 146 Central Road, downtown Salinas.
Mr. Guilarte preselected this date and place during an earlier conversation on
May 4, 2004.

I arrived promptly at 1:30pm, our scheduled time of our appointment and was
informed that Mr. Guilarte was running approximately 15-20 minutes behind
schedule.  Mr. Guilarte arrived at approximately 1:50pm and we entered what
seemed to be a furnished but unused office in the building.  I properly
identified myself to Guilarte by displaying my California issued State
credential and provided him with a business card.  He reciprocated.

On this date, Guilarte was cooperative and pleasant.  Guilarte is described to be
approximately 50 years old, Hispanic adult male.  He identified himself as a
qualified manager of Probe Investigations; a State of California licensed
Investigation Company, state license number 13218.  He indicated his
investigation office specializes in criminal defense investigation, solely.  He
indicated that he has been an investigator for 33 years.

I commenced our interview by asking Guilarte how and when he came to know
Angel Alvarez.  He stated to the best of his recollection, he was contacted
directly by Angel sometime in between conviction and sentencing of his
underlying charges.  He stated that the family had some reservations about Mr.
Wesley Schroeder's competency and felt that additional investigation was
needed prior to sentencing.

He stated that he quoted the family a fee and that the family thought the fee was
exorbitant and did not have the resources to pay.

A 56

K.F. ADDISON AND ASSOCIATES

INVESTIGATIONS

Guilarte stated that he entered into a conversation with Angel's mother, wherein he learned that Angel's father owned numerous parcels of property and suggested to Angel's mother that the properties either be liquidated or borrowed against for the purpose of securing funds sufficient to retain Mr. Guilarte. His involvement was to point of referring Angel's mother to a Family Law Attorney who in turn educated Angel's mother relative to Community Property Laws. Guilarte stated that Angel's father became aware that Guilarte had sent his wife to an Attorney for the purpose of liquidating the community property assets and was outraged. At that point, Angel's father forbade the hiring of Mr. Guilarte, undoubtedly because of Guilarte's involvement of the personal family business via going around his back to liquidate the family assets.

I asked Guilarte if he recalled what the focus of his involvement for investigation was to be. He stated that primarily it was broken down into two or three main areas of concern.

Firstly, he learned that the sister of the alleged victim's mother, identified as Tanya Rabago, had a conversation with Ruby Rubio regarding her unwillingness to allow Ivan Acosta to visit with their children, Anthony Acosta, DOB 11-18-91 and Amanda Noel Acosta, DOB 11-21-90.

He stated that his first goal was to locate Tanya and obtain a statement regarding her interaction with Ruby. He stated that he spent an enormous amount of time tracking down Tanya and that when he finally did find her she refused to be interviewed. He stated that he continued with the goal of interviewing Tanya and was able to find a telephone number for Tanya and conducted an interview via the telephone. This interview was tape-recorded and is the subject of concern for Angel Alvarez because he (Guilarte) never made the recording available for Angel.

Prior to my arriving on this date, Guilarte advised me that he had located the tape and would make it available for me to listen. Mr. Guilarte informed me that custody of the tape would not be released.

Guilarte played the tape that was on a standard size audiocassette. The introduction of the interview is not recorded. Moreover, the conclusion of the interview is also not recorded. The recording was prematurely terminated prior to the end of the interview. The recording is of average quality and approximately 10-12 minutes in duration.

A 57

K.F. ADDISON AND ASSOCIATES
INVESTIGATIONS

At the conclusion of listening to the tape, I asked Mr. Guilarte under what authority he would not release the tape. I reminded him that his investigation had been paid in full and that a signed release from Mr. Alvarez had been forwarded to him. At that point, Guilarte stated that he would make a copy of the tape and mail it to me. I advised Mr. Guilarte that I was in possession of a tape recorder and asked him if I could be allowed to make my own recording. He indicated that it would be his preference to make his own recording and mail it to me. I acquiesced.

I asked Guilarte why the beginning of the statement was not recorded and he did not have an immediate recollection however, he did begin to voice concerns that the recording, if in the wrong hands might have negative legal ramifications. Guilarte stated that he did not obtain permission from Tanya prior to recording her statement and there might be some question regarding the eavesdropping statute.

*Note: It was this investigator's impression in listening to the tape that Tanya was unaware of precisely who she was talking to. Guilarte identifies himself only as "an investigator" and the tenor of the conversation could easily lead one to believe that a person of law enforcement was interviewing Tanya. In addition, because the introduction, which was not recorded, it is unknown what name and official title Mr. Guilarte used in identifying himself to Tanya.*

This investigator also noted that upon further questioning of Guilarte regarding his physical contact with Tanya, Guilarte admitted that it was not he who made the physical contact but rather one of his associates. Up until this point, he has led me to believe that it was he that made contact with Tanya and was refused an interview.

I asked Mr. Guilarte if he could provide me with any notes or statements that he took that might now be able to assist me in again locating Tanya. He stated that no such notes were available. He also did not make a statement of either locating of Tanya or his interview. I asked Guilarte if it was his normal practice to not make notes or have the notes reduced to a statement, he responded by saying that the bulk of his clients are from the Hispanic community and that they have limited resources and that they are "result oriented". With this in mind, Guilarte stated, "I can spend my time getting them results or I can waste my time taking notes and making reports".

A 58

**K.F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

This investigator commented that it was highly unusual and not in keeping with any investigative technique I had ever heard and it was basically a disservice to the client when notes and statements are not made. Guilarte agreed in principal. To my knowledge, Guilarte does not possess any notes on this case and if he does, he was not able to produce them to me on this date.

Guilarte insisted that I know that he spent massive amounts of time in this investigation. When asked to provide me with an accounting, he cited his contract with Mr. Alvarez, which called for a flat fee arrangement in the amount of $10,000.00. He states that with this type of arrangement he is not required to keep an accounting and is free to conduct the investigation at his own discretion.

In another area of focus, he stated that because the victim, Amanda, tested positive for chlamydia and that Angel also tested positive for chlamydia, he Guilarte, spent large volumes of time with a medical expert that he had located at the University of San Francisco, he identified this expert as a Pathologist named Dr. Sanchez.

I asked him if he had approached any other witnesses in this matter and he stated that he pursued many leads but that those leads never turned out to be anything. I asked him what other leads he followed. Guilarte said he had no immediate recollection and because he had no reports to substantiate the leads that he had followed. He did however, state that he wanted to approach a witness identified as Onorato Deltoro. He told me that he did not approach Deltoro because Angel instructed him not to approach him because he feared that Deltoro might kill Angel.

Guilarte concluded that he was not convinced that Angel Alvarez did not molest the victims in question. He added much of what Angel had told him was either untrue or not verifiable.

Finally, I asked Guilarte if the Attorney, Eugene Martinez provided him with a list of investigative tasks to be accomplished and he answered that he had coordinated his investigation with Mr. Martinez but no request for investigative tasks was forwarded to him by Mr. Martinez.

I concluded the interview with the understanding that the tape-recorded statement of Tanya Rabago would be duplicated and sent to my office. Furthermore, I left Guilarte with the understanding that future contact might be necessary.

A59

| Investigator: | _Kenneth Gulchson_ | Date: | 5·13·04 |

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

June 15, 2004

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

In order to visit you at High Desert I will need my per diem of $2,250. It will take me the entire day to travel up there, visit you and return.

I missed your calls because I was out of town last week and Monday of this week.

I don't know what Diamond is doing, since I have not heard from him.

Sincerely yours,

FRANK PRANTIL

cc: Claduia Maldonado

A 60

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

July 6, 2004

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

I just checked my messages and again you have requested that
I set up a telephone conference through the counselor. This is
unnecessary, unless you do not have access to a phone. I accept
collect calls from inmates **if** I am in my office when the call is
made. I am only in my office Monday, Tuesday and Thursday after-
noons, and I will accept a collect call from you anytime after
12pm and before 4:30 pm. I look forward to your call! There
will be occasions when I am not in my office on the days listed
above due to court appearances. For example this Thursday I will
be in court in the afternoon. But generally I am in my office
those afternoons.

Today I recevied word from Mr. Addison that you have fired
Diamond. That probably was a good move, because your allegations
about his inability to handle his caseload are proably valid.
And besides, both Addison and myself have found it almost impos-
sible to reach him.

That leaves me holding the bag because I have no idea what
Mr. Diamond wanted to raise in the petition to the court of
appeal. I presume that Mr. Addison is following some of his
leads which includes IAC claims for not presenting exonerating
evidence. The bottom line, however, is that we must not sit on
our heels and must file a petition with the court of appeal very
soon.

Thus, the investigation must be completed quickly. Other-
wise, when we get to federal court a federal court may conclude
that you have not been diligent in conducting the investigation
and thus dismiss your case without addressing the merits of your
claims. In CAREY v. SAFFOLD (2002) 536 U.S. 214, the United
States Supreme Court held that a four and one half month delay
between filing a state habeas petition from the court of appeal
to the state supreme court was to be evaluated by the 9th Circuit

A 61

to evaluate whether the delay was justified.  This gives a federal court the power to rule that because the investigation was protracted you were not diligent and therefore the case is time barred and must be dismissed.

Therefore, keep on Addison to complete the investigation. Keep all copies of correspondence to him or Gary, because they may help defeat a motion to dismiss, if one is filed at the district court level.

And finally, Addison advises me that you will be seeking the assistance of another attorney, one from SF.  I have no problem with you obtaining additional support, but it seems to me to be a waste of your money.  You may be better off sending me sufficient funds for a visit to Susanville.  I know what I am doing and I do it well.  After a meeting, you may agree with me that it is not necessary to have another attorney working on your case, along with me.  I know most attorneys in SF charge more than they are worth, and there are a couple who you should stay away from, period.

Sincerely yours,

FRANK PRANTIL

cc: Cladia Maldonado

A 62

LAW OFFICES OF

# GARY M. DIAMOND

POST OFFICE BOX 420
ROCKLIN, CALIFORNIA 95677
TELEPHONE (916) 434-2657

August 26, 2004

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030 (A Fac.)
Susanville, CA 96127

Dear Angel:

I have been waiting to hear from the investigator, but as of yet, I have not been contacted. I will attempt to call him next week. I have not sent you the draft of the work completed until the investigator and I speak. I will make certain that we speak by phone or in person within th next few days. I will then schedule an appointment to meet with you and discuss our progress

Sincerely,

Gary Diamond
Attorney at Law

A 63
EX I

# GARY M. DIAMOND

**Attorney at Law**

P.O. Box 420 • Rocklin, CA 95677

(916) 434-2657

## Invoice

**Bill to:**

Angel Alvarez, P-81998
High Desert State Prison
P.O. Box 3030 (A Fac.)
Susanville, CA 96127

Attn: Angel Alvarez

**Statement Date:**

September 17, 2004

**Invoice #**

091704

**Client:** Angel Alvarez, P-81998
**Work Contracted:** Writ of Habeas Corpus with the California Superior Court

| DATE | DESCRIPTION | HOURS | TOTAL |
|------|-------------|-------|-------|
| 2/28/03 | Received letter from Angel and sent letter to Angel quoting fee to review files $1,000.00 | 0 | 0 |
| 3/20/03 | Received cashier's check from Claudia Maldonado $1,000.00 | 0 | 0 |
| 3/25/03 | Sent Angel letter re: legal material reviewed Scheduled att/client visit for | .50 | $112.50 |
| 4/8/03 | Att/client visit (Gary) 11:00am | 5 | $1,125.00 |
| 5/16/03 | Sent letter to Angel | .25 | $56.25 |
| 6/6/03 | Received cashier's check from Alvarez family $5,750.00 | 0 | 0 |
| 6/13/03 | Sent Angel contract and other contractual forms to sign Sent third party payment form to Claudia | 0 | 0 |
| 7/7/03 | Collect from Angel (left message that he will call back Thurs.) | 0 | 0 |
| 7/9/03 | Received signed contract from Angel and returned copy to him | 0 | 0 |
| 7/10/03 | Received third party form from Claudia and returned copy to her | 0 | 0 |
| 7/11/03 | Collect from Angel (Gary talked to him) | .25 | $56.25 |
| 7/14/03 | Received letter from Frank Prantil re: wanting to meet with Gary | .25 | $56.25 |

A 64  LXX

| 7/15/03 | Call to Frank Prantil to let him know that Gary was out of town | 0 | 0 |
|---------|---|---|---|
| 7/17/03 | Received letter from Angel and sent letter to Angel | .50 | $112.50 |
| 7/18/03 | Call from Frank Prantil to have Gary call him when he gets into town | 0 | 0 |
| 7/22/03 | Received letter from Angel | .25 | $56.25 |
| 7/25/03 | Collect from Angel (left message for Gary re: investigator) | .25 | $56.25 |
| 7/31/03 | Scheduled att/client visit and sent letter to Angel for 8/11/03 | .50 | $112.50 |
| 8/11/03 | Att/client visit (Gary) 9:00am | 5.0 | $1,125.00 |
| 9/10/03 | Collect from Angel (Gary talked to him)<br>Call to Frank Prantil (Gary left message) | .25 | $56.25 |
| 9/11/03 | Call from Angel (3-way calling) (Gary talked to him re: investigator) | .25 | $56.25 |
| 9/25/03 | Call from Angel (3-way calling) (left message) | .25 | $56.25 |
| 10/14/03 | Call from Frank (Gary talked to him) | .25 | $56.25 |
| 10/27/03 | Received letter from Angel | .25 | $56.25 |
| 10/28/03 | Attorney visit with Frank Prantil (916 2nd Ave.) | 3.0 | $675.00 |
| 10/29/03 | Sent letter to Angel | .25 | $56.25 |
| 12/2/03 | Collect from Angel (he left message/Gary out of town) | .25 | $56.25 |
| 12/5/03 | Call to Frank Prantel (Gary left message)<br>Sent letter to Angel | .50 | $112.50 |
| 12/18/03 | Collect from Angel (Gary talked to him) | .25 | $56.25 |
| 1/6/04 | Received letter and legal documents from Angel with originals to be sent to Claudia<br>Call from Claudia re: documents sent to her<br>Sent legal documents to Claudia and copy to Angel | 1.0 | $225.00 |
| 1/7/04 | Reviewed trial transcripts | 4.0 | $900.00 |
| 1/8/04 | Reviewed trial transcripts | 6.0 | $1,350.00 |
| 1/12/04 | Reviewed trial transcripts | 2.0 | $450.00 |
| 1/26/04 | Received letter from Frank Prantil and copy of Summary denial from court sent from Frank | 1.0 | $225.00 |
| 2/4/04 | Scheduled att/client visit and sent letter to Angel for 2/9/04 | .50 | $112.50 |
| 2/5/04 | Received letter from Angel | .25 | $56.25 |
| 2/9/04 | Att/client visit (Gary) 10:00am | 5.0 | $1,125.00 |
| 3/1/04 | Call from Ken Addison to get transcripts fro Ajaz Anan | .25 | $56.25 |
| 3/3/04 | Call from Ken Addison (re: release of information from Angel) | .25 | $56.25 |

A 65  LXXI

| | | | |
|---|---|---|---|
| 3/4/04 | Scheduled att/client visit and sent letter to Angel for 3/18/04 | .50 | $112.50 |
| 3/18/04 | Att/client visit (Gary) 9:00am | 5.0 | $1,125.00 |
| 3/17/04 | Research on writ | 2.0 | $450.00 |
| 3/19/04 | Research on writ | 4.0 | $900.00 |
| 3/20/04 | Worked on writ | 6.0 | $1,350.00 |
| 3/22/04 | Worked on writ | 7.0 | $1,575.00 |
| 4/5/04 | Call from Claudia re: transcripts sent to Ken Addison | .25 | $56.25 |
| 4/6/04 | Call to Ken Addison to get address to send transcripts (left message)<br>Call to Claudia re: transcripts<br>Sent Ejaz transcripts to him | .50 | $112.50 |
| 4/6/04 | Sent letter to Angel re: transcripts | .25 | $56.25 |
| 4/13/04 | Call from Ken Addison re: address and transcripts<br>Sent transcripts to Ken | .50 | $112.50 |
| 4/19/04 | Received declaration from Leslie Hernandez sent from Ken Addison<br>Received sentencing transcripts | 1.0 | $225.00 |
| 4/21/04 | Collect from Angel re: writ (left message) | .25 | $56.25 |
| 5/10/04 | Received letter from Ken Addison re: telephone contact with Eduardo Guilarte<br>Received letter from ken Addison re: statement of Amelia Guerrero | .50 | $112.50 |
| 5/20/04 | Received letter from Ken Addison (statement of Eduardo Guilarte) | .25 | $56.25 |
| 6/8/04 | Received update from Ken Addison | 0 | 0 |
| 6/21/04 | Call from Ken Addison (left message) | 0 | 0 |
| 8/26/04 | Sent letter to Angel | 0 | 0 |
| 9/3/04 | Call from Ken (left message) | 0 | 0 |
| 9/13/04 | Call to Ken (Gary talked to him) | 0 | 0 |
| | Total | 66.5 | $14,962.50 |

AMOUNT DUE:     $14,962.50

Comments:

**\* Please keep this copy for your records \***

A 66
LXXII

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

August 31, 2004

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

I have heard from a reliable source that Mr. Diamond has stipulated to a six month suspension of his license. I believe he let things get out of control, and that he didn't know what he was doing with reference to habeas, nor with reference to time limits that are strictly enforced.

