LAW OFFICES OF SCOTT L. TEDMON
A Professional Corporation
SCOTT L. TEDMON, CA. BAR # 96171
717 K Street, Suite 227
Sacramento, California 95814
Telephone: (916) 441-4540
Email: tedmonlaw@comcast.net

Attorney for Petitioner
ANGEL JESUS ALVAREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL JESUS ALVAREZ,  Petitioner,  v.  ROBERT AYERS, JR.,  Respondent. | No. C06-5027 MJJ  **DECLARATION OF PETITIONER ANGEL JESUS ALVAREZ** |

ANGEL ALVAREZ states under penalty of perjury:

1. I am the Petitioner in the above-entitled case.

2. 10/25/02: While at High Desert State Prison (HDSP) in Susanville, California, my wrongful conviction and life sentence were affirmed by the California Court of Appeal, Sixth District, No. H-021626

3. 12/02/02: Petition for Review of direct appeal was filed in the California Supreme Court, No. S-111782, by my court-appointed appellate attorney.

4. After the Petition for Review was filed, my appellate attorney notified me that if and when the petition is denied, she would not be able to continue representing me in any other court proceeding under the terms of her appointment. She advised me to seek and retain private counsel to litigate a collateral attack.

**Dec. Unsigned Of Angel Jesus Alvarez** - 1 -

5. 12/02/02: During this week, I wrote to several attorneys in Northern California, including Frank G. Prantil of Sacramento (Prantil) and Gary M. Diamond (Diamond) of Rocklin and asked for fee information.

6. 12/16/02: Prison officials delivered a letter to me from Prantil dated 12/09/02. (Exh. A1-A2). In this letter he quoted his fees to "review" my case and suggested I hire a private investigator. He stated he should be paid, separately from his fees to litigate, to "supervise and communicate" with the investigator.

7. December 2002: Over a telephone call, Prantil insisted I should retain him immediately, but I told him I was waiting for other attorneys to reply before I decide.

8. 01/15/03: The state of California Supreme Court denied the Petition for Review.

9. January 2003: During another phone call, Prantil claimed:

    a. He knew the other attorneys I had written to;

    b. He was better skilled than them because on many occasions he had to "take over" cases the other attorneys couldn't handle;

    c. He had won the release of many clients through writs of habeas corpus; and

    d. He would provide "published cases" to prove his winning ability.

10. 02/10/03: On this day I received a letter from both Prantil and Diamond. Diamond's letter, dated 02/02/03 (Exh. A3), only quoted his fees to review my case. Prantil's letter, dated 02/05/03 (Exh. A4), urged me to retain him immediately because the AEDPA clock on my case was set to expire on 03/15/03. I was unable to reach Prantil over the phone, so I called my court-appointed appellate attorney who told me she was almost certain the AEDPA deadline was over a year away.

11. 02/24/03: On or about this day, I wrote to Prantil asking for an explanation to his recent letter. I also asked why he had failed to provide me with the promised citations of his "published cases" he had boasted about over the telephone.

12. 03/07/03: On this day I received a letter from both Diamond and Prantil. Diamond's letter, dated 02/28/03 (Exh. A5), Diamond claimed to have won habeas relief in 100% of his cases in the last year. Prantil's letter, dated 03/03/03 (Exh. A6-A7), Prantil cited People v. Sanchez (2001)

**Dec. Unsigned Of Angel Jesus Alvarez**- 2 -

1  and Hart v. Gomez (9th Cir. 1999). Sanchez was a murder case reversed on direct appeal and Hart
2  was a child molestation case reversed on federal habeas corpus. Prantil further claimed he had
3  "several cases presently pending before the 9th Circuit" that he believed would be published, and that
4  soon another one of his clients would have his murder convictions set aside. He made no mention
5  of my letter of 02/24/03.

6      13. March 2003: I retained Prantil (Exh. A8-A9), Diamond (Exh. A10), and attorneys
7  Richard Dangler and Kent Russell to review my case. The fees quoted by each attorney was paid
8  in full.