Please find a copy of the superior court petition, as you requested.

I believe that it is **imperative** to file the petition with the court of appeal. I will use the same petition that was filed with the superior court. The court will deny the petition within less than a week, it will probably not read it. So the contents are not that important. What is important though is that: (1) we must file immediately, otherwise when we get to federal court the AG may contend that we have delayed filing and therefore we were not diligent and the case is time barred under AEDPA, and (2) the petition and only the petition to the state supreme court must contain all the issues that we need to litigate at the federal level. Therefore, the petition to be filed with the supreme court must be complete and must satisfy both of us.

So, please find a new verification for your signature. Sign and return. Upon receipt I will file the petition with the state court of appeal.

In the meantime, I guess the burden is on me to work with Addison on the investigation. We need to complete it as quickly as possible so that when the court of appeal denies the petition we are ready to file with the state supreme court.

I suggest that you write to Gary and demand your money back.

Please get back to me. I will need to contact Addison to advise him of the latest. You should continue to press him to

*A 67*

complete the investigation.

Sincerely yours,

FRANK PRANTIL

cc; Claudia Maldonado

A 68

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

COPY

September 21, 2004

Angel Alvarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030

Re: Investigation

Dear Angel:

I received your letter dated September 8, 2004, I apologize for the mistake on the declaration but I have made the applicable corrections and I am enclosing a revised original.

It looks like that I am the still on for the meeting on September 27, 2004 with Kat Kosik, I will be sure to let you know how that goes.

As for the Quintanilla's, I spoke with Ramon last week and he told me that this Wednesday (09-22-04) would work best for both he and his wife because it is both of their days off. He asked that I call him on Tuesday to remind him. Today being Tuesday, I called and was unable to make live contact at either number. I left a message at both numbers confirming our meeting, hopefully they will receive the message and respond accordingly. To tell you the truth, I am beginning to lose hope in these two. Even though they have not come out directly and said it, I am beginning to get the feeling that they want to distance themselves from this investigation. They have yet to return a single telephone call. Anyway, by this time tomorrow we should know more.

I placed a call today to Mr. Martinez's office, I wanted to know if he had received my letter dated September 10, 2004, requesting his cooperation in retrieving the evidence regarding Mr. Guilarte. That matter has been assigned to Louisa in his office for follow-up.

When I spoke with Louisa this afternoon she indicated that Mr. Martinez had received my letter and charged her with the task of obtaining the tape from Mr. Guilarte.

A 69

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

She told me that she would call Mr. Guilarte this afternoon. I am also beginning to run out of patience with Mr. Guilarte, I figure that I will give him about one more week and if I don't hear from him I will file the complaint. Now that is being magnanimous.

I agree with your assessment regarding the relationship between Mr. Martinez and Mr. Guilarte, however, as far back as one year ago, I was attempting to impress upon you that Mr. Martinez's failure to monitor, instruct, and supervise Mr. Guilarte is in and of itself ineffective assistance of counsel.

Now, if we can prove that Mr. Guilarte lied to me and Mr. Martinez about his initial contact with Tanya (as you will recall Mr. Guilarte dispatched a subcontracted investigator to make this contact). Well, that would just be icing on this cake of injustice that has been served up to you on a cheap paper plate. Incidentally, I do have a line on Tanya, I believe she is currently residing in the Delano area.

I understand that I am to keep the $1,000.00 originally meant for your legal researcher. That leaves a remaining balance of $4,000.00, please have Claudia forward the check as soon as possible. If we are waiting for Mr. Diamond, lets just say I would rather not.

Wish me luck with the Quintanilla's tomorrow. Please call me once you receive this.

Sincerely,

Kenneth Addison

cc:  Frank Prantil, Attorney
     Claudia Maldonado

Encl.  Declaration of Kenneth Addison

A 70

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

September 30, 2004

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel

Thank you for your letter!

You are the boss!!!!!!

I have stated this in previous letters that this is not my case. I am here to advise you and support you in your efforts to obtain justice. So, I will be glad to work with Addison and to develop the claim of actual innocence. (I am willing to bet the farm that the petition at the court of appeal level will be denied within one week of filing.) But, again, you are the boss so I will follow your instructions. I have given you my legal advise, which is correct, but again I submit to your requests.

I have not commented on Mr. Addison's great efforts because that was not what you and I had agreed upon. Diamond, (most to my chagrin) was to do the task, and if you look at our agreement the supreme court petition was my responsibility which would incorporate Diamond's work on the new issues.

And finally, I need to be compensated for the work Diamond should have done. I suggest an hourly rate. I am not one of those soft-shoe-experts that runs up the bill fraudulently. I bill you for the actual work that I do, and **I do the work**!!!

My hourly rate is $300. I suggest an advance for ten hours of work, to be used to coordinate with Addison, and to draft and file the petition with the court of appeal. Any unsued fees will be refunded or applied where you request.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Moldonado

A 71

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

October 1, 2004

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828



Angel Alvarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030

Dear Angel:

We have a lot to cover; things have been breaking very rapidly.  As I explained,
I met with the Quintanillas and interviewed Ramon, Myra and the three
children.  I have taken the best of those interviews and reduced them to
declarations.  I have chosen to make a declaration of the statement offered by
Ramon Sr. and Myra (Jr.).  I felt that those were the two most crucial
statements and I will tell you why.

Ramon Sr. is a strong figurehead in his family and has apparent dominion over
his family and he also had the best recollection of both adults.  His English is
also much better than Myra's and I think he presents as an all around better
witness.  Moreover, Myra's statement is simply redundant and carries much of
the same information.  I left the door open to have her sign a declaration if we
believe one is needed.

I have enclosed Ramon Sr.'s declaration in this correspondence for your
perusal before I submitted it for signature, just in the event you might want to
alter it.

The other person who presents well is Myra (Jr.). I believe she is also critical
for a number of reasons, not the least of which is that she was a female juvenile
in 1997 and exposed to you on a daily basis.  She has nothing but glowing
remarks about her Uncle Angel.

Also, she has a vivid recollection of having bathed Amanda the night prior to
your arrest and has no recollection of seeing any signs of abuse on Amanda.

I again left the door open for a declaration from Jesus and Ramon Jr.  But I
think what I am offering is a good cross-section of the Quintanillas.  Anything
more, I believe would be overkill.  Her declaration is also enclosed for your
perusal.

A 72

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

Forgive me, but I think it is our best interest if their address is redacted and I have taken the steps to do so, even though it was you who directed me to their address.

Regarding Mr. Hillstead, I thought I had located him at an address in San Jose, however, for the life of me I cannot find the address. It is neither listed in the Thomas Brothers or my GPS guide. I will be in contact with the San Jose Fire Department to inquire about the address. It is located on Mount Whitney. Have you ever heard of it? I will continue to work on it.

Regarding Kat Kozik. As I previously indicated to you, I traveled to her residence in Berkeley on Monday, September 27, 2004. We had a very pleasant meeting and she is cooperating fully. She appears to be a very competent attorney genuinely concerned about your welfare.

She directed me to a banker's box, which contained your files. I did not feel I had sufficient time to review the entire contents and we came to the decision that I would drop off the box at a local (Berkeley) copy store and that I would return in a few days to pick up my copy. The cost for the copies I have learned is $557.29. I have called Claudia and asked her if she will send the check in that amount to my office so that I might pay for the copies and pick them up. I do not believe that these copy costs should be taken from my retainer, which incidentally I received the final installment of $4,000.00 from Claudia earlier this week. Thank you.

Kat presented me with the photographs of the blanket in question and as well, directed me to the appropriate law enforcement agencies. She also copied Ruby's Welfare Fraud case and presented me with a copy.

I interviewed her for preparation of the declaration you requested and we decided that we would work together on compiling the declaration. I will send you a separate report on my interview prior to submitting her declaration. It will give you an idea of some of the items we discussed and her responses.

Lastly, as it relates to Kat Kozik, she called my office today while I was out and informed my staff that she would **not** release the aforementioned banker's box of documents until receiving a "Release" from you.

So, immediately upon receiving this letter, draft a release similar to the one you drafted for Mr. Guilarte authorizing her to release all documents pertaining to your matter to me or any authorized agent from my office.

A 73

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

I believe you have her address. She awaits the release and my hands are tied until such time she receives it.

Regarding whether or not she received those files from your trial attorney, Schroeder, Kat stated that their was no need to ask Schroeder for the files because she had received what she perceived to be the entire file from Eugene Martinez. I will address that issue and others in my "Statement of Kat Kozik" to you.

After months of wrangling, I have finally been able to secure the tape-recorded statement of Tanya from Eduardo Guilarte. That, in and of its self was practically a full time job.

I am enclosing the correspondence from Mr. Martinez's office.

As you can see by the correspondence, they have vowed to endeavor to learn the name of the investigator utilized by Mr. Guilarte who made the initial contact with Tanya Rabago.

I have not yet listened to the statement or compared it to my notes of my May 13, 2004 interview with Mr. Guilarte.

I believe that I will bring the tape with me on my next visit so that we can both listen to the tape together.

At this point, I am not certain as to when I will be up to see you but it will in all likelihood be in October. Please review the enclosures and contact me as soon as possible.

Sincerely,

Kenneth Addison

cc: Frank Prantil, Attorney
    Claudia Maldonado

Encl. Declarations of Ramon Sr. and Myra (Jr.)

A 74

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS



717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

December 14, 2004

Russell and Russell Law Offices
Kent Russell
2299 Sutter Street
San Francisco, CA 94115

Re:  Angel Alvarez

Dear Mr. Russell:

I have received correspondence from Angel Alvarez in which he has
instructed me to provide you with the documentation relative to our
investigation.

Enclosed, please find the Declarations of Ejaz Anam, Leslie Hernandez,
Ramon Quintanilla, Myra Quintanilla, Jr., a Statement provided by the
previous investigator, Eduardo Guilarte, and various office correspondence
between Angel and our office that I feel may be germane in providing you a
better rounded picture of the investigative activities that have been
undertaken by this office.

I apologize for the delay but I have been struggling with a case of influenza
and was not able to make it a priority.

Please feel free to contact this office at anytime you feel the need.  I will
cooperate fully with you and your office.

Regards,

Kenneth Addison

cc:  Angel Alvarez

A 75

**K. F. ADDISON AND ASSOCIATES**
**INVESTIGATIONS**

      Encl.  Declarations of:  Guerrero
                               Anam
                               Hernandez
                               Quintanillas
                Statement of Eduardo Guilarte
                Office Correspondence

A 76

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

January 18, 2005

VICTORIA BROWN
Deputy District Attorney
70 W. Hedding Street
West Wing
San Jose, CA 95110

Re: Angel Alvarez

Dear Ms. Brown:

     Sometime ago I spoke with you concerning the above case.
I told you that I represented the above named individual in
pending habeas litigation, concerning his conviction in Santa
Clara County Superior Court, case #198084.

     I also told you that the investigator working for me and my
client was Kenneth Addison.

     The purpose of this letter is to explain what Mr. Addison
needs in order to properly investigate Mr. Alvarez's case.
Basically Mr. Addison will be conducting a new investigation and
he requests the right to view, photograph and measure all evi-
dence in the case, including but not limited to: (1) the blanket,
(2) any scietific reports, including any DNA tests, and (3) any
other evidence relating to the case.

     I also ask that you preserve the evidence for this purpose.

     Please contact Mr. Addison at 916-444-0888, and indicate
when he may view, examine and photograph the evidence.

Sincerely yours,



FRANK PRANTIL

A 77

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

February 11, 2005

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

Thank you for your letter!

I will be on my yearly vaction of two weeks starting Saturday. When I return I will get to drafting the petition and send you a copy. I will also answer the remainder of your questions, but right now I am pressed for time.

Please find a copy of my letter to Mr. Addison.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 78

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

February 11, 2005

KENNETH ADDISON
Private Investigator
717 K Street
Suite 218
Sacramento, CA 95814

Dear Mr. Addison:

Please find a letter from the DA pertaining to viewing the exhibits.

Please keep me advised of your progress.

Sincerely yours,

FRANK PRANTIL

cc: Angel Alvarez

A 79

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

February 15, 2005



Angel Alvarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, Ca. 96127-3030

Re: Investigation Update

Dear Angel:

I trust that you are well. As I mentioned in my last correspondence of
February 10, 2005 I do hope that you are doing all you can to stay in good
health.

During our meeting on February 09, 2005 we discussed the issue of evidence
used against you in your case. More specifically, the emphasis of this
discussion was the "chain of custody".

I recently received a letter from Detective Stephens of the San Jose Police
Department. Detective Stephens has been assigned the task of assisting me
in our requests. The letter from Detective Stephens, which you will find
enclosed, summarizes his actions with inventorying the evidence used in
your case and that the property forms used were duplicated and produced to
us.

I reviewed the property forms and made a subsequent phone call to
Detective Stephens for chain of custody clarification. Detective Stephens
informed me the custody is documented on the property forms.

Angel, I enclosed the property forms produced to us for your review. As
you look at the forms you will see, on the bottom portion of each property
form, the name, badge number, date and time of the person who handled the
evidence. The specific evidence handled by the officer on the form is located
in the "item" section of the property form.

A 80

**K. F. ADDISON AND ASSOCIATES**
INVESTIGATIONS

This should satisfy our concerns with the issue of chain of custody.  Please contact me if you have any questions regarding the information that I provided.

I look forward to your response Angel.

Regards,

Kenneth Addison

cc: Frank Prantil, Attorney
    Kent Russell, Attorney
    Claudia Maldonado

A 81

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

COPY

March 1, 2005

Claudia Maldonado
1357 Adrian Way
San Jose, CA 95122

Re: Angel's requests

Dear Claudia:

I received a letter from Angel on Monday, February 21, 2005 with some requests for me to make copies of his Habeas petition so that he can send it to the Court of Appeal. He sent me the exhibits and has requested that I make 7 copies of each page and send those to him. I have completed this task.

In his letter, he stated to send the photographs to you and have you get laser color copies made of the photographs, 7 copies of each and then send the copies to him.

I am enclosing the photographs as Angel requested. Please let me know should you have any questions.