9      14. 04/08/03: I received a letter from Prantil dated 04/01/03. (Exh. A11-A12). Prantil stated
10  he was mistaken about the deadline mentioned in his letter of 02/05/03 and made the following
11  statement:

12  "Once we file in the state court, the AEDPA clock stops running and it doesn't start running
13  again until 30 days after the state supreme court denies the habeas petition to be filed there."

14      15. 04/08/03: Also on this day, I met with Diamond at HDSP to discuss his review of my
15  case. Even though I had paid and asked for a written evaluation, he decided to provide one in
16  person, nothing in writing. I told Diamond I would make my decision on who to retain after the
17  other attorneys complete their review of my case.

18      16. 04/11/03: I received a letter from Prantil, dated 04/07/03 (Exh. A13), where he
19  confirmed receipt of my legal paperwork. He promised a written evaluation by the end of the month
20  (April 2003). April came and went and I received nothing. Prantil claimed he had sent it but HDSP
21  legal mail logs reflect nothing was received from Prantil for me during that period.

22      17. April 2003: I wrote to all attorneys asking if anyone objected to working with an
23  attorney, from a separate firm, in a habeas litigation team.

24      18. 04/25/03: I received a letter from Diamond, dated 04/20/03 (Exh. A14), and he stated
25  he had no problem working with an attorney from another firm.

26      19. 05/15/03: After deciding to retain Diamond and Prantil, I wrote to Diamond and
27  informed him he would be working with Prantil. (Exh. A15).

28      20. 05/19/03: I mailed a letter to Prantil notifying him that I had decided to retain him to

1  work in a habeas litigation team with Diamond. (Exh. A16).

2  21. June 2003: I signed retainer agreements with both Diamond (Exh. A17-A22) and Prantil.

3  (Exh. A23-A27). The fees quoted by both attorneys were paid in full. Prantil's retainer agreement,

4  in pertinent part:

5  page 1-2:

6  "Attorney (Prantil) agrees to do the following:

7  Research, draft, file, and litigate to completion a petition for habeas

8  corpus to be filed in the

9  (1) Superior Court, Santa Clara.

10  (2) California Court of Appeal, Sixth Appellate District.

11  (3) California Supreme Court.

12  page 2:

13  ...It is further understood the ATTORNEY [Prantil] will be part of the habeas team to litigate

14  as stated above. Attorney GARY DIAMOND has been retained to litigate and ATTORNEY

15  [Prantil] will work with him and jointly litigate."

16  22. Despite having agreed to work together, during the time between June 6, 2003 and

17  September 16, 2003, Prantil complained on the phone that Diamond was not returning his phone

18  calls or letters, causing the case to languish from July to December 2003. See Prantil letters dated

19  7/10/03 (Exh. A28) and 8/18/03 (Exh. A29-A32). After my letters went unanswered, I called

20  Diamond on the telephone. Diamond promised he would contact Prantil but he did not. Diamond

21  also promised habeas petition drafts and none were ever mailed to me or Prantil.

22  23. 09/16/03: I received a letter from Prantil dated 09/11/03. (Exh. A32-A33). Prantil shared

23  his litigation strategy with me, which included his concern regarding AEDPA time limits.

24  24. October 2003: I hired investigator Kenneth Addison of Sacramento (Addison) to conduct

25  investigation (Exh. A34) and work with Diamond and Prantil. (Exh. A35).

26  25. November 2003: Prantil told me over the phone he refused to draft a habeas petition

27  unless I fire Diamond or get Diamond to work with him.

28  26. 12/17/03: Prantil filed a habeas petition in the Superior Court, without Diamond's help.

**Dec. Unsigned Of Angel Jesus Alvarez**- 4 -

1      27.  12/18/03: During a phone call to Diamond, I reprimanded him for not working with
2 Prantil.  Diamond agreed to put in his share of the work by promising to file the next habeas petition,
3 if the one filed by Prantil in the Superior Court was denied.  I notified Diamond that Addison was
4 also on our team.  Diamond promised to call Prantil and Addison, and provide us with a habeas
5 petition draft.  Neither occurred.