Sincerely,

Kenneth Addison

cc: Angel Alvarez

Encl. 3 photographs of the blanket

A 82

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828



March 1, 2005

Angel Alvarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030

Re:  Requests

Dear Angel:

I am receipt of the two manila envelopes, dated February 21st and February 23rd and as you requested I have made the applicable copies and as well, I have forwarded the photographs to Claudia.

In terms of coming up for another visit, I will look at my schedule for March and try my best to get there.  I think I can do it.  Just hold onto all of your legal documents and I will pick them up when I visit you.

Don't worry about the money, I'm not, and besides I stopped keeping track a long time ago.  Just let me know what I can do to help.  Until we meet again.

Warmest Regards,

Kenneth Addison

cc:  Frank Prantil, Attorney
     Kent Russell, Attorney
     Claudia Maldonado

Encl.  7 copies of Habeas petition

A 83

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

March 29, 2005

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828

Claudia Maldonado
1357 Adrian Wan Way
San Jose, CA 95122

Dear Claudia:

I received a letter and instructions from Angel today. I have enclosed his letter to me. As you can see, he wanted me to mail the original of the Writ to you and have you wait his further instruction.

Enclosed, please find the original.

Regards,

Ken Addison

cc: Angel Alvarez

A 84

# K. F. ADDISON AND ASSOCIATES
### INVESTIGATIONS

March 29, 2005

717 K Street, Suite 222
Sacramento, CA  95814
916-444-0888
Fax 916-444-0828

COPY

Angel Alvarez, CDC no. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030


Dear Angel:

Enclosed, please find the three copies of the writ per you request. The original has been forwarded to Claudia this morning.

Sounds like you're having a pretty rough go of it. Stay strong, hopefully this is the homestretch. Let me know what else I can do to help...short of sending a helicopter.

I am still planning a visit with you, I just have not solidified yet, so the times and dates are still up in the air for me.

In the interim, please feel free to write and call as you deem appropriate.

Courage.

Ken Addison
Enc. 3 copies of Writ


A 85

Angel Alvarez, CDC # P-81998
H.D.S.P. / A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Sunday, March 13, 2005

TO: Frank Prantil

Mr. Prantil:

1.) I have reviewed all your letters, including your last letter dated February 11, 2005. I have also read the contract we signed.

2.) In your letter dated 12/9/02 you quoted $2,563 to review my legal materials. My family inadvertently overpaid you, sending $2,900. You acknowledged this payment in a letter dated 3/24/03, and stated you would return the difference to my family — you did not.

3.) In your evaluation letter dated 5/01/03, you quoted $9,500 to litigate through all three state courts, from Superior Court to Supreme Court. *you were paid in full.*

4.) The contract we signed in June 2003 states *the retainer* # is "non-refundable regardless of WHEN the case or representation is CONCLUDED." You specifically agreed to work with Diamond, stated in the contract.

5.) I left it up to both you and Diamond, as to how you would share the work. You apparently met with Diamond on 10/28/03.

6.) Subsequently Diamond was fired on September 13, 2004, after your letter dated 8/31/04 — stated that you "heard from a reliable source that Mr. Diamond has stipulated to a six month suspension of his license." In that same letter (Aug. 04) you ask me to "press the investigator to complete the investigation" and again in your letter dated 01/10/2005

7.) In your letter dated 9/30/04 you asked for additional funds to perform the tasks Diamond and you agreed he would perform. My family subsequently sent you an additional $3,000, for a total of $15,400 total paid to your office.

8.) To date you have only filed ONE petition, thus your obligation per your contract has not been "concluded".

9.) On page 3 of my letter to you, dated 02/01/05, I said I want to hear from you by Feb. 15TH, and you promptly replied on Feb. 11, 2005.

A 86

Page 2
03/13/05

10) Addison came to visit me on Wed., February 9, 2005. After the meeting he subsequently attempted to contact you, leaving a message with your answering service.

11) Your letter dated February 11, 2005 informed me you were going on your yearly vacation starting Saturday (02/12/05) and that it would last "two weeks." Since you replied to my letter by Feb. 15TH, you are still retained. 12)You promised in this, your last letter, that upon returning from your vacation: a) you would draft a petition for the state court of appeal, b) send me a copy, per our agreement that you would not file anything until I have read it first; c) and that you would address the concerns outlined in my letter. You sent a copy of this letter to my family.

13) Today, Sunday March 13TH, it is 15 days since you returned from your vacation, and I have received nothing from your office.

14) My family and I have been more than fair with you Mr. Prantil. You have been paid in full and in advance. I was forced to file a habeas petition, in pro per, in the court of Appeal. Do you plan on continuing this way? Are you ill? Are you hurt? Fam. Emergency?

15) On 3-way calls to you, through my sister, you have always boasted about how good your life is, the vast amount of property you own, and your good relationship with your young wife. So I know you don't give a damn about me or my life - it's all about business to you. So - getting down to bus. I urge I am not planning to implore you to live up to our agreements.

15. I will not fire you at this time, but I will accept your withdraw if you at least return half of what my family paid you, that is $7,400, along with all my legal paperwork and I will never bother you again. Diamond refused to refund my money and he will be dealt with a legal blow for his egregious misconduct. Please decide: represent me or withdraw.

cc: Kenneth Addison

A 87

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

March 17, 2005

ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

Thank you for your letters! I apologize for not getting back to you sooner. It has taken me a little longer than I anticipated to get caught up from my vactaion.

I have no intention of withdrawing from your case because I believe you have a reasonable chance at success.

I am willing to proceed with drafting the petition to be filed with the court of appeal. It will only contain the issues that I have raised at the superior court.

Diamond was supposed to file at the court of appeal level. He has been fired. I will be glad to file at the court of appeal level but upon further consideration, it may be best to wait until the investigation is completed. The investigation may change the entire approach and tactics to the habeas petition to be filed.

So at this point, I believe it may be best to wait until the investigation is completed, contrary to my previous letters. If you don't agree, get back to me.

I was paid an additional $3,000 to include the results of Addison's investigation into the petition to be filed with the court of appeal.

Concerning the timeliness of the petitions, Addison has been keeping track of his work because I requested him to do so. When we get to federal court, we will need to explain to the court that we have been diligent in completing the investigation, and that is where Addison will need to file a declaration showing that he has been diligently pursuing the investigation. I have kept on him, and you have.

So, at this point I need to know whether you want me to file a petition with the court of appeal which will contain the same issues filed with the superior court petition, or to wait until

*A 88*

the investigation is completed by Addison.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 89

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


April 4, 2005


ANGEL ALVAREZ P81998
A-Facility
P.O. Box 3030
Susanville, CA 96127-3030

Dear Angel:

Thank you for your letter!

You are panicking again!  I don't know why you filed with the court of appeal on your own and without my help.

That is behind us!  Please do not file a petition with the state supreme court.  That is my job and you would be foolish to try this yourself because if the issues are not properly raised and fully exhausted you will lose months of time when we finally get to federal court.

What is important now is to complete the investigation so that I may draft the petition to be filed with the state supreme court, and file it.  Please find a copy of the letter I sent to Addison.

Therefore, get on Addison to complete the investigation so that we may file with the state supreme court.  If he can't get the job done, we will need to show a federal court that he has been diligent in his investigation and that was the reason for the delay in filing at the state supreme court.

As far as a conference call, I have expressed why I won't play that game with the CDC.  To repeat myself:

**ATTORNEY CLIENT PHONE CALLS:**

I am sorry but I have tried many, many times to connect with inmates who are in the SHU unit, or general population, with no success.  I will not play the game with the so called "counselors."  Here is the way the game usually goes:  First I telephone the litigation coordinator at the prison.  This usually takes a couple of telephone calls.  He or she then advises me that the inmate's counselor will contact me to arrange a legal telephone call with my client.  I advise the litigation coordinator of the days and times that I will be in my office and please

*A 90*

advise the counselor so that we can make a **definite connection**. And then nothing!!!!!!!! The counselor then lies to my client and advises him that I could not be reached. My office is open during ordinary business hours, and the rest of the time I have a 24 hour answering service. I always return telephone calls promptly. If the counsel telephoned me, I would have received a message. Believe me, I don't want to play this game anymore. Therefore, please write to me, I will return your letter and answer your questions, but damn it, I won't play this CDC game. These uneducated, overpaid "counselors" just cause trouble.

And finally, you have had in the past no problem reaching me by phone. You know I am generally in my office the afternoons of Monday, Tuesday and Thursday.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 91

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


April 4, 2005


KENNETH ADDISON
Private Investigator
717 K Street
Suite 218
Sacramento, CA 95814

Re: Angel Alvarez

Dear Mr. Addison:

As you know we have time limits in habeas litigation, as I have already alerted you to sometime ago. And as a result you have been sending me copies of correspondence showing that you are proceeding diligently with the investigation.

Please be ready to file a declaration showing your diligence in pursuing the investigation. We will probably need it when we get to federal court.

Please keep sending letters to Angel and a copy for me, stating your progress.

Now, the **reasons** I am writing you is to inquire: when will this investigation be completed?

I would like to file a petition with the state supreme court with the new evidence you have discovered within the next two months.


Sincerely yours,



FRANK PRANTIL


A 92

COPY

<u>**Declaration of Kenneth Addison**</u>

I, Kenneth Addison declare that I am licensed as a Private

Investigator, California State #PI-8878. I own and operate an agency

specializing in Criminal Defense Investigations and matters relating to

Habeas Corpus Petitions.


Angel Alvarez, currently incarcerated at High Desert State

Prison, CDC# P-81998, retained the services of my office to conduct

investigations on his behalf.  I was originally hired on October 8, 2003

and have performed investigative services for Mr. Alvarez through

June 2005.


Commencing in October 2003 through January 2004, I sought

and located documents in regards to the criminal history of Ivan

Acosta, DOB 10-04-65, in Alameda County.


Continuing in February 2004 through December 2004, I sought,

located and interviewed defense witnesses: a) Leslie Hernandez (to

support IAC claims), b) Ejaz Anam (to support IAC and juror

misconduct claims, c) Ramon Quintanilla, Sr. (to support IAC

A 93

claims), d) Mayra-Alejandra Quintanilla (to support IAC claims). I

obtained declarations from each of the declarants.


I also interviewed and obtained a statement from Private

Investigator, Eduardo Guilarte, California License# PI-13218, who

was the investigator for Mr. Alvarez's former Trial Attorney, Eugene

Martinez, State Bar# 81209 and secured a cassette recording.


I also sought and obtained new evidence in support of Mr.

Alvarez's habeas petition in the way of declarations from: a) Amelia

Guerrero and b) Mayra-Alicia Quintanilla.


During the same period of time, I attempted to interview the

following individuals but could not locate them: a) Paul Hillestead

(defense witness), b) Alice Johnson (Mr. Alvarez's college instructor),

and c) Tanya Rabago (Ivan Acosta's half-sister)


I also met with Mr. Alvarez's court-appointed Appellate

Attorney, Kat Kozik, State Bar# 145528, and obtained a copy of Mr.

Alvarez's case files.

A 94

1
2
3      I traveled to Susanville, California to the High Desert State
4  Prison to visit Mr. Alvarez to take measurements of his hand, this
5  occurred on July 23, 2004.
6
7
8      During the course of my investigative duties, I also provided
9  information from the State Bar website to Mr. Alvarez and
10
11  subsequently provided him with information (telephone records) to
12  support his decision to fire one of his Habeas Attorney's, Gary
13  Diamond, Bar# 155028 for breach of contract.
14
15
16      From January 2005 through March 2005, as an envoy in his
17  stead, I represented Attorney, Frank Prantil, State Bar# 035155, on
18
19  Mr. Alvarez's behalf and contacted the Santa Clara County District
20  Attorney's Office (DDA Victoria Brown) and Detective Stephens of
21  the San Jose Police Department.
22
23
24      High Desert State Prison was in lockdown from April 2005
25  until June 2005, because of this I provided Mr. Alvarez with
26
27  documents form his appellate lawyer's files and provided
28

A 95

photocopying services to help him prepare his habeas petition to the California Supreme Court.

In the course of the above assignments on Mr. Alvarez's behalf, I made countless telephone calls to his Attorneys and to the Prison Litigations Coordinator. I also made extensive trips throughout Northern and Central California to interview witnesses, attorneys and individuals of interest. I was also an envoy for Attorney Frank Prantil, visiting and interviewing Mr. Alvarez at the prison in Susanville, California, several hours from my office in Sacramento.

I performed the above services to Mr. Alvarez while also working for other clients and cases outside of that of Mr. Alvarez for 20 months.

I declare, under penalty of perjury under the laws of the State of California that the foregoing true and correct on this 17th day of June, 2005.

_____

Kenneth Addison

A 96

# K. F. ADDISON AND ASSOCIATES
## INVESTIGATIONS

717 K Street, Suite 222
Sacramento, CA 95814
916-444-0888
Fax 916-444-0828



June 30, 2005

Angel Alvarez, CDC No. P-81998
High Desert State Prison/A-Facility
Post Office Box 3030
Susanville, CA 96127-3030

Dear Angel:

I hope this letter finds you doing well, again when I run across articles of
interest or items that may be germane to your case I like to forward them to
you so the enclosed needs no explanation. The article appeared in June 2005
addition of Californian Lawyer.

Let me know how things are going.

Regards,

Ken

Encl. California Lawyer magazine article

A 97

# DISCIPLINE REPORT

## DISBARMENT

**GREGORY B. BAMBO III**, State Bar # 169703, Richmond (January 20). Bambo, 42, was disbarred for failure to perform legal services with competence, failure to promptly pay out client funds, failure to communicate, failure to return unearned fees, failure to promptly release a client file, failure to maintain client funds in trust, commingling funds, misappropriation, engaging in acts of moral turpitude, and failure to cooperate with three State Bar investigations.

In aggravation, the misconduct involved multiple acts of wrongdoing that caused significant harm to clients. He demonstrated indifference toward rectification of or atonement for the consequences of his misconduct by failure to pay funds owed to clients. He also failed to participate and cooperate with the State Bar during its investigation and proceedings.

The order took effect February 19.

**RICHARD W. ENGQUIST**, State Bar # 65718, San Diego (January 13). Engquist, 55, was disbarred for failure to comply with rule 955 of the Rules of Court.

In December 2003, by order of the Supreme Court dated November 18, 2003, Engquist was placed on suspension for one year and until he provided proof of his rehabilitation, fitness to practice, and learning and ability in the law. The discipline was imposed when his conviction for driving under the influence of alcohol. Conditions to the discipline required Engquist to comply with rule 955 by notifying clients and opposing counsel of his suspension within 30 days and filing an affidavit of compliance within 40 days. He failed to file the affidavit and failed to provide an explanation to the State Bar for his noncompliance with the rule.

In aggravation, Engquist had a prior record of discipline. The State Bar Court found that Engquist demonstrated indifference toward rectification of or atonement for the consequences of his misconduct, even after the Notice of Disciplinary Charges was filed against him. Also, he failed to participate in the State Bar proceedings prior to entry of his default.

The order took effect February 12.

**MAXIMILIAN S. GARCIA**, State Bar # 153387, Glendale, Arizona. (December 14). Garcia, 49, was disbarred following his disbarment in Arizona for misconduct in eight client matters. He was ordered to make restitution of $49,500 to seven clients.

Garcia was disciplined for failure perform legal services with competence, failure to timely file a notice of appearance, failure to timely file an appellate brief, having a client admit to being in the United States illegally, failure to respond to documents from opposing counsel, failure to avoid interests adverse to clients, failure to communicate, failure to respond to clients' inquires about the status of their cases, improper withdrawal by failure to take reasonable steps to avoid reasonably foreseeable prejudice to a client, failure to promptly return a client's file, failure to return unearned fees, collecting unconscionable fees from two clients, failure to maintain respect due the courts, misleading a court by promising to refund $3,000 in fees and then failing to do so, failure to cooperate with five State Bar investigations, failure to obey a court order, failure to appear for an order-to-show-cause hearing regarding the appointment of a conservator to his abandoned law practice, and engaging in acts of moral turpitude.