6      28.  01/26/04: I received a letter from Prantil dated 01/22/04. (Exh. A36).  Prantil had
7 received and had provided me with a copy of the denial of the Superior Court.  Prantil also mailed
8 a copy of the denial to Diamond.  In his letter, Prantil requested the next petition be filed by
9 Diamond in the Court of Appeal.

10      29.  January to February 2004: According to Addison, he placed several calls to Diamond's
11 office, but Diamond never returned his calls.  Prantil informed me that his calls to Diamond were
12 also being ignored.  During February, Diamond had come to the prison (HDSP) and apologized.
13 (Exh. A37).  He claimed he had been working very hard and had not had time to call anyone back.
14 Diamond promised he could rectify the injustice done to me if I am patient with him.  I asked him
15 to provide me with some evidence of work product and he agreed to mail it to me within a week.
16 I never received anything.  I just kept getting letters from Diamond with empty promises.

17      30.  02/18/04: I received a letter from Prantil dated 02/12/04. (Exh. A38).  He had replied to
18 some questions I made to him over the phone.  For the first time he notified me that he was unable
19 to file anything in the U.S. Supreme Court:

20      "...the fees I will need to litigate through to the 9th Circuit.  I don't go any further.  I am not
21 a [sic] admitted to the Supreme Court..."

22 In a phone call he explained that there was a costly and time-consuming bar exam he had to take in
23 order to file and litigate in the U.S. Supreme Court.  Since the High Court only took one out of
24 20,000 cases, he told me it was a waste of time and money.  Prantil had also begun to insist that
25 Diamond file the next petition in the state Court of Appeal.

26      31.  February to June 2004: I was in regular contact with Addison as he located and
27 interviewed several witnesses. (Exh. A39-A55).  Addison had conducted an extensive investigation
28 and had collected evidence.  Addison told me he had mailed documents of his progress to both

**Dec. Unsigned Of Angel Jesus Alvarez**- 5 -

1   Prantil and Diamond. He further notified me that Diamond was not returning his calls.

2   32. March 2004 to November 2004: Addison had struggled to retrieve evidence from a previous private investigator I had hired, Eduardo Guilarte of San Jose (Guilarte). Addison had diligently worked with attorney Eugene Martinez of Salinas (Martinez), and convinced Guilarte to release and turn over a tape recorded interview with a possible witness. Unfortunately, Guilarte edited the recording, possible to avoid an inquiry into the legality of the interview. Subsequently, Addison prepared an investigative report during the negotiations dated 05/13/04. (Exh. A56-A59).

3   33. May 2004: New evidence from Amelia Guerrero was documented by Addison and copies mailed to Prantil and Diamond. (Exh. 45-A47).

4   34. 06/18/04: I received a letter from Prantil dated 06/15/04. (Exh. A60). Among other things he stated:

"I don't know what Diamond is doing, since I have not heard from him."

5   35. 07/13/04: I received a letter from Prantil dated 07/06/04. (Exh. A61-A62). Prantil had spoken to Addison about me wanting to fire Diamond. Prantil stated:

"Today I received word from Mr. Addison. Both Addison and myself have found it almost impossible to reach him [Diamond]".

6   36. 09/02/04: I received a letter from Diamond dated 08/26/04. (Exh. A63). In his letter, Diamond complained that he had been waiting to hear from Addison and hadn't received any phone calls from Addison. Addison told me he was able to prove he had called Diamond's office several times through telephone records. (Exh. A64-A66).

7   37. 09/03/04: I received a letter from Prantil dated 08/31/04. (Exh. A67-A68). Prantil stated:

"I have heard from a reliable source that Mr. Diamond has stipulated to a six month suspension of his license".