In aggravation, the misconduct demonstrated a pattern of wrongdoing during a four-year period that was surrounded by bad faith, dishonesty, and concealment. The Arizona Supreme Court found that Garcia's submission of false evidence, false statements, and other deceptive practices during the disciplinary process constituted harm to the administration of justice. Also, he demonstrated indifference toward rectification of or atonement for the consequences of his misconduct.

The order took effect January 13.

**LESTER WHALLEY**, State Bar # 54794, Yorba Linda (January 20). Whalley, 71, received a summary disbarment following his criminal conviction.

In March 2001 Whalley was convicted of violation of 18 U.S.C. sections 371 and 1343, conspiracy to commit wire fraud and aiding and abetting wire fraud, both felonies. In August



The full text of the disciplinary actions reported this month, including instances of multiple matters of attorney misconduct and complete aggravating and mitigating factors, are available on www.dailyjournal.com.

## DISBARMENT

Gregory B. Bambo III, Richmond
Richard W. Engquist, San Diego
Maximilian S. Garcia, Glendale, AZ
Lester Whalley, Yorba Linda

## RESIGNATION

Barbara H. Allison, Fresno
Martin D. Arnoldini, Woodland Hills
Jerrold B. Boschma, Woodland Hills
Gary M. Diamond, Rocklin
Ken P. LaFayette, San Diego
Cary W. Medill, Beverly Hills
Mary J. Morris, Susanville
William P. Patterson, La Vergne, TN
Dennis E. Tamborin, Van Nuys

## SUSPENSION

Nelson R. Boylan, Chilcoot
Stephen J. Buchanan, Los Angeles
Rosemarie Burgos, Long Beach
Justin R. Dahlz, South San Francisco
Bret J. Davis, Los Angeles
Deborah A. Duggan, Oakland
Leslie L. Hartwell, Hollywood
George Hernandez, Beverly Hills
Richard A. Lenard, Anaheim
Daniel A. Micklis, Palm Springs

List continued on page 56

The listings here are summaries of disciplinary action taken by the state Supreme Court or the State Bar Court for the dates noted and are provided by the State Bar Court. The summaries are comprehensive for the time period and do not reflect subsequent miscellaneous orders by the courts that may affect these matters. The date of the court's action is in parentheses. For more complete information on disciplinary proceedings contact the *San Francisco Daily Journal*.

# DISCIPLINE REPORT

## SUSPENSION (continued from page 55)

Mark Morris, Beverly Hills
Otto I. Pena, Fullerton
David E. Roberts, Fresno
Manton L. Selby II, Mill Valley
Alexander F. Sun, Arcadia
Kevin W. Yeam, Valencia

## INTERIM SUSPENSION

Marilyn K. Freeman, Sherman Oaks
Thomas L. Hyatt, Santa Barbara
Michael T. Wurzburg, Huntington Beach

## PROBATION

Thomas I. Armstrong, Irvine
Thomas G. Key, Tustin
Angela M. Rossi, Los Angeles
James M. Simmons, Los Angeles
William C. Sneed Jr., Sacramento
Emil J. Vodonick, Nevada City
Gary M. Walters, Los Angeles

---

2003 he was placed on interim suspension following his conviction. In July 2003 the Review Department of the State Bar Court issued an order to show cause why it should

not recommend his summary disbarment. In response Whalley asserted that his conviction was on appeal. The State Bar Court delayed consideration of the matter, but his appeal of the conviction was dismissed, and the order for summary disbarment was issued.

The order took effect February 19.

## RESIGNATION

*The following attorneys resigned from the bar with unspecified disciplinary charges pending. Their resignations were accepted without prejudice to further disciplinary proceedings should they seek reinstatement.*

**BARBARA H. ALLISON,** State Bar # 151867, Fresno (January 6). Allison, 69, resigned from the bar on December 17, 2004.

The order took effect Feb 5.

**MARTIN D. ARNOLDINI,** State Bar # 109531, Woodland Hills (December 14). Arnoldini, 52, resigned from the bar on November 23, 2004.

The order took effect January 13.

**JERROLD B. BOSCHMA,** State Bar # 93398, Woodland Hills (December 14). Boschma,

52, resigned from the bar on November 23, 2004.

The order took effect January 13.

**GARY M. DIAMOND,** State Bar # 155028, Rocklin (December 14). Diamond, 48, resigned from the bar on November 2, 2004.

The order took effect January 13.

**KEN P. LaFAYETTE,** State Bar # 190778, San Diego (January 6). LaFayette, 36, resigned from the bar on December 9, 2004.

The order took effect February 5.

**GARY W. MEDILL,** State Bar # 55924, Beverly Hills (January 13). Medill, 58, resigned from the bar on November 17, 2004.

The order took effect February 12.

**MARY J. MORRIS,** State Bar # 137695, Susanville (December 23). Morris, 47, resigned from the bar on November 22, 2004.

The order took effect January 22.

**WILLIAM P. PATTERSON,** State Bar # 99088, La Vergne, Tennessee (January 20). Patterson, 50, resigned from the bar on December 20, 2004.

The order took effect February 19.

**DENNIS E. TAMBORIN,** State Bar # 93007, Van



**Today's malpractice insurance marketplace can be tough to navigate. *Let us help light the way.***

Our relationships with many highly rated professional liability providers can enable us to quickly find coverage that suits your individual needs.

You'll also have access to a variety of other insurance products, such as businessowners coverage and surety, fidelity, and court bonds.

Most importantly, you'll always be able to speak to a knowledgable, experienced agent that truly cares about you and your professional insurance needs. Give us a call...

**We're sure you'll find it illuminating!**

DANIELS-HEAD
INSURANCE
AGENCY, INC

**800-848-7160**
www.danielshead.com
License # 0568952

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

July 21, 2005

ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

Please find your copy of Frank Saunders declaration. Review it, and advise me of what you think.

I intend to draft within 14 days, the petition to the supreme court, for your approval, once the Sanders declaration is in final form.

Sincerely yours,

FRANK PRANTIL

A 100

DECLARATION OF
FRANK H. SAUNDERS

I, Frank H. Saunders declare as follows:

1. I am a resident of Santa Cruz County, California.

2. I am self-employed as a consultant in Law Enforcement, Security and Private Investigations (CA Lic. #AA-8900). I am doing business under the name of Frank Saunders & Associates, Inc. My business address is: PO Box 1730, Capitola, CA, 95010.

3. I was employed for fifteen (15) years with the Santa Monica, California, Police Department and hold that agency's highest award, "The Medal of Valor." I worked for over ten (10) years as a FTO (Field Training Officer) and have accumulated experience in all areas of investigation, report writing and evidence handling since 1965. My current CV is also attached and should be considered as a part of this declaration.

4. Presently I am professionally affiliated with the National Association of Chiefs of Police, PORAC (Police Officers Research Association of California), numerous other police officers' organizations and hold both a *Field Training Officer (FTO)* and an *Advanced* Certificate from POST (Commission for Peace Officers' Standards and Training). I am listed as a police expert with the Northern California Defense Counsel's Expert Bank, Americans for Effective Law Enforcement (Chicago, IL), Who's Who in American Law Enforcement (North Miami, FL), and am shown as one of the top 5,000 Court Certified Expert Witnesses in the country by the National Forensic Center (San Diego, CA).

5. I have qualified as an expert and been allowed to testify as an expert witness well in excess of 400 cases in Federal, State and Municipal courts in California, Illinois, Nevada, Arizona, Hawaii, Oregon, Washington, Delaware, North Carolina, Wyoming, Montana, Mississippi, Alaska, Indiana, Pennsylvania, Iowa, New Mexico, Missouri, Tennessee and New Plymouth, New Zealand, since 1981.

6. During that 24 year period, I have been retained by both plaintiffs and such agency/officer/defendants (in both and criminal and civil trials) as the San Diego Police

A 101

Department; the Los Angeles Sheriff's Department; Los Angeles Police Department (twice); San Francisco (twice); Oakland (twice); Sacramento County, CA; Torrance, CA; El Cajon, CA; Santa Cruz, CA; Tustin, CA; Long Beach, CA (twice); East Bay Regional Park District, CA (twice); Sanger, CA: (twice); Los Gatos, CA; Sunnyvale, CA; San Jose, CA (twice); Santa Clara County, CA; Santa Maria, CA Santa Ana, CA; Fullerton, CA; Kern County, CA; Glenn County CA; Westminster, CA; Richmond, CA; Livermore, CA; Compton, CA; Oregon State Police; Spokane, Washington; Klamath Falls, Oregon; County of Maui, Hawaii; County of Asa, Idaho; Wilmington Delaware Police Department; Delaware State Police (four times); New Castle County, Delaware Police Department; Hanford, CA; Hazel Park, Michigan P.D.; Siskiyou County, CA ; the INS; Springfield, IL PD; and Albuquerque, New Mexico (3 times).

7. Based upon my review of the indicated materials (see attached listing) done at the direct request of the indicated Defendant, and weighed against my personal law enforcement training and in particular my in-the-field as well as my investigative experience, dating back to 1965, it is at this time my firm professional opinion that I can never recall a more confusing and convoluted "chain-of-evidence" series of violations, then is clearly demonstrated during this specific instance presently under review.

8. Sequentially, Item #4, described as a "red plaid blanket" on page # 1 (of 2) of the examined San Jose PD "evidence log", was released (03-28-97) from San Jose PD evidence room to the Santa Clara County Crime Laboratory, for supposed testing along with other evidentiary items relevant to this criminal prosecution. However, no indication of the result of any such "testing" being conducted (on this blanket) is shown on the crime lab report (of Criminalist Kathy Benjamin) dated 04-15-97. This red plaid blanket (item #4) is then shown as being returned to the SJPD property room on 11-16-98, along with items #1 through #5. This same item (#4; i.e.: the red plaid blanket) for approximately a one-day period is shown being sent to the SAIU (Sexual Assault Investigative Unit) (on 06-10-98) before being logged back into the SJPD property room the next day (06-11-98). Interestingly enough, it is the next property log entry that is most curious. Although there is no indication that any items were logged out of the property room in 1998, Officer R. Ramos shows a log entry for a "returned property" on June 16 of 1998, *after* the returning entry from the SAIU, dated almost a year later, and not indicating a location from where

*A 102*

these items were returning from. Again, items #1 through #5 (apparently including the same item #4: the blanket in question) were released to court on 06-15-99 but the blanket was not signed back into the property room until 08-04-99 if (apparently) the same Officer R. Ramos, listing of "item #4", as almost an afterthought to that latest log entry indicating that item #5 returned on that date.

9.    From a careful study of the supplied material, it is totally impossible to accurately ascertain if: (a) item #4 was ever "released" (much less when and to where, on more than one occasion), if (b), such a determination is only to be based on Officer R. Ramos' various (and missing?) log entries over the history of this quite badly shattered "chain-of-evidence" incident(s), as my to-date-review thus far clearly seems to show.


I hereby declare under penalty of perjury that the matters stated herein are true and correct and are based upon my personal knowledge, and review at this time, and if I were called as a witness, I could testify competently thereto.    Executed in the City of Santa Cruz, State of California on this 11th day of July, 2005.

Frank H. Saunders

A 103

## PEOPLE OF CALIFORNIA vs. ANGEL ALVAREZ
## OUR CASE # 25-019

**OCCURRED: 12-13-96**
**CONTACTED: 06-08-06**

## • MATERIALS REVIEWED

- Santa Clara County District Attorney's Office letter (02-04-05)
  DA Kimberly A. Connors: to - Frank G. Prantil, Esq.

- San Jose PD Supplemental Report Case # 96-324-1241 (02-03-05)
  Detective Mark Stephens

- County of Santa Clara Crime: Report: # M 960659 (04-15-97)
  by Criminalist Kathy S. Benjamin

- County of Santa Clara Crime Lab: Evidence Management Log
  (05-20-98 through 09-04-98)

- San Jose PD Property / Evidence Chain of Custody Record (12-13-96)

A 104

Angel Alvarez, No. P-81998
S.Q.S.P. / North Block
General Delivery
San Quentin, CA  94974

Wednesday, August 24, 2005

Frank G. Prantil
Attorney At Law
916 Second Street, Second Floor
Sacramento, CA  95814

     Re:  In re Alvarez, On Habeas Corpus

Dear Mr. Prantil:

Frank, today will be five (5) months since the Sixth District
Court of Appeal (state appellate court) denied my habeas
petition.

Please review all of the exhibits, as some of them will no
longer be needed.  (e.g.: exhibit about lockdown at H.D.S.P.)
and please review the facts to support all the grounds that were
raised.  One of the grounds states that the penal code that I
was convicted on for aggravated assault had been repealed.  This
is not true.

Additionally, I mailed to you a letter from the State Bar that
informed me that Diamond had resigned from the bar.  Please make
a copy of that document to attach to the petition, if needed,
and mail the original back to me.

Finally, a counselor Garcia will be mailing a "Classification
Chrono" to you on form 128-G.  Please make a copy of it for my
file and mail back the original to me

Sincerely,


Angel Alvarez


A 105

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

August 30, 2005

ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

I have not received the findings of Addison concerning the inconsistencies in the police reports. Please find my letter to him. Until I receive this information I cannot complete the draft of the petition to be filed with the supreme court. Within 10 days of receipt of that information, I will send you a draft of the petition.

Please find a copy of my letter to the Warden, pertaining to the inmates who you want listed as your enemies.

Sincerely yours

FRANK PRANTIL

cc: Claudia Maldonado

A 106

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


August 30, 2005


KENNETH ADDISON
Private Investigator
717 K Street
Suite 218
Sacramento, CA 95814


Re: ANGEL ALVAREZ

Dear Kenneth:

　　I have not received the your report showing the inconsisten-
cies of the complaining witness testimony with the police re-
ports. I need this information in order to draft the petition to
be filed with the state supreme court.

　　I do have your declaration of due diligence.


Sincerely yours



FRANK PRANTIL

cc: Angel Alvarez

A 107

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


September 19, 2005


ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

Please find a copy of my first draft of the petition to be
filed with the state supreme court.  I didn't receive the paper-
work from Addison until after labor day. 09/06

This draft is a long way from what I would like to file.  I
believe we will need an overview which hopefully will at least
get the court to read the entire petition.  There is no doubt
that① you were denied your rights to a fair trial and② that the
prosecution was guilty of misconduct by not preserving evidence,
as required by TROMBETTA and its progeny, and③ by failing to
disclose the exculpatory evidence under BRADY early enough for
you to present evidence that you were not the perpetrator.  And④
further by refusing to admit evidence of third party liability,
your defense was gutted.

I have added additional points of law with reference to the
third party liability claim.  I will consolidate the BRADY issue
with the TROMBETTA issue, with my next draft.  But you need to
get back to me with input so that I may make the second draft.

I don't see the relevancy of Saunder's "chain of custody"
opinion.  It serves no purpose other than to show that the police
were negligent or sloppy with their police work.  And in my
opinion the issue is more than adequately covered by BRADY and
TROMBETTA.  I also believe that it will distract from the merits
of your case.  Russell for example writes, writes, and writes.
Most judges will take a brief like that and not even read it.
Russell has raised some very good points which I will incorporate
in my second draft.

In a telephone conversation with you a couple of weeks ago
you told me that Addison had discovered some inconsistencies in
the children's testimony.  He only sent me the transcript of the
tape recording, and not his findings of inconsistencies.  Did he
provide you with one?  I don't see a need to attack the

*A 108*

credibility of the children for two reasons.  First, it is very easy for a reviewing court to ignore any argument attacking their credibility because of the young age of the children.  And second, their credibility is really not the issue.  The issue is whether you were deprived your rights to a fair trial and effective assistance of counsel, and I believe we have raised sufficient substantial issues to succeed.  Attacking their credibility will distract for the main issues here and in my opinion we should not try.