8   38. 09/03/04: On or around this date, I asked Addison to contact Diamond and fire him. On 09/13/04, I was told by Mr. Addison that Diamond finally called Addison back and accepted the termination but refused to refund any money. I was told by both Prantil and Addison that they never received anything from Diamond. I never saw a single piece of work product from Diamond's office. I was told by both Prantil and Addison that they never received anything from Diamond.

**Dec. Unsigned Of Angel Jesus Alvarez**- 6 -

1    39. 09/24/04: I received a letter from Addison dated 09/21/04. (Exh. A69-A71). In his letter, Addison stated:

"I agree with your assessment regarding the relationship between Mr. Martinez and Mr. Guilarte...Mr. Martinez's failure to monitor, instruct, and supervise Mr. Guilarte is in of itself ineffective assistance of counsel. Now, we can prove that Mr. Guilarte lied to me and Mr. Martinez about his initial contact with Tanya..."

40. 10/05/04: I received a letter from Prantil dated 09/30/04. (Exh. A71). Prantil was requiring an additional payment to prepare a petition for the state Court of Appeal. I disagreed. I had retained him to prepare a petition through all three state court levels. He stated in his letter:

"And finally, I will need to be compensated for the work Diamond should have done."

41. 10/05/04: I received a letter from Addison dated 10/01/04. (Exh. A72-A74). He reported that he had interviewed more witnesses (Quintanilla Family) and my former appellate attorney, Kat Kozik of Berkeley (Kozik). Addison obtained evidence in support of IAC, additional new evidence from Mayra-Alicia Quintanilla, of which I had no prior knowledge, and my entire case file on appeal from Kozik.

42. December 2004: Prantil refused to draft the next petition without additional payment, even though the retainer-agreement required him to. I was compelled to retain attorney Kent Russell of San Francisco (Russell). Russell was retained to prepare the habeas petition to file in the state court of appeal.

43. 12/17/04: I received a letter from Addison dated 12/14/04. (Exh. A75-A76). Addison had turned over copies of his investigation to Russell.

44. January to February 2005: Russell provided drafts to me of a habeas petition to file in the state Court of Appeal.

45. 01/20/05: I received a letter from Prantil dated 01/18/05. (Exh. A77). While he still refused to provide a draft for the Court of Appeal, he opted to write to the Santa Clara County District Attorney so Addison would be allowed to view the physical items seized by police.

46. 02/01/05: Since Prantil refused to honor his contract, I left him a telephone message demanding his reasons in face of the contract we signed.

Dec. Unsigned Of Angel Jesus Alvarez - 7 -

47. 02/16/05: I received a letter from Prantil dated 02/11/05. (Exh. A78-A79). Prantil wrote to me to notify me that he was going on vacation.

48. 02/22/05: I received a letter from Addison dated 02/15/05. (Exh. A80-A81). Addison reported that he had made contact with Detective Stephens of the San Jose Police Department and obtained evidence record logs to support the habeas petition.

49. 03/11/05: I hadn't heard from Prantil since he had gone on vacation, so I filed the habeas petition drafted by Russell in the California Court of Appeal, Sixth District. From February to March, Addison provided photocopying. (Exh. A82-A85).

50. 03/13/05: I called and also wrote to Prantil to withdraw from my case and refund part of the retainer. (Exh. A86-A87).

51. March 2005: I received a letter from Prantil dated 03/17/05 (Exh. A88-A89) wherein he apologized for not replying to my letters. He stated:

"I apologize for not getting back to you sooner. It has taken me a little longer than I anticipated to get caught up from my vacation."

52. 03/23/05: The California Court of Appeal, Sixth District, denied the habeas petition with one word: "DENIED". No comment or citation was made by the court.

53. April 2005: I received a letter from Prantil dated 04/04/05. (Exh. A90-A92). Prantil stated:

"I don't know why you filed with the court of appeal without my help...Please do not file a petition with the state supreme court. That is my job..."