As to what is marked as Attachment 3, I presume that you want to include your declaration with the petition. I also presume you want me to type up the declaration for your signature, including the penciled additions. But I do not like some of the language contained in the attachment.  Items 14 and 15 state that:

14. On September 30, 2004, Mr. Prantil wrote to petitioner asking for more money to research the issues that Diamond was supposed to have handled.  Still, however, no petition was forthcoming.

15. In November of 2004, petitioner gave up on Mr. Prantil as well and re-contacted Mr. Russell, the attorney who had prepared a preliminary evaluation for petitioner back in July of 2003.  Mr. Russell agreed to prepare a petition for petitioner to file a proper, within 60-90 days of being retained....."

I do not see the need for these two paragraphs because there is only a two month gap between when you fired Diamond and hired Russell to prepare the pro se petition.

As to the work done by Attorney Russell, I like the points that he has made, except I believe that his writing lack "punch" because his writing is too lengthy and does not "catch" the reader in its opening.  And his writing is too verbose, which discourages reading by the law clerks of the state supreme court, which include attorneys working as clerks. I suggest that what he has raised should be raised in the "overview" of the petition.  I wanted to get this done before writing this letter to you but because I have been suffering stomach flu or food poisoning for the last three days, I have been unable to do so.  When you get back to me with answers to the questions asked in this letter I will get to writing the most important section of the petition, the "overview."

At page 10 of Russell's work, paragraph 6, Russell makes mention of a tape-recorded statement by Tanya Rabago.  Where is the tape?  I presume that the tape is being withheld by the prosecution, am I correct?

Again at page 10, paragraph 7, Russell writes that Mayra-Alici's father was not interview about his daughter bathing with Amanda who did not notice any bruises, on Amanda "on the last

A 109

weekend with petitioner." Can we be more specific, and claim
that it was on the night before November 19, 1996? And when we _~~yes~~
couple that fact with paragraph 8 that Ruby lied about you bring-
ing the children home in the evening instead of the morning, we
have a much better factual allegation.

At page 17, Russell writes that because Amanda was 40 miles
away the prosecution objected to her being recalled. I think
this could also be an important issue, showing that you did not
have a fair trial because the prosecution, along with the trial
court's blessing, blocked your attempt to produce exonerating
evidence. Are the allegations by Russell true? If so, I will
need to look at the reporter's transcript and quote what happened
to give the issue more "punch." (yes)

I don't like the prosecutorial misconduct issues raised by
Russell at page 20, concerning closing argument and the increase
in charges. I think the misconduct issue is weak because the
prosecution is given wide latitude by law in closing. And as to
increase exposure, it is quite common for a prosecutor to in-
crease the charges when a plea offer is turned down. I don't see
the issue succeeding. And besides, the other issues, TROMBETTA,
BRADY, etc. are much stronger and the prosecutorial misconduct
issue weak, which may distract from the stronger issues. But you
make the call.

I think the Russell may have a good argument as to selective
prosecution, but I will need to research the issue further. I
don't know if there is a case supporting an argument that by
selecting which section to prosecute under, the DA is guilty of
misconduct. Maybe a better argument is that the law is not clear
whether a defendant should be prosecuted under section 269 or
288a(c)(2). — Goes to Equal Protection

So, get back to me on these matters.

Sincerely yours,

*The Equal Protection Clause requires all persons
similarly situated be treated alike
and*

*Equal Protection violation occurs when Govt.
prosecutes someone differently than another
who is similarly situated.*

FRANK PRANTIL

cc: Claudia Maldonado

A 110

FRANK G. PRANTIL
Attorney at Law
State Bar License #035155
916 Second Street
2nd Floor
Sacramento, CA 95814

Attorney for Petitioner

(916) 446-4669


SUPREME COURT

STATE OF CALIFORNIA


| | |
|---|---|
| In the Matter of | ) |
| | ) No. |
| ANGEL JESUS ALVAREZ, | ) |
| | ) PETITION FOR |
| | ) WRIT OF HABEAS CORPUS |
| On Habeas Corpus, | ) & MEMORANDUM OF POINTS |
| | ) & AUTHORITIES |
| | ) |

Petitioner alleges:

I

Petitioner is unlawfully restrained of his liberty by the
California Department of Corrections, at Susanville, California.
The Superior Court, County of Santa Clara, sentenced petitioner
to 17 years to life on May 26, 2000, case no. 198084.

II

Petitioner alleges that he is illegally restrained because
he was denied effective assistance of counsel at trial and on
appeal, in violation of the Sixth Amendment of the United States
Constitution, as will be more fully demonstrated in the memoran-
dum of points and authorities filed herewith.

1

A 111

Petitioner alleges that his conviction violates due process of law because the evidence is insufficient to support the conviction.  Because the issue was addressed on direct appeal, however, it will not be raised here.

The conviction also violates petitioner's federal due process right to present a defense.  In particular the trial court refused to admit evidence of third party liability, i.e. that the victim made a statement, prior to trial, that her biological father had molested her.  The issue was addressed on direct appeal, and rejected by the court, citing state law.  The issue is raised here in federal constitutional terms.  Alvarez contends that the state court of appeal failed to weigh and consider the factors stated by the United States Supreme court in MICHIGAN v. LUCAS, see argument below.

And on direct appeal, which consolidated a habeas petition filed before the court of appeal, petitioner contended that he was denied effective assistance of trial counsel because trial counsel failed to: (1) investigate and present evidence that prosecution witness Ruby Rubio, the mother of the complaining witness, had engaged in welfare fraud, (2) present evidence that petitioner threatened to report Ruby Rubio for her other illegal conduct, i.e. that she harbored her boyfried Onorato Deltoro, and (3) failed to present a timely Evidence Code section 782 motion to admit the statement of the victim that her biological father had molested her. These issues were addressed on appeal and denied.  They are not raised in this petition.

The conviction violates federal due process because the

*Omitted, why?*

*A 112*

2

prosecutor failed to disclose exonerating evidence to the defense, constituting BRADY error, and failed to preserve evidence which would have exonerated Alvarez, as will be discussed in the memorandum of points and authorities herein.

And finally, petitioner alleges that his rights to due process of law were violated because the trial violated petitioner's right to be present at all stages of the proceedings when after deliberations began, the court answered jury questions without counsel or the defendant being present, as will be further discussed in argument below.

### III

Petitioner has no other plain, speedy, or adequate remedy at law.

### IV

Petitioner has made no prior application for habeas relief in this court.

### V

Concerning the timeliness of this petition, petitioner alleges that he has not deliberately delayed filing this petition. He has been diligently pursuing his remedy but because of circumstances beyond his control the filing was delayed. In part the delay has been the result of completing the investigation and production of evidence that proves his innocence. He was required to depend upon others to complete the investigation, which was just completed.  See the attached declaration of Kenneth Addison, marked Exhibit A, a licensed investigator who was hired by petitioner to conduct the investigation.  Also attached please find the declaration of Frank H. Saunders, dated July 11, 2005, who is

3

A 113

an expert in police "chain-of-evidence" evaluation.

Another reason for the delay was because an attorney, Gary Diamond, was retained to prepare and file a petition with the court of appeal. Diamond took petitioner's money, did nothing, and misled petitioner to believe that the petition would be forthcoming.  After waiting a reasonable amount of time for Diamond to perform as promised, petitioner instead filed a petition with the court of appeal. See attached exhibit B.

*Attorney Diamond is no longer a member of the Bar.*

Furthermore, petitioner is actually innocent of the charges and a fundamental miscarriage of justice will occur unless this court considers the merits of the claims made here because: (1) the errors here are of such constitutional magnitude that the trial was fundamentally unfair, (2) that absent the errors no reasonable jury would have convicted petitioner, and (3) that petitioner is actually innocent of the crimes of which he was convicted, IN RE CLARK 5 Cal.4th 1750, 797-798.

WHEREFORE, petitioner prays judgment as follows:

1. That a writ of habeas corpus be granted, directed to  the California Department of Corrections, commanding it to have the ANGEL JESUS ALVAREZ, together with the authority for his confinement, before this Court at a specified time;

2. That this court set an evidentiary hearing to prove the allegations contained in this petition.

3. For such other and further relief as the court may deem proper.


Dated: October       , 2005

_____
FRANK G. PRANTIL
Attorney for petitioner

*A 114*

## VERIFICATION

I, ANGEL JESUS ALVAREZ, am the petitioner in the above entitled proceeding. I have read the foregoing petition and know the contents thereof. I declare under penalty of perjury that the contents of the petition are true and correct.

Executed on October     , 2005, at San Quentin, California.


_____
ANGEL JESUS ALVAREZ
Petitioner

*A 115*

5

**MEMORANDUM OF POINTS & AUTHORITIES**

**IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

I

**STATEMENT OF THE CASE**

On August 4, 1997, an information was filed accusing petitioner of: (1) count one, violating Penal Code section 288.5, continuing sexual abuse; (2) count two, aggravated sexual assault premised upon a violation of Penal Code section 288a, subd. (a), forceful oral copulation, (3) count three, lewd and lascivious conduct by means of force, in violation of section 288, (b)(1), (4) count four, child abuse, section 273a(a), (5) count five, child beating, section 273d(a), (6) count six child beating, section 273d(a), and (7) count seven, child abuse, section 273a(a).

After a trial by jury, petitioner was acquitted of counts one and three, and convicted him as charged in counts two, five and six.  The jury also convicted petitioner of misdemeanor child abuse as lessers offenses to counts four and seven. of all remaining counts.

On May 26, 2000, petitioner was sentenced to state prison for a term of 17 years to life.

Petitioner filed a timely notice of appeal.

On October 25, 2002, the court of appeal affirmed petitioner's conviction.

On January 15, 2003, the state supreme court denied petitioner's petition for review.

On December 17, 2003, petitioner filed a petition with the superior court alleging that his conviction violated federal due

6

*A 116*

process, claiming Brady error, failure of the trial court to admit evidence of third party culpability, failure of the court to instruct on the lesser charge of non-forcible oral copulation, (a lesser included offense), and that the trial court violated petitioner's right to be present at a critical stage of the proceedings when the court, during jury deliberations, answered questions posed by the jury without petitioner or defense counsel's presence, and without a stipulation from petition that the court could answer questions without the presence of counsel or petitioner.

On January 14, 2004, the superior court denied the petition.

On -----------petitioner filed a habeas petition with the court of appeal, which was denied by the court without comment on March 23, 2005.

II

**STATEMENT OF THE FACTS**

For purposes of this petition, petitioner respectfully adopts the statement of facts contained in the unpublished opinion of the Court of Appeal, Sixth Appellate District, case# H021626, except for any factual issue that is discussed in argument below.

III

**ARGUMENT**

A.

**WHERE THE PROSECUTION FAILS TO DISCLOSE THAT**

**THE ALLEGED VICTIM WAS INFECTED WITH CHLAMYDIA**

**UNTIL IT WAS TOO LATE TO EXCLUDE PETITIONER**

**AS THE ALLEGED PERPETRATOR**

*A 117*

## HAS BRADY ERROR OCCURRED?

1 In <u>BRADY v. MARYLAND</u> (1963) 373 U.S. 83, the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused" violates due process where "the evidence is material...irrespective of the good faith or bad faith of the prosecution."

2 Since then, the rule has been modifed to impose an even stricter duty upon prosecutors by requiring them to disclose substantial material evidence even when there has been no request by the defense. (<u>UNITED STATES v. BAGLEY</u> (1985) 473 U.S. 667.)

3 The prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused, and even an inadvertent failure to disclose may constitute a violation. See <u>UNITED STATES v. AGURS</u> (1976) 427 U.S. 97, 107, 110. .pa

4 As the Supreme Court has observed, BRADY and its progeny "illustrate the special role played by the American prosecutor in the search for truth in criminal trials." <u>STRICKLER v. GREENE</u> (1999) 527 U.S. 263, 281.

5 In STRICKLER, the Supreme Court also stated that "there is never a real BRADY violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict," <u>STRICKLER</u>, 527 U.S. at 281.

6 A BRADY violation therefore occurs where the State suppressed the evidence, either willfully or inadvertently; the evidence at issue was favorable to the accused, because it is exculpatory; and the evidence was material to the outcome such

8

*A 118*

that the defendant was prejudiced by the suppression. Id. at 281-82.

7. Evidence is deemed material to the outcome "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. <u>UNITED STATES v. BAGLEY</u> (1985) 473 U.S. 667, 682.  A "reasonable probability," in turn, "is a probability sufficient to undermine confidence in the outcome." Id. "A reasonable probability does not require showing by a preponderance that the outcome would have been different." <u>CARRIGER v. STEWART</u> (9th Cir. 1997) 132 F.ed 463, 479, (en banc) (citing <u>KYLES v. WHITLEY</u> (1995) 514 U.S. 419, 433-35.  In other words "[t]he question is not whether the defendant would have more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>KYLES</u> 514 U.S. at 434.

8. In this case there is no question but that the failure of the prosecutor to disclose the fact that the victim had a sexually transmitted disease, denied petitioner his right to a fair trial and this court should not have confidence in the verdict. Amanda's infection was known by the government in December 1996.

9. Petitioner was tested in June, 1997, and at that time did not have the same disease the alleged victim had in December, 1996.  But because the prosecutor did not disclose this information until months later, petitioner's June 1997 test came too late and he could not be excluded as the alleged perpetrator.

10. Therefore, this court must reverse petitioner's conviction because BRADY error occurred, and petitioner was deprived of his right to a fair trial.

A 119

9

B.

## WHERE THE TRIAL COURT REFUSED TO ADMIT
## A PRIOR STATEMENT OF THE ALLEGED VICTIM
## THAT SHE HAD BEEN MOLESTED BY HER BIOLOGICAL FATHER
## WAS DUE PROCESS VIOLATED BY ITS EXCLUSION?

Simple answer: Yes!

1 Under certain circumstances, the exclusion of a criminal defendant's proffered exculpatory evidence may violate the defendant's Sixth Amendment and due process rights.  See <u>WASHINGTON v. TEXAS</u> (1967) 388 U.S. 14, 19.  The Sixth Amendment requires "at a minimum, that criminal defendants have...the right to put before a jury evidence that might influence the determination of guilt," <u>PENNSYLVANIA v. RITCHIE</u> (1987) 480 U.S. 39, 56.  <u>CHAMBERS v. MISSISSIPPI</u> (1973) 410 U.S. 284, 302, (holding that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations").

2 Here, petitioner's fundamental right to present a defense was violated when the court refused to admit the prior statement of the alleged victim that her biological father had molested here.

3 Because petitioner was denied his fundamental right to present a defense, the error had a substantial and injurious effect on the verdict, <u>BRECHT v. ABRAHAMSON</u> (1993) 507 U.S. 619, and this court must reverse the conviction.

4 The right to present a defense has long been recognized as a fundamental element of due process.  Its denial should require a

*A /20*

4 Here due process was violated because the trial court failed to instruct on the lesser charge of section 288a(c)(1).

5 And the error had a substantial and injurious effect because the jury acquitted petitioner of count one, continuing sexual abuse, section 269, predicated upon a forcible oral copulation.

6 "The trial court has a sua sponte duty to instruct on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present and there is evidence that would justify a conviction of such a lesser offense," PEOPLE v. HARDY (1992) 2 Cal. 4th 86, 184.

7 "An offense is necessarily included in another if...the greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater," PEOPLE v. CLARK (1990) 50 Cal.3d. 583, 636. In other words, when the greater crime "cannot be committed without also committing another offense, the latter is necessarily included within the former," PEOPLE v. LAGUNAS (1994) 8 Cal.4th 1030, 1034.

8 "It is well settled that the trial court is obligated to instruct on necessarily included offenses--even without a re-quest- when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser of-fense," PEOPLE v. RUSSELL (1996) 45 Cal.App.4th 1083, 1088.