54. 04/25/05: I filed a formal complaint against Diamond. (His full name: Gary Michael Diamond, Bar # 155028). The Office of Chief Trial Counsel assigned Inquiry #05-7725 to the complaint.

55. June 2005: I reviewed a declaration draft by Addison of due diligence regarding his investigation of my case, dated 06/17/05. (Exh. A93-A96). Over the telephone, I urged Prantil to start drafting a habeas petition for the state California Supreme Court.

56. June 2005: Based on Diamond's dishonesty and misconduct, I also filed a claim with the Client Security Fund of the State Bar of California, case number 05-F-2512.

**Dec. Unsigned Of Angel Jesus Alvarez**- 8 -

57. June 2005: I hired law enforcement expert Frank Saunders of Santa Cruz (Saunders) to review the San Jose Police evidence logs and the laboratory reports of the Santa Clara County crime lab. (Exh. A101-A104).

58. July 2005: Addison provided me with documents indicating Diamond was no longer a member of the California State Bar. (Exh. A97-A99). Diamond had resigned, pending charges against him.

59. 07/12/05: I was transferred from High Desert State Prison in Susanville to San Quentin State Prison in San Quentin, California.

60. July 2005: I received a letter from Prantil dated 07/21/05. (Exh. A100-A104). Prantil had received a sworn declaration from Saunders. Saunders had reviewed the law enforcement records in my case and had provided his expert opinion. Prantil also promised a habeas draft <u>within 14 days</u>.

61. August 2005: During a telephone call in the first week of August 2005, Prantil stated he hadn't received Addison's declaration of due diligence and requested that I ask Addison to provide him with another one. I was also concerned because I hadn't received the habeas draft in 14 days as he had promised in his last letter. Prantil told me "we are good on time, no deadline for state habeas" and stated he would provide a draft within a week.

62. 08/24/05: I wrote Prantil a letter reminding him that it had been five (5) months since the state Court of Appeal had denied the habeas petition I had filed there. (Exh. A105).

63. August 2005: I received a letter from Prantil dated 08/30/05. (Exh. A106-A107). Prantil had received Addison's declaration of due diligence. I still had not received any habeas draft for the state supreme court.

64. September 2005: I received a letter from Prantil dated 09/19/05. Prantil had finally drafted a habeas petition for the California Supreme Court, but it was incomplete and not ready to file. The petition had blanks where pertinent dates had to be inserted. (Exh. A108-A125). One page of the petition belonged to one of Prantil's other clients. (Prantil asked me to return that page and I mailed it back).

65. September 2005: During the last week of September 2005, in a telephone call, I asked

**Dec. Unsigned Of Angel Jesus Alvarez**- 9 -

1  Prantil why he was taking so long. He stated that since there was no "deadline" to worry about with
2  state habeas petitions, there was no need to rush. I requested he provide me with a complete and
3  accurate draft as soon as possible.

4        66. October 2005: I received a letter from Prantil dated 10/11/05. (Exh. A126). Prantil
5  claimed he had finished drafting the habeas petition to be filed in the state supreme court but that he
6  was unable to print it out due to problems with his computer. He gave me no indication as to when
7  he would send me the final draft.

8        67. October 2005: I received a letter from Prantil dated 10/14/05. He provided me with
9  another incomplete draft. (Exh. A127-A148). He stated he was unable to finish because he wanted
10 my input, and couldn't locate certain exhibits, particularly the Opinion affirming my conviction on
11 direct appeal.

12       68. November 2005: I received a letter from Prantil dated 11/07/05. (Exh. A149-A150).
13 Prantil was still unable to provide a final draft because he had just located and reviewed the
14 declarations and evidence provided by Addison <u>over a year before</u>.

15       69. December 2005: I received a letter from Prantil dated <u>12/29/05</u>. (Exh. A151). Prantil
16 finally provided me with a complete and final draft of the habeas petition to be filed in the California
17 Supreme Court. I signed the verification and mailed it back to Prantil.