9 "In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury. [Citations.] Moreover, as we

A.121

have noted, the sua sponte duty to instruct on lesser included offenses, unlike the duty to instruct on mere defenses, arises even against the defendant's wishes, and regardless of the trial theories or tactics the defendant has actually pursued," PEOPLE v. BREVERMAN (1998) 19 Cal.4th 142.

10 Here, the trial court had a duty to instruct on the lesser included offense of oral copulation based without force.

11 The failure to so instruct, violated petitioner's right to a fair trial, and this court must reverse.

D.

### DUE PROCESS WAS VIOLATED BECAUSE THE TRIAL
### COURT ANSWERED QUESTIONS FROM THE JURY
### WITHOUT DEFENSE COUNSEL OR PETITIONER PRESENT.

1. Petitioner contends that his right to federal due process was violated because the trial court, after deliberations began, answered questions from the jury without advising defense counsel, and without defense counsel or petitioner present.

2. A defendant charged with a felony has the fundamental right to be present at every state of the trial, ILLINOIS v. ALLEN (1970) 397 U.S. 337, 338.

3 This right is derived from the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the 14th Amendment, UNITED STATES v. GAGNON (19850 470 U.S. 522, 526.

4 The clerk's transcript shows that several written questions were asked of the trial court by the jury. Four of these questions pertained to elements of the various charges.

5. The clerk's transcript also establishes that defense counsel was not advised of the questions, nor were trial counsel or

14

A 122

petitioner present when the court answered the questions.

6 Because this was a critical stage of the proceedings, federal due process was violated, and this court must automatically reverse the conviction.

7 A FORTIORI, the trial court violated the express terms of Penal Code section 1138, which provides:

> "After the jury have retired for deliberation,....if they desire to be informed on any point of law arising in the case,....the information required must be given in the present of, or after notice to, the prosecuting attorney, and the defendant or his counsel...."

8 Therefore, this court must reverse the conviction because the trial court denied petitioner of his right to be present at every critical stage of the trial.

E.

## ALVAREZ'S CONVICTION IS UNCONSTITUTIONAL BECAUSE HE DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT.

1 Petitioner is wrongfully convicted because he did not receive effective legal representation as guaranteed by the Sixth Amendment of the United States Constitution. Trial counsel's ineffectiveness "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," STRICKLAND v. WASHINGTON (1984) 466 U.S. 668.

2 A defendant is entitled to effective assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, STRICKLAND v. WASHINGTON, supra, PEOPLE v. POPE (1979) 23 C.3d 412, 422.

*A 123*

15

3  This  right entitles the defendant not to some bare assist-
ance but  rather  to effective assistance. "That  a  person  who
happens to be a lawyer is present at trial alongside the accused,
however, is not enough to satisfy the constitutional command.
The Sixth Amendment recognizes the right to the assistance of
counsel because it envisions counsel's playing a role that is
critical to the ability of the adversary system to produce just
results," STRICKLAND v. WASHINGTON, supra, at page 686.

4  He is entitled to the reasonably competent assistance of  an
attorney  acting as his loyal, diligent, and conscientious  advo-
cate, CUYLER v. SULLIVAN (1980) 446 U.S. 335.

5  The  ultimate purpose of this guarantee is to  protect  the
defendant's fundamental right to a trial that is both fair in its
conduct and reliable in its result, PEOPLE v. LEDESMA (1987) 43
C.3d 171, 215.

6  In order to demonstrate ineffective assistance of counsel, a
defendant must: (1) first show counsel's performance was "defi-
cient" because his "representation fell below an objective stan-
dard of reasonableness...under prevailing professional norms,"
STRICKLAND v. WASHINGTON, supra, at pages 687-688, (Performance
Component) and (2) secondly show "that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different, (Prejudice
Component).

7  "STRICKLAND held that to prove prejudice the defendant must
establish a "reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have

16

A 124

been different, id., at 694; it specifically rejected the proposition that the defendant had to prove it more likely than not that the outcome would have been altered, id., at 693. <u>WOODFORD v. VISCIOTTI</u> (2002) 537 U.S. 19.

¶ Petitioner was denied effective assistance of trial counsel because he failed to request that the court instruct the jury on the lesser included offense of non-forcible oral copulation, as a lesser included offense to a violation of section 269.

IV

**CONCLUSION**

THEREFORE, petitioner respectfully requests that the court grant this petition and reverse petitioner's conviction.


Dated: October   ,2005


                                              _____
                                              FRANK G. PRANTIL
                                              Attorney for petitioner

A 125

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


October 11, 2005


ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

I have finished another draft of the petition.

Unfortunately, when I got to my office today, the complete petition had not been copied on my A drive so that I could not send you the copy.

I will be at a hearing and out of town until Friday, and at that time I will send you the draft, presuming that it is still on my computer at home.  Otherwise, I will need to do the draft all over again.


Sincerely yours,

FRANK G. PRANTIL


A 126

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


October 14, 2005


ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

    Please find your copy of my third draft of the petition.

    I believe we have a better than average shot at success, especially if we attach documentations to support our claims. For example, I believe it is imperative to attach a copy of a transcription of the unedited tape of Anthony's interview. I have not received a copy of the transcription of the unedited tape from Addison. Please have him send me a copy. If one has not been transcribed, we need that done.

    I also agree that visual aids should be used. It is not my function to produce such visual aids. I suggest you write to Addison and ask him to provide the photo of the blanket showing the large apple chunk.

    I have reviewed Addision report dated 5/13/04, and find it of no use. Tania simply stated that "she cannot talk about that." I don't see how this helps at all.

    What I would like from you is for you to work with the draft I have just completed. Get back to me with additions, improvements or any criticism. I would like to get this task accomplished soon.

    And for your information, when we get to federal court, I will supply, if needed, a declaration showing the work I have done since July, including correspondence between us, and the number of drafts that I have prepared, in order to show due diligence.

    Please find a copy of a letter I received from the Warden concerning protection from other inmates.

*A 127*

And finally, I have misplaced my copy of the Opinion affirming your conviction on direct appeal.  Could you please send me a copy of the opinion.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 128

STATE OF CALIFORNIA — DEPARTMENT OF CORR. .IONS AND REHABILITATION        ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT OPERATIONS**
**SAN QUENTIN STATE PRISON**
San Quentin, CA 94964



September 28, 2005

Frank G. Prantil, Attorney at Law
916 Second Street, Second Floor
Old Sacramento
Sacramento CA 95814

Dear Mr. Prantil:

RE: INMATE ANGEL ALVAREZ P-81998

I am in receipt of your letter dated August 30, 2005, regarding inmate Angel Alvarez P-81998. In your letter you state Mr. Alvarez identified five inmates whom he considers enemies and he feels his safety would be in jeopardy if he were housed in the same institution.

All five of these inmates have been placed on Mr. Alvarez's "enemy identification list". This list of the current housing of the enemies is updated annually or when an inmate is put up for transfer. Additionally, Counselor M. Garcia conducted an interview of Mr. Alvarez to document why he considers these inmates to be his enemy. A copy of this documentation will be forwarded to the Central Files of the appropriate inmates. Mr. Alvarez will be added to the enemy list of these inmates to ensure they are not transferred to an institution where he is housed.

Thank you for bringing the names of these enemies to our attention. We have also advised Mr. Alvarez that if he has any other safety concerns, he should contact custody or counseling staff immediately. The safety of all inmates is a major concern in the Department and staff have been trained to respond immediately to information regarding safety concerns.

If you have additional concerns, please do not hesitate to contact Facility Captain K. J. Williams at (415) 454-1460, extension 5400.

S. W. ORNOSKI
Warden (A)

c: K. J. Williams

A 129

FRANK G. PRANTIL
Attorney at Law
State Bar License #035155
916 Second Street
2nd Floor
Sacramento, CA 95814

Attorney for Petitioner

(916) 446-4669


SUPREME COURT

STATE OF CALIFORNIA


In the Matter of                    )
                                    )    No.
ANGEL JESUS ALVAREZ,                )
                                    )    PETITION FOR
                                    )    WRIT OF HABEAS CORPUS
                                    )    & MEMORANDUM OF POINTS
On Habeas Corpus,                   )    & AUTHORITIES
                                    )
_____)


Petitioner alleges:

I

Petitioner is unlawfully restrained of his liberty by the
California Department of Corrections, at San Quentin, California.
The Superior Court, County of Santa Clara, sentenced petitioner
to 17 years to life on May 26, 2000, case no. 198084.

II

Petitioner alleges that he is illegally restrained because
he was denied effective assistance of counsel at trial, and on
appeal, in violation of the Sixth Amendment of the United States
Constitution, as will be more fully demonstrated in the memoran-
dum of points and authorities filed herewith.

A 130

1

Petitioner alleges that his conviction violates due process of law because the evidence is insufficient to support the conviction.  Because the issue was addressed on direct appeal, however, it will not be raised here.

The conviction also violates petitioner's federal due process right to present a defense.  In particular the trial court refused to admit evidence of third party liability, i.e. that the victim made a statement, prior to trial, that her biological father had molested her.  The issue was addressed on direct appeal, and is not raised here.

And on direct appeal, which consolidated a habeas petition filed before the court of appeal, petitioner contended that he was denied effective assistance of trial counsel because trial counsel failed to: (1) investigate and present evidence that prosecution witness Ruby Rubio, the mother of the complaining witness, had engaged in welfare fraud, (2) present evidence that petitioner threatened to report Ruby Rubio for her other illegal conduct, i.e. that she harbored her boyfried Onorato Deltoro, and (3) failed to present a timely Evidence Code section 782 motion to admit the statement of the victim that her biological father had molested her. These issues were addressed on appeal and denied.  They are not raised in this petition.

The conviction violates federal due process because the prosecutor failed to disclose exonerating evidence to the defense, constituting BRADY error, as will be discussed in the memorandum of points and authorities herein.

And finally, petitioner alleges that his rights to due

A 131

2

process of law were violated because the trial violated petitioner's right to be present at all stages of the proceedings when after deliberations began, the court answered jury questions without counsel or the defendant being present, as will be further discussed in argument below.

III

Petitioner has no other plain, speedy, or adequate remedy at law.

IV

Petitioner has made no prior application for habeas relief in this court.

V

Concerning the timeliness of this petition, petitioner alleges that he has not deliberately delayed filing this petition. He has been diligently pursuing his remedy but because of circumstances beyond his control the filing was delayed. In part the delay has been the result of completing the investigation and production of evidence that proves his innocence. He was required to depend upon others to complete the investigation, which was just completed.  See the attached declaration of Kenneth Addison, marked Exhibit A, a licensed investigator who was hired by petitioner to conduct the investigation.  Also attached please find the declaration of Frank H. Saunders, dated July 11, 2005, who is an expert in police "chain-of-evidence" evaluation.

Another reason for the delay was because an attorney, Gary Diamond, was retained to prepare and file a petition with the court of appeal. Diamond took petitioner's money, did nothing, and misled petitioner to believe that the petition would be

A 132

forthcoming.  (Attorney Diamond is no longer a member of the Califoria Bar because he resigned, pending disciplinary charges pertaining to his failure to adequately represent clients in habeas litigation.) After waiting a reasonable amount of time for Diamond to perform as promised, petitioner instead filed a petition with the court of appeal. See attached exhibit B.

Furthermore, petitioner is actually innocent of the charges and a fundamental miscarriage of justice will occur unless this court considers the merits of the claims made here because: (1) the errors here are of such constitutional magnitude that the trial was fundamentally unfair, (2) that absent the errors no reasonable jury would have convicted petitioner, and (3) that petitioner is actually innocent of the crimes of which he was convicted, IN RE CLARK 5 Cal.4th 1750, 797-798.

WHEREFORE, petitioner prays judgment as follows:

1. That a writ of habeas corpus be granted, directed to  the California Department of Corrections, commanding it to have the ANGEL JESUS ALVAREZ, together with the authority for his confinement, before this Court at a specified time;

2. That this court set an evidentiary hearing to prove the allegations contained in this petition.

3. For such other and further relief as the court may deem proper.


Dated: October        , 2005

_____
FRANK G. PRANTIL
Attorney for petitioner


A 133

4

## VERIFICATION

I, ANGEL JESUS ALVAREZ, am the petitioner in the above entitled proceeding.  I have read the foregoing petition and know the contents thereof.  I declare under penalty of perjury that the contents of the petition are true and correct.

Executed on October    , 2005, at San Quentin, California.


_____
ANGEL JESUS ALVAREZ
Petitioner

*A 134*

5

## MEMORANDUM OF POINTS & AUTHORITIES

## IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I

## INTRODUCTION

Angel Alvarez stands convicted of sexually assaulting a 6-year old child, Amanda, whom Alvarez frequently cared for at the request of her mother Ruby Rubio.

He is innocent of the charges.

He was denied his rights under the state and federal constitutions to present a complete defense, because the prosecution committed BRADY error by withholding critical evidence that would have exonerated him.  The prosecution withheld:

(1) Evidence that Amanda was infected by a sexually transmitted disease, Chlamydia:

The prosecution withheld this evidence until shortly before trial, although the Chlamydia results were known to the prosecution six months earlier.  Upon receiving the report Alvarez immediately was tested and found to have no sexually transmitted disease.

Thus, he was not the person who had molested Amanda.

Although he tried to present this exonerating evidence at trial, the trial judge excluded the results, ruling that the tests on Alvarez were conducted too late and therefore not probative.

(2) The unedited taped interview of Amanda's brother Anthony which corroborated Alavarez's defense that no molest had occurred:

At trial the prosecution presented an edited tape interview

6

*A 135*

with Amanda's brother Anthony, who was present with Amanda and Alvarez at the time of the alleged molest.  The edited tape presented by the prosecution excluded a statement by Anthony that Amanda vomited on a blanket after drinking milk and eating an apple, and not the result of an oral copulation as Amanda claimed. (Anthony also told the police that he never saw petitioner sexually abuse Amanda.)

By presenting the edited version the prosecution misled the jury, and denied Alvarez's right to present a complete defense.

(3) Evidence that the prosecution had conducted a test on the blanket:

At trial the police testified that the blanket had not been tested for semen because it was mislabeled or misplaced.  In fact the blanket had been tested and taken to the lab.  The results of the this test are not known.  See declaration of FRANK SAUNDERS, an expert in police.........

(4) Impeaching evidence that Amanda's mother, (the chief complaining witness for the prosecution), had been convicted of wlfare fraud:

In January 2002, petitioner's court-appointed-appellate-counsel discovered that Amanda's mother, Ruby Rubio had been convicted of welfare fraud a month after the verdict but prior to petitioner's sentencing and motion for new trial.

Ruby's testimony was critical to the prosecution.  Her credibility was therefore critical.

The prosecution failed to disclose to the defense that Ruby was under investigation for welfare fraud, and that she had been convicted of welfare fraud sometime after the verdict in this

7

*A 136*

case but before sentencing.

By withholding evidence that would have impeached her cred-
ibility, Alvarez was prevented from presenting a full defense to
the charge.

And this misconduct by the prosecution was so serious that
there is a reasonable probability that the suppressed evidence
would have produced a different verdict," STRICKLER v. GREEN
(1999) 527 U.S. 263, 281.

II

### STATEMENT OF THE CASE

On August 4, 1997, an information was filed accusing peti-
tioner of: (1) count one, violating Penal Code section 288.5,
continuing sexual abuse; (2) count two, aggravated sexual assault
premised upon a violation of Penal Code section 288a, subd. (a),
forceful oral copulation, (3) count three, lewd and lascivious
conduct by means of force, in violation of section 288, (b)(1),
(4) count four, child abuse, section 273a(a), (5) count five,
child beating, section 273d(a), (6) count six child beating,
section 273d(a), and (7) count seven, child abuse, section
273a(a).