18       70. January 2006: I received a letter from Prantil dated 01/17/06. (Exh. A152). Almost 10
19 months after the California Court of Appeal had denied my habeas petition, Prantil filed a habeas
20 petition in the California Supreme Court on 01/12/06.

21       71. March 2006: I wrote to Prantil to see if a ruling by the California Supreme Court applied
22 to my case. I provided Prantil with the citation.

23       72. April 2006: I received a letter from Prantil dated 04/20/06 (Exh. A153) requesting the
24 citation of the recent ruling of the state high court. (I had already provided it in my letter to him in
25 March.)

26       73. 04/27/06: I mailed Prantil the citation again.

27       74. 04/27/06: Also on this day, I received a letter from the State Bar of California. The
28 Client Security Fund had ruled in my favor and refunded all of the money I had paid Diamond.

1    75. June 2006: I received a letter from Prantil dated 06/13/06. (Exh. A154). Prantil again
2    asks for the citation to a case the California Supreme Court had ruled on back in March 2006.

3    76. 06/20/06: I wrote Prantil back and provided the citation for the third time. (Exh. A155).
4    (This time, I kept a copy of the letter I wrote to Prantil.)

5    77. July 2006: I received a letter from Prantil dated 07/06/06. (Exh. A156-A159). Prantil
6    mailed me a copy of denial of the California Supreme Court, dated 06/28/06. Prantil stated that he
7    needed additional funds to proceed in the federal courts.

8    He then proceeded to admit, for the first time, that he had been ineligible to practice law
9    before any state court since March 2006. He also provided a document that explained his various
10   delays in 2005. He had been busy defending his license before the State Bar Hearing Department
11   in hearings on 04/27/05, 04/28/05, 05/11/05, 06/15/05, 08/09/05, and 10/12/05! He further notified
12   me that as of 04/18/06, he was not allowed to practice law in the Ninth Circuit Court of Appeals.

13   Finally, he stated that even though he was ineligible to practice law, he could still provide
14   attorney services by drafting my legal briefs and have me file them in pro se.

15   (NOTE: This was not the first time Prantil had been dishonest with me. In addition to his
16   dishonesty and consistent delays in replying to my inquiries, he failed to notify me of his status with
17   the State Bar. When he expressed a willingness to illegally practice law, it compelled me to seek
18   new counsel for federal court representation.)

19   78. 7/11/06: I wrote a letter to Prantil expressing my anger and serious concerns about
20   Prantil's obvious failures to adequately represent me. (Exh. A160).

21   79. 08/21/06: After retaining attorneys Scott and Cliff Tedmon of Sacramento (Tedmon),
22   they filed a petition for writ of habeas corpus in the U.S. District Court.

23   80. January 2007: I received a letter from Tedmon dated 01/08/07. Tedmon notified me that
24   Prantil had passed away in December 2006.

25   81. January 2007 to April 2007: During sessions in the law library at San Quentin State
26   Prison, I came across a published case with Prantil's name: Prantil v. State Bar of California (1979).
27   From there I learned that:

28   a. Prantil had previously been disciplined by the California State Bar in 1979;

**Dec. Unsigned Of Angel Jesus Alvarez** - 11 -

1    b.  Prantil had been charged and convicted of a felony in state court in 1985;

2    c.  Prantil had previously been disbarred by the California State Bar in 1989;

3    d.  Prantil had been convicted of several felonies in federal court in 1985; and

4    e.  Prantil had lied to me about being admitted to the U.S. Supreme Court.  (See #30 above).

5    He had been disbarred from the U.S. Supreme Court in 1989.

I declare, under penalty of perjury, under the laws of the State of California and the United States of America, that the facts stated in this declaration are true and correct to the best of my knowledge, and that the facts stated on information and belief are true to the best of my knowledge and belief.

Executed this 6th day of December 2007, at San Quentin, California.

/s/ A.J. Alvarez
ANGEL JESUS ALVAREZ
Petitioner

Dec. Unsigned Of Angel Jesus Alvarez  - 12 -