After a trial by jury, petitioner was acquitted of counts
one and three, and convicted him as charged in counts two, five
and six.  The jury also convicted petitioner of misdemeanor child
abuse as lessers offenses to counts four and seven.
of all remaining counts.

On May 26, 2000, petitioner was sentenced to state prison
for a term of 17 years to life.

Petitioner filed a timely notice of appeal.

*A 137*

On October 25, 2002, the court of appeal affirmed petitioner's conviction.

On January 15, 2003, the state supreme court denied petitioner's petition for review.

On December 17, 2003, petitioner filed a petition with the superior court alleging that his conviction violated federal due process, claiming Brady error, failure of the trial court to admit evidence of third party culpability, failure of the court to instruct on the lesser charge of non-forcible oral copulation, (a lesser included offense), and that the trial court violated petitioner's right to be present at a critical stage of the proceedings when the court, during jury deliberations, answered questions posed by the jury without petitioner or defense counsel's presence, and without a stipulation from petition that the court could answer questions without the presence of counsel or petitioner.

On January 14, 2004, the superior court denied the petition.

On March 11, 2005 petitioner filed a habeas petition with the court of appeal, which was denied by the court without comment on March 23, 2005.

II

## STATEMENT OF THE FACTS

For purposes of this petition, petitioner respectfully adopts the statement of facts contained in the unpublished opinion of the Court of Appeal, Sixth Appellate District, case# H021626, except for any factual issue that is discussed in argument below.

A 138

9

III

**ARGUMENT**

A.

**WHERE THE PROSECUTION FAILS TO DISCLOSE THAT**

**THE ALLEGED VICTIM WAS INFECTED WITH CHLAMYDIA**

**UNTIL IT WAS TOO LATE TO EXCLUDE PETITIONER**

**AS THE ALLEGED PERPETRATOR**

**HAS BRADY ERROR OCCURRED?**

1.    # 24, p. 60

In <u>BRADY v. MARYLAND</u> (1963) 373 U.S. 83, the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused" violates due process where "the evidence is material...irrespective of the good faith or bad faith of the prosecution."

2.    Since then, the rule has been modifed to impose an even stricter duty upon prosecutors by requiring them to disclose substantial material evidence even when there has been no request by the defense. (<u>UNITED STATES v. BAGLEY</u> (1985) 473 U.S. 667.)  # 89, p. 44

3.    The prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused, and even an inadvertent failure to disclose may constitute a violation. See <u>UNITED STATES v. AGURS</u> (1976) 427 U.S. 97, 107, 110. .pa

4.    As the Supreme Court has observed, BRADY and its progeny "illustrate the special role played by the American prosecutor in the search for truth in criminal trials." <u>STRICKLER v. GREENE</u> (1999) 527 U.S. 263, 281.

5.    In STRICKLER, the Supreme Court also stated that "there is never a real BRADY violation unless the nondisclosure was so serious that there is a reasonable probability that the sup-

A 139

pressed evidence would have produced a different verdict,"
STRICKLER, 527 U.S. at 281.

6    A BRADY violation therefore occurs where the State sup-
pressed the evidence, either willfully or inadvertently; the
evidence at issue was favorable to the accused, because it is
exculpatory; and the evidence was material to the outcome such
that the defendant was prejudiced by the suppression. Id. at 281-
82.

7.    Evidence is deemed material to the outcome "if there is a
reasonable probability that, had the evidence been disclosed to
the defense, the result of the proceeding would have been differ-
ent. UNITED STATES v. BAGLEY (1985) 473 U.S. 667, 682.  A "rea-
sonable probability," in turn, "is a probability sufficient to
undermine confidence in the outcome." Id. "A reasonable probabil-
ity does not require showing by a preponderance that the outcome
would have been different." CARRIGER v. STEWART (9th Cir. 1997)
132 F.ed 463, 479, (en banc) (citing KYLES v. WHITLEY (1995) 514
U.S. 419, 433-35.  In other words "[t]he question is not whether
the defendant would have more likely than not have received a
different verdict with the evidence, but whether in its absence
he received a fair trial, understood as a trial resulting in a
verdict worthy of confidence." KYLES 514 U.S. at 434.

8    In this case there is no question but that the failure of
the prosecutor to disclose the fact that the victim had a sexual-
ly transmitted disease, denied petitioner his right to a fair
trial and this court should not have confidence in the verdict.

9    Petitioner was tested in June, 1997, and at that time did
not have the same disease the alleged victim had in December,

11

A 140

1996. But because the prosecutor did not disclose this informa-
tion until months later, petitioner's June 1997 test came too
late and he could not be excluded as the alleged perpetrator.

₁₀    Therefore, this court must reverse petitioner's conviction
because BRADY error occurred, and petitioner was deprived of his
right to a fair trial.

B.

**WHERE THE TRIAL COURT REFUSED TO ADMIT**

**A PRIOR STATEMENT OF THE ALLEGED VICTIM**

**THAT SHE HAD BEEN MOLESTED BY HER BIOLOGICAL FATHER**

**WAS DUE PROCESS VIOLATED BY ITS EXCLUSION?**

Simple answer: Yes!

ι    Under certain circumstances, the exclusion of a criminal
defendant's proffered exculpatory evidence may violate the defen-
dant's Sixth Amendment and due process rights.  See WASHINGTON v.
TEXAS (1967) 388 U.S. 14, 19.   The Sixth Amendment requires "at
a minimum, that criminal defendants have...the right to put
before a jury evidence that might influence the determination of
guilt," PENNSYLVANIA v. RITCHIE (1987) 480 U.S. 39, 56.   CHAMBERS
v. MISSISSIPPI (1973) 410 U.S. 284, 302, (holding that "[t]he
right of an accused in a criminal trial to due process is, in
essence, the right to a fair opportunity to defend against the
State's accusations").

ν    Here, petitioner's fundamental right to present a defense
was violated when the court refused to admit the prior statement
of the alleged victim that her biological father had molested
here.

ᕁ    Because petitioner was denied his fundamental right to

12

*A 141*

present a defense, the error had a substantial and injurious effect on the verdict, <u>BRECHT v. ABRAHAMSON</u> (1993) 507 U.S. 619, and this court must reverse the conviction.

The right to present a defense has long been recognized as a fundamental element of due process. Its denial should require a per se reversal. In <u>WASHINGTON v. TEXAS</u> (1967) 388 U.S. 14, at page 19, the Supreme Court stated:

> "The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. **This right is a fundamental element of due process of law**," (emphasis added).

Therefore, petitioner contends that this court should reverse the conviction because the exclusion of third party culpability evidence violated his fundamental right to present a defense to the charges.

C.

## FEDERAL DUE PROCESS WAS VIOLATED BY

## THE FAILURE OF TRIAL TO INSTRUCT ON THE

## LESSER INCLUDED OFFENSE OF

## NON FORCIBLE ORAL COPULATION.

Petitioner contends that Due Process was violated because the evidence presented to the jury required the court to instruct, sua sponte, on the lesser included offense of non forcible oral copulation.

Petitioner was charged in count two with aggravated sexual abuse in violation of section 269. Under this section if the

13

A 142

alleged act is an oral copulation of a child under the age of 14 years, which is a violation of 288a(c)(1), the oral copulation must be forceful.

3. Non-forcible oral copulation is a lesser included offense to a violation of section 269.

4. Here due process was violated because the trial court failed to instruct on the lesser charge of section 288a(c)(1).

5. And the error had a substantial and injurious effect because the jury acquitted petitioner of count one, continuing sexual abuse, section 288.5, predicated upon a forcible oral copulation.

6. "The trial court has a sua sponte duty to instruct on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present and there is evidence that would justify a conviction of such a lesser offense," PEOPLE v. HARDY (1992) 2 Cal. 4th 86, 184.

7. "An offense is necessarily included in another if...the greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater," PEOPLE v. CLARK (1990) 50 Cal.3d. 583, 636.  In other words, when the greater crime "cannot be committed without also committing another offense, the latter is necessarily included within the former," PEOPLE v. LAGUNAS (1994) 8 Cal.4th 1030, 1034.

8. "It is well settled that the trial court is obligated to instruct on necessarily included offenses--even without a re-quest- when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser of-

14

*A 143*

fense," <u>PEOPLE v. RUSSELL</u> (1996) 45 Cal.App.4th 1083, 1088.

9  "In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury. [Citations.]  Moreover, as we have noted, the sua sponte duty to instruct on lesser included offenses, unlike the duty to instruct on mere defenses, arises even against the defendant's wishes, and regardless of the trial theories or tactics the defendant has actually pursued," <u>PEOPLE v. BREVERMAN</u> (1998) 19 Cal.4th 142.

10  Here, the trial court had a duty to instruct on the lesser included offense of oral copulation based without force.

11  The failure to so instruct, violated petitioner's right to a fair trial, and this court must reverse.

D.

<u>DUE PROCESS WAS VIOLATED BECAUSE THE TRIAL</u>

<u>COURT ANSWERED QUESTIONS FROM THE JURY</u>

<u>WITHOUT DEFENSE COUNSEL OR PETITIONER PRESENT</u>.

1  Petitioner contends that his right to federal due process was violated because the trial court, after deliberations began, answered questions from the jury without advising defense counsel, and without defense counsel or petitioner present.

2  A defendant charged with a felony has the fundamental right to be present at every state of the trial, <u>ILLINOIS v. ALLEN</u> (1970) 397 U.S. 337, 338.

3  This right is derived from the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the 14th Amendment, <u>UNITED STATES v. GAGNON</u> (19850 470 U.S. 522, 526.

4  The clerk's transcript shows that several written questions

15

A 144

were asked of the trial court by the jury. Four of these ques-
tions pertained to elements of the various charges.

5   The clerk's transcript also establishes that defense counsel
was not advised of the questions, nor were trial counsel or
petitioner present when the court answered the questions.

6   Because this was a critical stage of the proceedings,
federal due process was violated, and this court must automati-
cally reverse the conviction.

7   A FORTIORI, the trial court violated the express terms of
Penal Code section 1138, which provides:

>"After the jury have retired for deliberation,....if
>they desire to be informed on any point of law arising in
>the case,....the information required must be given in the
>present of, or after notice to, the prosecuting attorney,
>and the defendant or his counsel...."

8   Therefore, this court must reverse the conviction because
the trial court denied petitioner of his right to be present at
every critical stage of the trial.

E.

**ALVAREZ'S CONVICTION IS UNCONSTITUTIONAL BECAUSE HE**

**DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL**

**AS GUARANTEED BY THE SIXTH AMENDMENT.**

1   Petitioner is wrongfully convicted because he did not re-
ceive effective legal representation as guaranteed by the Sixth
Amendment of the United States Constitution. Trial counsel's
ineffectiveness "so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having
produced a just result," STRICKLAND v. WASHINGTON (1984) 466 U.S.
668.

2   A defendant is entitled to effective assistance of counsel

16

A 145

under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, STRICKLAND v. WASHINGTON, supra, PEOPLE v. POPE (1979) 23 C.3d 412, 422.

3   This right entitles the defendant not to some bare assistance but rather to effective assistance. "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversary system to produce just results," STRICKLAND v. WASHINGTON, supra, at page 686.

4   He is entitled to the reasonably competent assistance of an attorney acting as his loyal, diligent, and conscientious advocate, CUYLER v. SULLIVAN (1980) 446 U.S. 335.

5   The ultimate purpose of this guarantee is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result, PEOPLE v. LEDESMA (1987) 43 C.3d 171, 215.

6   In order to demonstrate ineffective assistance of counsel, a defendant must: (1) first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness...under prevailing professional norms," STRICKLAND v. WASHINGTON, supra, at pages 687-688, (Performance Component) and (2) secondly show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, (Prejudice Component).

*A 146*

17

7 "STRICKLAND held that to prove prejudice the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, id., at 694; it specifically rejected the proposition that the defendant had to prove it more likely than not that the outcome would have been altered, id., at 693. WOODFORD v. VISCIOTTI (2002) 537 U.S. 19.

8 Petitioner was denied effective assistance of trial counsel because he failed to request that the court instruct the jury on the lesser included offense of non-forcible oral copulation, as a lesser included offense to a violation of section 269.

(1) investigate and present evidence that prosecution witness Ruby Rubio, the mother of the complaining witness, had engaged in welfare fraud, (2) present evidence that petitioner threatened to report Ruby Rubio for her other illegal conduct, i.e. that she harbored her boyfried Onorato Deltoro, and (3) failed to present a timely Evidence Code section 782 motion to admit the statement of the victim that her biological father had molested her. These issues were addressed on appeal and denied, (4) review the unedited taped interview of Anthony which corroborated Alvarez's defense that Amanda had vomited milk and bites of an apple on a blanket because she had injested rancid milk.

A 147

18

IV

## CONCLUSION

THEREFORE, petitioner respectfully requests that the court grant this petition and reverse petitioner's conviction.


Dated: October   ,2005

_____
FRANK G. PRANTIL
Attorney for petitioner

A 148

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

November 7, 2005

ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

Thank you for your letter, dated 10/19/05, which I received on the 31st.

A.    The misconduct was the failure of the DA to disclose. The evidence was preserved, so there is no Trombetta issue. It was the failure to disclose that presented the problem. Therefore, there is no need to cite Trombetta.

B.    When I receive the unedited transcript I will be able to complete the argument on that issue.

C.    When we file with the state supreme court I will need 11 copies of the laser-color prints for the state court, a copy for the AG, you and myself.

Please explain to me what these three photographs show other than a stain. What is the relevance of these photographs?

D.    IAC: for the last time I don't think the sentencing issue will go anywhere. Section 269 provides only one sentence: 15years to life. And that is what you received. The sentencing court had no other option but to sentence you as it did. There-fore, any failure of trial counsel to present a defense or miti-gation at sentencing would be of no effect. You also received a two year sentence for count five, which is the minimum sentence possible.

Therefore, the sentencing issue is of no use.

And consequently I don't see any relevance to what Guilarte did or did not pertaining to sentencing. As to new evidence to be presented at a motion for new trial, habeas can accomplish the same thing. The motion for new trial may have been flawed, but the failure to properly investigate can still be raised in the habeas petition to be filed. In order to demonstrate ineffective assistance of counsel, a defendant must (1) first show counsel's performance was "deficient" because his "representation fell

A 149

below an objective standard of reasonableness...under prevailing professional norms," STRICKLAND v. WASHINGTON, supra, at pages 687-688, and (2) secondly show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome," STRICKLAND v. WASHINGTON, supra, at page 694.

Therefore, if you contend IAC we need to do the work that should have been done, and present the evidence that should have been presented, and then convince a judge that had that evidence been presented to the jury, a different result was probable.  Or stated differently, if Guilarte was to investigate and failed to do so, Addison needs to do that investigation and present the evidence by declaration of what you believe Guilarte was to have presented.

F./    I have reviewed the declarations obtained by Addison.

The only relevant matter in Mayra-Alicia Quintanilla's declaration is that she (correct me if I am wrong about the gender) bathed the children, saw no signs of abuse and that the children were happy and playful.  The same is true of Ramon Quintanilla's declaration, he saw no signs of abuse.

The only relevant portion of Amelia Guerrero's declaration is that she heard Amanda state that you protected her from her dad.  That may show that the father was abusing her, and was relevant to show third party liability.

Ejaz Anam's declaration provides little support because it does not state the date or when he met you with the children in the motel.  As to the alleged juror misconduct, we don't have anything specific in his declaration.  I think it will waste more time if we try to develop this issue which will be very difficult to develop.  So, I have no intention of using his declaration.

Leslie Hernandez's declaration provides no date of when she cleaned Amanda or when she made her observations of no abuse.

Michigan v. Lucas has nothing to do with the refusal of the trial court to allow evidence of third party liability, so it will not be included in the petition.

G.)    I will need to do some research to hopefully develop two additional issues: (1) refusal of the court to recall Amanda to answer whether she had been molested by her father, and (2) the equal protection argument re PC 269 and 288a.

Sincererly yours,

FRANK PRANTIL

A 150

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


December 29, 2005


ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

    Please find a copy of my fourth draft of the petition to be filed with the state supreme court.

    The declarations are listed in the petition.  I believe I have included all of them.

    If you are satisfied with the petition as it presently stands, please sign the enclosed verification, return it to me, so that the petition may be filed.


Sincerely yours,


FRANK PRANTIL

cc: Claudia Maldonado


A 151

**FRANK G. PRANTIL**
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

January 17, 2006

ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

Please find your copy of the petition filed with the state supreme court.

I expect that the court will take 6-89 months to deny the petition and then we will be able to file in federal court.

I will advise you when I hear anything from the court.

Please have Claudia reimburse me $95.83, for the cost of printing the briefs, as shown by the enclosed billing.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 152

# FRANK G. PRANTIL
Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

April 20, 2006

ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

Thank you for your letter!

I will need to look at the case you have raised in your letter before determing whether it helps.

Please provide the citation. I am unaware of any case by the state supreme court striking down sex offender cases. And I receive the daily reports.

So, get back to me and let me evaluate the situation.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 153

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669


June 13, 2006


ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

Dear Angel:

This is a follow-up to my last letter.

I am unaware of any state supreme court case that has struck down the sex laws as you claim. I receive the daily reports from the supreme court, and find no such case. I need a citation.

If you are correct, we can file a supplement to the petition. But I need to look at the case.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Moldanado


A 154

Tuesday, June 20, 2006                          <u>CONFIDENTIAL</u> <u>LEGAL</u> <u>MAIL</u>

From: Angel Alvarez

To: Frank Prantil, Attorney At Law:

In **March 2006**, I wrote to you about the State Supreme Court overturning a statute dealing with O.Cop. (SF Chronicle & Sac. Bee, 03/07/2006)

On **04/24/06**, I received a letter dated 04/20/06, postmarked 04/21/06, from you. In that letter you asked for me to provide the citation because you were "unaware of any case" being struck down the the state supremes. I went to the library, obtained the case info and included it in a letter to you.

On **04/27/06**, I mailed you the information. After waiting a reasonable amount of time and getting no response from you, I asked my sister to call your office last week.

Yesterday, on **Monday, June 19, 2006**, I receive another letter from you, dated June 13, 2006, postmarked June 15th, asking for citation information again! I checked with corrections officer Broderson of North Block to check the legal mail log. A letter was logged as being mailed out to you on April 27th. Please check with your mail carrier about lost mail because this is the 3rd letter I have sent you in the past 3 years that has been "lost".

I believe the <u>reasoning</u> used in the ruling by the state supreme court applies to my case. The case is found in the "Daily Appellate Report" dated 03/07/06. The California Supreme Court filed it on 03/06/06, No. S-124636. People v. Vincent Peter Hofoheier, 2006 DJDAR 2668. It was a 6-1 majority ruling on a case from Santa Cruz County:

> "The first prerequisite to a meritorious claim under the Equal Protection Clause is a showing that the state has adopted a classification that affects two or more **similarly** situated groups in an unequal manner...the only difference is the nature of the specific act"

PC 269 calls for certain acts to qualify for a life term, but not other comparatively similar and forcible lewd or lascivious acts. In the above case, intercourse with a teenager didn't require lifetime registration, but Or.Cop does. PC 269 is punishable by life for certain acts committed "forcibly", but not other comparatively similar and forcible acts.

I'll beat you to the punch and tell you that the court stated, in the above case, that their ruling doesn't apply to crimes against minors under 14 because they all require lifetime registration. I am interested in their <u>reasoning</u>. I raised a similar ground in the court of appeal, but you decided against raising it in the state supreme court. (Compare PC 288(b)(1), 288a(c)(2), and 269.) The only difference between PC269 and other statutes is the "nature of the specific act", not just its violent degree.

Please review and reply soon before its too late.

Sincerely,

Angel Alvarez

*A 155*

# FRANK G. PRANTIL

Attorney at Law
916 Second Street, 2nd Floor
Old Sacramento
Sacramento, CA 95814
(916) 446-4669

July 6, 2006

ANGEL ALVAREZ P81998
SQSP/North Block
General Delivery
San Quentin, CA 94974

*Rec'd 7/10/06 via →*

**PRIORITY MAIL**

Dear Angel:

Yesterday I received a copy of the denial by the state supreme court, please find a copy of the denial dated 6/28/06, without comment. The In re Clark citation may result in the AG filing a motion to dismiss the petition as untimely under the recent Supreme Court case of PACE v. DIGLERMO. (I don't have the citation at my fingertips but will provide it if you need it. And the spelling may be incorrect as to the respondent.)

I believe we should win that issue if it is raised because well within the one year and 89 day period, and because the rule of untimeliness, if that is what the citation to CLARK means, is not clear not well-established, nor consistently applied.

"To support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of petitioner's purported default," ZICHKO v. IDAHO (9th Cir. 2001) 247 F.3d 1015, 1021. See also MELENDEZ v. PLILER (9th Cir. 2002) 288 F.3d 1120.

And I would also argue that the ruling by the court is a post-card denial, and thus a decision on the merits and not a denial as untimely.

A post-card denial, i.e. denials without comment, as a denial on the merits, HUNTER v. AISPURO (9th Cir. 1992) 982 F.2d 344.

I will need $14,500 to litigate at the federal district court level. If you want me to represent you, please get back to me immediately and I will prepare a verification for your signature and send you a new retainer agreement. But we must file immediately. We have about 55 days left on the AEDPA clock, but I don't want to waste any more time.

Upon receipt of the necessary funds and the signed retainer agreement, and verification, I will file immmediately with the

A 156

federal court.

At the present time I am ineligible to practice law before the state courts of California because of a terrible decision by the State Bar Hearing Department. (The decision is only a recommendation, subject to review by the Review Department of the State Bar Court and the California Supreme Court, which only has the power to suspend or disbar. And as you can see from the enclosed opening brief filed with the Review Department, the decision of the hearing department is not supported by any evidence and ignores or misapprehends applicable law.) (And the decision is not binding on the federal courts, see IN RE RUFFALO (1968) 390 U.S. 544, 547.)

The decision was not supported by any evidence, violates due process, and presents a grave injustice to me and my clients. See SELLING v. RADFORD (1917) 243 U.S. 46, where the Supreme Court held that a federal court may impose reciprocal discipline if an independent review reveals:

(1) No deprivation of due process; (2) sufficient proof of misconduct; and (3) no grave injustice would result from imposing discipline.)

I believe the decision of the hearing department fails on all three.

The fallacious decision does not affect my standing with the federal courts:

On April 18, 2006, when the 9th Circuit learned that I was ineligible to practice law in California, it issued an order to show cause why I should not withdraw from three pending appeals. (Please find a copy of the order entered in one of those appeals, ANGEL v. ROE.) I immediately filed a motion for reconsideration, please find a copy. And consequently the 9th Circuit entered an order on May 9, 2006, a copy of which is enclosed, vacating its order of April 18th, and ordering me to comply with Rule 46 of the Federal Rules of Appellate Procedure. Under that rule I am to advise the court if I am suspended or disbarred. The court will then issue an order to show cause, grant me the right to respond, and to a hearing before a panel of judges. I can't see the court accepting the state decision if it is adopted by the state supreme court, because all I did was do the best I could to represent my client after I had been illegally removed as retained counsel in habeas litigation. Even if I made a mistake, which did not occur, my clients still had the right to retain me, and would have done so except for the illegal order by the federal judge.

Therefore, these pleadings show that I am still eligible to practice before the 9th Circuit. (And the same rule applies to the federal district courts of California.)

It will take close to a year for the State Bar to complete

*A 157*

its review, including a review by the California Supreme Court if the review department does not reverse the hearing department. And after that, assuming the worst, it will take months for the 9th Circuit to make it decision under Rule 46.

<u>Although ineligible to practice in the state court, I still assist my clients by filing pro-se petitions in their behalf</u>:

It is of no consequence that I am ineligible to practice in the state court. In 12 years of habeas litigation, including over 150 petitions filed, I have never had a state court grant a petition, nor have I been required to appear for argument.    I simply file petitions which are summarily denied by the state courts. And consequently, I have filed pro-se petitions in behalf of my clients since being placed on inactive status.  The petitions are denied and off to federal court we go.   All of my victories in habeas have occurred at the 9th Circuit level.   So, it is of no consequence, although an inconvenience, that I am not eligible to practice before the state courts.

<u>Assuming the worst, I will not abandon my clients</u>:

There are several attorneys in the Sacramento area who are willing to take over my cases if the worst occurs.   I will do the work under their name if that is necessary.

I don't believe it will be necessary.

Well there you have the complete picture.   If you have any questions please get back to me.

Sincerely yours,

FRANK PRANTIL

cc: Claudia Maldonado

A 158

S140391

# IN THE SUPREME COURT OF CALIFORNIA

En Banc

---

In re ANGEL JESUS ALVAREZ on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED. (See *In re Clark* (1993) 5 Cal.4th 750.)

SUPREME COURT
F I L E D

JUN 2 8 2006

Frederick K. Uhlrich Clerk

DEPUTY

GEORGE

Chief Justice

A 159

From: Angel Alvarez

Date: Tuesday, July 11, 2006

TO: Frank G. Prantil, Attorney at Law

Mr. Prantil:

I am in receipt of your letter dated July 6, 2006. It arrived yesterday, on Monday, July 10, 2006, via Priority Mail. I am very angry at the outcome of my state habeas petition. It was reasonable to expect that the state supreme court would deny the petition, but not to deny it on a procedural bar with In re Clark!

How did this happen Frank? In March 2005, the state appellate court denied my petition without comment – no procedural bar. On many occasions since then, you assured me that we were good on the timing and it took you 10 months to file my petition! Now my petition cannot be reviewed in federal court! This is my life on the line!

I looked up the so-called "recent" case you tried to cite in your letter. Pace v. Diguglielmo (2005) was decided back on April 27, 2005!! That case was decided a month after the appellate court denied my habeas petition! That's not a "recent" case Frank! I do not appreciate being lied to!

Now I am informed that you have been ineligible to practice law in the state courts since March 5, 2006! Why didn't you inform me about this? If you are so innocent and had nothing to hide, you should have notified me of your situation. Instead, you decided to keep me in the dark about your two other clients that are procedurally barred just like me! Now I know why your were so "busy". You were too busy defending your state bar license in hearings on 04/27-28/05, 05/11/05, 06/15/05, 08/09/05, and 10/12/05!

Let me tell you something sir, you either submit a detailed accounting of EVERYTHING you've done for my case since March 2005 or I WILL, to the best of my ability, and with all the money I can muster, file a detailed complaint against you and get every cent I paid you back. If I don't get a full accounting, with a declaration under penalty of perjury, from you within two weeks, consider yourself fired and on notice of a pending formal complaint with the state bar. I have no intention of giving you another dime, so the accounting and your declaration will be at your expense.

Sincerely,


Angel Alvarez

cc: Kenneth Addison
    Alvarez Family, c/o C. Maldonado

A 160

**PETITIONER'S RESPONSE TO MOTION TO DISMISS**

# EXHIBIT  B

## Declaration of Kenneth F. Addison

I, Kenneth Addison, declare:

1. That I am licensed by the State of California as a Private Investigator, State License number PI-8878.

2. Furthermore, I own and operate an investigative agency specializing in criminal defense investigations and investigations in support of Habeas Petitions for the California Bar. I have been so employed for approximately 28 years.

3. On October 8, 2003, I was retained by Mr. Angel Alvarez for the purpose of conducting an investigation in support of a Habeas Petition.

4. That same week, I conferred with Attorney Frank Prantil and obtained permission from CDC officials to visit with Mr. Alvarez.

5. On October 29, 2003, I met with Mr. Alvarez at the State prison facility. At that time I was informed of the investigative tasks which consisted of locating and interviewing witnesses that in his opinion, should have been located, interviewed and presented as defense witnesses at his jury trial.

6. On February 13, 2004, I met with Mr. Alvarez and at that time he identified the names and last known addresses of the witnesses that were to be interviewed. In addition, he asked me to locate and

1

interview his previous private investigator, Mr. Eduardo Guilarte for the purpose of showing that Mr. Guilarte actually conducted little or no investigation on Mr. Alvarez's behalf and that Mr. Guilarte, instead of conducting the investigation himself, as agreed upon, instead sub-contracted the very delicate task of locating and interviewing witness Tanya Rabago.

7.  Initially, Mr. Guilarte refused to cooperate in the investigation, even given that Mr. Alvarez had drafted a release permitting Mr. Guilarte to release any and all investigative work product.

8.  During March through December of 2004, I was able to locate and interview several of the witnesses initially outlined in Mr. Alvarez's request. At the completion of the interviews, the statements were reduced to declarations, signed under penalty of perjury and were tendered immediately to the attorneys, more specifically, Attorney Frank Prantil.

9.  During that time, my instructions regarding the investigation were primarily issued by Mr. Alvarez and very little, if any instructions arrived directly from Attorney Prantil.

10.  In approximately January of 2004, I became aware by Mr. Alvarez that he had retained additional counsel identified as Gary Diamond whose office was located in Rocklin, CA.

2

11. During my entire association with Mr. Diamond, I cannot recall a single conversation that I had with him. I attempted on numerous occasions to contact his office to ask for directions or input. On each such occasion, I was either greeted by his receptionist, Sherry (Last name unknown) or his answering machine. Even after leaving numerous messages to return my calls, no communication was ever established between myself and Attorney Diamond. Although I mailed my work product to Attorney Diamond, I never received any instructions regarding what precisely he needed in terms of the investigation.

12. On or about September 1, 2004, I telephoned the Law Office of Gary Diamond and spoke with Sherry relative to information that I had learned regarding Mr. Diamond's resignation form the practice of law in the State of California. She responded that it was only a rumor and that Mr. Diamond was visiting a women's prison facility on this date. I once again left a message for Mr. Diamond to return my call, however, never heard from him.

13. I subsequently read in the July 2005 issue of California Lawyer that Gary Diamond, State Bar #155028 had resigned from the Bar on November 2, 2004.

14. As of this date, I continue to be involved with Mr. Alvarez and his Attorney Scott Tedmon and make myself and my office available to both Alvarez and Attorney Tedmon.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury and under the laws of California that the foregoing is true and correct executed on this 30th day of November 2007.

Kenneth Addison

4

1

<u>CERTIFICATE OF SERVICE</u>

2

ANGEL JESUS ALVAREZ,                    )

3                                                        )

Petitioner,                    )

4                                                        )

v.                    )        Case No. C 06-05027 MJJ

5                                                        )

ROBERT AYERS, JR., Warden,                    )

6                                                        )

Respondent.                    )

7    _____)

8          The undersigned hereby certifies that he/she is an employee of the LAW OFFICES OF
SCOTT L. TEDMON and is a person of such age and discretion as to be competent to serve

9    papers.

10          On December 5, 2007, he/she served a copy of the attached:

11          **PETITIONER ALVAREZ'S RESPONSE TO MOTION TO DISMISS PETITION**

12    on the interested parties in said action by causing to be delivered by United States Mail a true
copy thereof enclosed in a sealed envelope with postage thereon fully prepaid addressed as

13    follows:

14    VIOLET LEE
California Deputy Attorney General

15    455 Golden Gate Avenue, #11000
San Francisco, CA  94102-7004

16

Angel Alvarez

17    Petitioner

18

          I declare that the foregoing is true and correct and this declaration was executed

19    at Sacramento, California.

20

DATED: December 5, 2007

21

_____        /s/ Scott L. Tedmon

22                                        SCOTT L. TEDMON

23

24

25

26

27

28